## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| DIXIE ELECTRIC, LLC, *et al.*,[1] | Case No. 18-12477 (KG) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 14, 54 & 76** |

### FINAL ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), AND 364(e) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364 AND 507(b)

Upon the motion (the "Motion") of FR Dixie Holdings Corp. ("Holdings"), FR Dixie Acquisition Corp. (the "Borrower") and their affiliated debtors (together with Holdings, the "Guarantors"), each as a debtor and debtor-in-possession (collectively, the "Debtors" or the "Loan Parties") in the above-captioned cases (the "Cases"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") seeking, among other things:

A.     authorization for the Borrower to obtain secured postpetition financing (the "DIP Financing") and for the Guarantors to unconditionally guaranty, on a joint and several basis, the

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: FR Dixie Holdings Corp. (4025), FR Dixie Acquisition Corp. (6859), FR Dixie Acquisition Sub Corp. (6379), Dixie Electric, LLC (3176), Monahans Electric, Inc. (2307), K&S Electric, Inc. (8960), L&K Electric, LLC (3297), Patriot Automaton & Control, LLC (7466), Epic Integrated Services, LLC (5274), Action Electric Holdings, Inc. (4496), Action Electric, Inc. (0227), Mac Supply, Inc. Electrical Contractors (6230) and Wellkeeper, Inc. (4522).  The mailing address for each Debtor is 1155 Dairy Ashford Rd, Suite 450, Houston, TX 77079.

Borrower's obligations in connection with the DIP Financing, consisting of a senior secured superpriority debtor-in-possession term loan credit facility (the "<u>DIP Facility</u>") in an aggregate principal amount of $17.5 million (the actual available principal amount thereunder at any time being subject to those conditions set forth in the DIP Documents (as defined below)), pursuant to which DIP Facility the Borrower is authorized, on an interim basis, to borrow from the DIP Lenders up to $15.0 million in aggregate principal amount on the Closing Date (as defined in the DIP Credit Agreement (as defined below)) and to borrow the balance upon entry of this final order (this "<u>Order</u>");

B.      authorization for the Loan Parties to execute and enter into the Superpriority Secured Debtor-in-Possession Credit Agreement, among (i) the Borrower, (ii) the Guarantors, (iii) Wilmington Trust, National Association (in its capacities as administrative agent and collateral agent under the DIP Facility together with any successor, the "<u>DIP Agent</u>") and (iv) the lenders from time to time party thereto (collectively, in such capacities, the "<u>DIP Lenders</u>" and, together with the DIP Agent, the "<u>DIP Secured Parties</u>"), substantially in the form attached to the Motion as <u>Exhibit D</u> (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "<u>DIP Credit Agreement</u>" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and amendments executed and delivered in connection therewith, the "<u>DIP Documents</u>") and to perform all such other and further acts as may be required in connection with the DIP Documents;

C.      the granting of adequate protection to the Prepetition Secured Agent and the Prepetition Secured Lenders (each as defined below) under or in connection with (i) that certain Credit Agreement, dated December 18, 2013, (as amended and restated, dated as of January 29,

2014, as further amended by that certain Amendment No. 1 to Credit Agreement, dated as of August 11, 2017 and that certain Resignation and Appointment Agreement and Amendment No. 2 to Credit Agreement, dated as of August 31, 2018, and as otherwise amended, supplemented or otherwise modified prior to the date hereof, the "Prepetition Secured Credit Agreement") by and among Holdings, the Borrower, the guarantors (collectively, the "Prepetition Guarantors"), Wilmington Trust, National Association (in its capacity as successor administrative agent and collateral agent under the Prepetition Secured Credit Agreement, the "Prepetition Secured Agent"), and the lenders from time to time party thereto (collectively, in such capacities, the "Prepetition Secured Lenders" and, together with the Prepetition Secured Agent and the other Secured Parties (as defined in the Prepetition Secured Credit Agreement), the "Prepetition Secured Parties"), and (ii) that certain Security Agreement, dated as of December 18, 2013, (together with the Prepetition Secured Credit Agreement and the mortgages and all other agreements and documentation executed in connection therewith, the "Prepetition Secured Documents"), by and among Holdings, the Borrower, the Prepetition Guarantors, the Prepetition Secured Agent, and the other parties from time to time party thereto, whose liens and security interests are being primed by the DIP Liens (as defined below);

D.      subject to the restrictions set forth in the DIP Documents and this Order, authorization for the Loan Parties to continue to use Cash Collateral (as defined below) and all other Prepetition Collateral (as defined below) in which any of the Prepetition Secured Parties have an interest, and the granting of adequate protection to the Prepetition Secured Parties with respect to, *inter alia*, such use of their Cash Collateral and the other Prepetition Collateral;

E.      subject to certain challenge rights of parties in interest set forth herein, approval of certain stipulations by the Debtors with respect to the Prepetition Secured Documents and the liens and security interests arising therefrom;

F.      the grant of superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code to the DIP Secured Parties payable from, and secured by liens pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on, all prepetition and postpetition property of the Loan Parties' estates (other than certain excluded property as provided in the DIP Documents (the "Excluded Assets") and all proceeds thereof (including, subject only to and effective upon entry of this Order, any Avoidance Proceeds (as defined below)), subject only to the Carve Out;

G.      subject only to and effective upon entry of this Order, the waiver of the Debtors' right to surcharge the Prepetition Collateral and the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code;

H.      modification of the automatic stay to the extent set forth herein;

I.      pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion to be held before this Court to consider entry of an order granting the Motion on an interim basis (the "Interim Order" and, together with this Order, the "DIP Orders"); and

J.      the scheduling of a final hearing (the "Final Hearing") which may be held on the same date as the hearing to approve the Acceptable Disclosure Statement and confirm the Acceptable Plan of Reorganization (each as defined in the DIP Credit Agreement) to consider entry of this Order approving the relief granted herein on a final basis; and due and appropriate notice of the Motion, the Interim Hearing and the Final Hearing having been served by the

Debtors in accordance with Paragraph 35 of the Interim Order; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Interim Hearing having been held by this Court on November 5, 2018; and the Interim Order having been entered on November 5, 2018; and this Court having [held the Final Hearing on the Motion on December 13, 2018 / determined in its discretion that the Final Hearing was not necessary]; and the relief requested in the Motion being in the best interests of the Debtors, their creditors and their estates and all other parties in interest in these Cases; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the record made by the Debtors in the Motion, in the Declaration of Peter Laurinaitis in Support of the Motion (attached to the Motion as <u>Exhibit B</u>), in the *Declaration of Jerrit Coward, Chief Executive Officer in Support of Chapter 11 Petitions and First Day Motions* (Docket No. 3) and at the Interim Hearing [and the Final Hearing] and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED, that:

1.      *Disposition.*  The relief requested in the Motion is granted on a final basis in accordance with the terms of this Order.  Any objections to the Motion with respect to the entry of this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Order shall become effective immediately upon its entry.

2.      *Jurisdiction.*  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

01:23877214.1

3.     *Notice*.  Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and no other or further notice of the Motion or the entry of this Order shall be required.

4.     *Debtors' Stipulations*.  Without prejudice to the rights of any other party in interest and subject to the limitations thereon contained in paragraphs 18 and 19 below, the Debtors admit, stipulate and agree that:

(a)     (i) as of the date of the filing of the Cases (the "<u>Petition Date</u>"), the Borrower and the Prepetition Guarantors were justly and lawfully indebted and liable to the Prepetition Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $291.3 million in respect of loans made, and letters of credit issued, pursuant to, and in accordance with the terms of, the Prepetition Secured Documents, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the Prepetition Secured Documents), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Prepetition Secured Documents (collectively, the "<u>Prepetition Secured Debt</u>"), which Prepetition Secured Debt has been guaranteed on a joint and several basis by all of the Prepetition Guarantors; (ii) the Prepetition Secured Debt constitutes the legal, valid and binding obligations of the Borrower and the Prepetition Guarantors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and (iii) no portion of the Prepetition Secured Debt or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under

the Prepetition Secured Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;

(b)    the liens and security interests granted to the Prepetition Secured Parties (the "Prepetition Secured Credit Agreement Liens") pursuant to and in connection with the Prepetition Secured Documents, are: (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the Collateral (as defined in the Prepetition Secured Credit Agreement) (the "Prepetition Collateral"); (ii) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law; and (iii) as of the Petition Date are subject and subordinate only to valid, perfected and non-avoidable liens permitted under the Prepetition Secured Documents to the extent that such permitted liens are senior to or *pari passu* with the Prepetition Secured Credit Agreement Liens;

(c)    by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Secured Documents, none of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of any Debtor;

(d)    no claims or causes of action exist against, or with respect to, the Prepetition Secured Parties under any agreements by and among the Debtors and any such party that is in existence as of the Petition Date;

(e)      the Debtors hereby absolutely and unconditionally release and forever discharge and acquit the Prepetition Secured Parties and their respective Representatives (as defined below) (collectively, the "<u>Released Parties</u>") from any and all claims, counterclaims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened (collectively, the "<u>Released Claims</u>") including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description that exist on the date hereof relating to any of the Prepetition Secured Documents, or the transactions contemplated thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of the Interim Order, whether such Released Claims are matured or unmatured or known or unknown; and

(f)      all cash, (including Cash Equivalents (as defined in the DIP Credit Agreement)) on deposit or maintained by the Loan Parties in any account or accounts with any depository institution (collectively, the "<u>Depository Institutions</u>"), wherever located (i) constituting Prepetition Collateral in which the Prepetition Secured Parties have perfected liens, (ii) constituting proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date, securities or other property, whether subject to

control agreements or otherwise, in each case that constitutes Prepetition Collateral), or (iii) subject to the Prepetition Secured Parties' rights of setoff, is "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (collectively, the "Cash Collateral").

5.     *Findings Regarding the DIP Financing and Cash Collateral.*

(a)     Good and sufficient cause has been shown for the entry of this Order.

(b)     The Loan Parties have a need to obtain the DIP Financing and continue use of the Prepetition Collateral (including the Cash Collateral) in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll and to satisfy other working capital and operational needs. The access of the Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Loan Parties and to a successful reorganization of the Loan Parties.

(c)     The Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Loan Parties are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Loan Parties granting to the DIP Secured Parties, subject to the Carve Out, the DIP Liens and the DIP Superpriority Claims (as defined below) and incurring the Adequate Protection Obligations, in each case, under the terms and conditions set forth in the DIP Orders and in the DIP Documents.

(d)      Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim Hearing [and the Final Hearing], the terms of the DIP Financing, the terms of the Adequate Protection Obligations granted to the Prepetition Secured Parties, and the terms on which the Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Order and the DIP Documents are fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)      The Prepetition Secured Parties have consented to the use of Cash Collateral and the other Prepetition Collateral, the priming of the Prepetition Secured Credit Agreement Liens pursuant to Section 364(d)(1) of the Bankruptcy Code, and the Debtors' entry into the DIP Documents in accordance with and subject to the terms of this Order and the DIP Documents.

(f)      The DIP Financing, as well as the terms of the Adequate Protection Obligations and Adequate Protection Liens (each as defined below), and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Loan Parties and the DIP Secured Parties, and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation: (i) all loans made to and guarantees issued by the Loan Parties pursuant to the DIP Documents (collectively, the "DIP Loans") and (ii) any Obligations (as defined in the DIP Credit Agreement) of the Loan Parties owing to any DIP Secured Parties or any of their respective affiliates, in accordance with the terms of the DIP Documents, including any obligations, to the extent provided for in the DIP Documents, to indemnify the DIP Secured Parties and to pay any fees, expenses (including any

attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the DIP Documents), amounts, charges, costs, indemnities and other obligations that are chargeable or reimbursable under the Interim Order, this Order or the DIP Documents (the foregoing in clauses (i) and (ii) together, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent and the DIP Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the Interim Order, this Order, the DIP Documents, or any provision hereof or thereof is vacated, reversed, amended, or modified, on appeal, by subsequent order of this Court or any other court, or otherwise. The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the Loan Parties' continued use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens), in accordance with the terms hereof, and the Prepetition Secured Parties (and the successors and assigns thereof), and shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(g)    The Prepetition Secured Parties are entitled to the adequate protection provided in this Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code. Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition

Collateral (including the Cash Collateral) are fair and reasonable, reflect the Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral (including Cash Collateral); *provided* that nothing in this Order or the other DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral, other than on the terms set forth in this Order and in the context of the DIP Financing authorized by this Order, (y) be construed as a consent by any party to the terms of any financing or any lien encumbering the Prepetition Collateral (whether senior or junior) other than the DIP Financing and the DIP Liens or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties.

(h)     Consummation of the DIP Financing and the use of Prepetition Collateral, including Cash Collateral, in accordance with this Order and the DIP Documents are in the best interests of the Loan Parties' estates and consistent with the Loan Parties' exercise of their fiduciary duties.

Based upon the foregoing findings, acknowledgements and conclusions; [and upon the record made before this Court at the Final Hearing]:

IT IS HEREBY ORDERED:

6.      *Authorization of the DIP Financing and the DIP Documents.*

(a)     In addition to the authority granted in the Interim Order, the Loan Parties are authorized to continue to perform all obligations under the DIP Documents.

(b)     The Borrower is authorized to access the full remaining balance under the DIP Facility up to an aggregate principal amount of $17.5 million subject to any limitations on

borrowing under the DIP Documents, which shall be used for all purposes permitted under the DIP Documents (and subject to the terms and conditions set forth herein and therein), and for other general corporate purposes of, the Loan Parties, including to pay (i) required debt service on the DIP Loans, (ii) the fees, costs, and expenses of the DIP Agent and the DIP Lenders, and (iii) the costs, fees and expenses associated with the Cases, including the Adequate Protection Obligations.

(c)     In furtherance of the foregoing and without further approval of this Court and in addition to the authority granted in the Interim Order, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees that may be reasonably required or necessary for the Loan Parties' performance of their obligations under or related to the DIP Financing (to the extent such acts, execution, and delivery were authorized by the Interim Order and have already occurred, such acts are hereby ratified), including, without limitation:

(i)     the execution and delivery of, and performance under, each of the DIP Documents;

(ii)     the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the Loan Parties, the DIP Agent and the Required Lenders (as defined in the DIP Credit Agreement, the "Required Lenders") may agree, it being understood that no further approval of the Court shall be required for authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents (and, for the avoidance of doubt, any fees and other expenses (including any attorneys', accountants', appraisers' and financial

advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder;

(iii)    the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of all fees including, without limitation, any closing fee, upfront fee, facility fee, structuring fee, commitment fee, prepayment fee or agency fee (which fees were, and were deemed to have been, irrevocably approved upon entry of the Interim Order and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise), and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Credit Agreement (and in any administrative agency fee letter agreements between any or all Loan Parties, on the one hand, and the DIP Agent, on the other, in connection with the DIP Financing) and the costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained by the DIP Agent or any of the DIP Lenders, in each case, as provided for in the DIP Documents, without the need to file retention motions or fee applications or to provide notice to any party, subject in all respects to paragraph 14(c) with respect to the payment of any fees and expenses of professionals retained by the DIP Agent or any of the DIP Lenders that accrue after the Petition Date; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and DIP Superpriority Claims

and perfection of the DIP Liens and the DIP Superpriority Claims as permitted herein and therein.

(d)    The DIP Documents constitute valid, binding and non-avoidable obligations of the Loan Parties, enforceable against each Loan Party in accordance with the terms of the DIP Documents and the DIP Orders.  No obligation, payment, transfer or grant of security under the DIP Documents, the Interim Order or this Order to the DIP Agent and/or the DIP Lenders shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code, any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act, or other similar state statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim or counterclaim.

7.    *DIP Superpriority Claims.*

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Loan Parties (without the need to file any proof of claim) with priority over any and all claims against the Loan Parties, existing as of the Petition Date or thereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) (including the Prepetition 507(b) Claim (as defined below)) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations (as defined below)), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or

attachment, which allowed claims (the "DIP Superpriority Claims") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Loan Parties and all proceeds thereof (excluding the Excluded Assets and the Loan Parties' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions"), but including any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement or otherwise ("Avoidance Proceeds")), subject in all respects only to payment of the Carve Out.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(b)    For purposes hereof, the "Carve Out" is an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $50,000 (without regard to the notice set forth in (iii) below); and (iii) (A) (1) all unpaid claims for fees, costs, disbursements and expenses to the extent allowed at any time, whether by interim order, final order, procedural order or otherwise, of persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code or any official committee of unsecured creditors ("Creditors' Committee") in the Cases (collectively, the "Professional Fees") incurred at any time on or prior to the Trigger Date (including any success or transaction

fees payable to persons or firms retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code, solely to the extent such success or transaction fee is earned and payable pursuant to an engagement letter between the Debtors and such persons or firms retained by the Debtors that has been approved by the Court, plus (B) Professional Fees incurred after the Trigger Date in an amount not to exceed $1,250,000, of professionals retained by the Debtors (the amount described in this subclause (B) of this paragraph 7(b)(iii), "Post-Trigger Date Carve Out Cap"); provided, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i) through (iii) above, on any other grounds.  "Trigger Notice" shall mean a written notice delivered by the DIP Agent following the occurrence and continuation of an Event of Default under the DIP Credit Agreement (or after the payment in full of the DIP Obligations, the occurrence and continuation of a termination event hereunder with respect to the use of Cash Collateral) describing such Event of Default that has occurred and is continuing (or after the payment in full of the DIP Obligations, the Prepetition Secured Agent describing the reason for termination of the use of Cash Collateral).  For purposes hereof, the "Trigger Date" shall mean the earlier of (i) the day of the occurrence of an Event of Default (as defined in the DIP Credit Agreement) and (ii) the Maturity Date (as defined in the DIP Credit Agreement), and delivery (including via email) of the Trigger Notice to the Borrower's lead restructuring counsel and the office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

(c)    Immediately upon delivery of a Trigger Notice, the Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then accrued but unpaid obligations described in paragraph 7(b)(i), (ii) and (iii)(A).  The Debtors shall deposit and

hold such amounts in a segregated account in trust to pay such then unpaid Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims.  Immediately upon delivery of the Trigger Notice, the Debtors shall deposit and hold cash in an amount equal to the Post-Trigger Date Carve Out Cap in a segregated account in trust to pay such Professional Fees benefiting from the Post-Trigger Date Carve Out Cap (the "Post-Carve Out Trigger Notice Reserve," and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims, it being understood that the DIP Secured Parties shall have a lien and security interest solely in any residual amount in such segregated accounts holding the Carve Out Reserves after the payment of all Professional Fees benefitting from the Carve Out.

(d)     All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i), (ii) or (iii)(A) of the definition of Carve Out set forth above until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to first fund the Post-Carve Out Trigger Notice Reserve to the extent not funded in full and thereafter to pay the DIP Secured Parties.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay any remaining obligations set forth in clause (iii)(B) of the definition of Carve Out set forth above, and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to first fund the Pre-Carve Out Trigger Notice Reserve to the extent not funded in full and thereafter to pay the DIP Secured Parties.

(e)     Notwithstanding anything to the contrary in any of the DIP Documents, the Prepetition Secured Documents, the Interim Order or this Order, following the occurrence of an Event of Default or termination of the use of Cash Collateral, none of the DIP Secured Parties

or the Prepetition Secured Parties shall, nor shall they direct any entity to, sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall each have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Secured Parties and the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. Further, notwithstanding anything to the contrary in the Interim Order or this Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute and shall not increase or reduce the DIP Obligations; (ii) the failure of the Carve Out Reserves to satisfy in full the Professional Fees shall not affect the priority of the Carve Out; and (iii) in no way shall the Budget, Carve Out, Post-Trigger Date Carve Out Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary contained in the Interim Order or this Order, the Carve Out shall be senior to the Adequate Protection Obligations and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Debt.

(f)      Notwithstanding the foregoing but subject to the immediately following paragraph 7(g), (x) the Carve Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation, or assertions of any defense or counterclaim, against any of the DIP Lenders, the DIP Agent, the Prepetition Secured Lenders or the Prepetition Secured Agent, each in such capacity, and their respective agents, attorneys, advisors or representatives, including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations

and the liens and security interests granted under the DIP Documents or the Prepetition Secured Documents (whether in such capacity or otherwise) including, in each case, without limitation, for lender liability or pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP Secured Parties or the Prepetition Secured Parties; (c) attempts to prevent, hinder or otherwise delay any of the DIP Secured Parties' assertion, enforcement or realization upon any DIP Collateral or Prepetition Collateral in accordance with the DIP Documents and this Order; or (d) paying any amount on account of any claims arising before the commencement of the Cases unless such payments are approved by an order of the Court, and (y) prior to the Trigger Date, the Carve Out shall not be reduced by the payment or incurrence of Professional Fees allowed at any time by the Court.  Further, notwithstanding anything to the contrary in the Interim Order or this Order, the failure of the Carve Out Reserves to satisfy in full the Professional Fees shall not affect the priority of the Carve Out.

(g)     Notwithstanding the preceding paragraph, proceeds from the DIP Financing and/or Cash Collateral not to exceed $15,000 in the aggregate (the "Investigation Budget Cap") may be used on account of Professional Fees for professionals retained by the Creditors' Committee (if any) incurred in connection with the investigation of Avoidance Actions (but not the prosecution of such actions) on account of the Prepetition Secured Debt (but not the DIP Obligations), which Professional Fees (if any) will benefit from the Carve Out in an amount not to exceed the Investigation Budget Cap to the extent unpaid as of delivery of a Trigger Notice.

8.     *DIP Liens*.  As security for the DIP Obligations, effective and perfected as of the date of the Interim Order and without the necessity of the execution, recordation of filings by the

Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, any notation of certificates of title for a titled good, or the possession or control by the DIP Agent of, or over, any DIP Collateral, the following security interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"), subject only to the payment of the Carve Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to the Interim Order, this Order and the DIP Documents, the "DIP Liens"):

(a)  First Lien On Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior security interest in and lien upon all tangible and intangible prepetition and postpetition property of the Loan Parties, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to either (x) valid, perfected and non-avoidable liens as of the Petition Date, or (y) valid and non-avoidable liens in existence as of the Petition Date that are perfected subsequent to such commencement as permitted by section 546(b) of the Bankruptcy Code (collectively, "Unencumbered Property"), including, without limitation, any and all unencumbered cash of the Loan Parties (whether maintained with the DIP Agent or otherwise) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and

the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing, in each case other than: (i) the Excluded Assets (as defined in the DIP Credit Agreement), but including any proceeds of Excluded Assets that do not otherwise constitute Excluded Assets; and (ii) the Avoidance Actions, but including the Avoidance Proceeds;

(b)       <u>Liens Priming Prepetition Secured Credit Agreement Liens</u>.   Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all prepetition and postpetition property of each Loan Party (including, without limitation, any and all cash and cash collateral (whether maintained with the DIP Agent or otherwise) and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, postpetition intercompany claims against the Loan Parties and their non-Debtor affiliates), contracts, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing), whether now existing or hereafter acquired, that is subject to the existing liens and security interests granted to the Prepetition Secured Parties arising under the Prepetition Secured Documents.   Subject to subparagraph (c) below, such security interests and liens shall be senior in all respects to (and shall prime) the interests in such property of the Prepetition Secured Parties arising from current and future liens of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens granted to the Prepetition Secured Parties) (collectively, the "<u>Primed Liens</u>");

(c) <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected security interest in and lien upon all tangible and intangible prepetition and postpetition property of each Loan Party subject to valid, binding and non-avoidable liens other than Primed Liens on the Petition Date (including, without limitation, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, postpetition intercompany claims against the Loan Parties and their non-Debtor affiliates), contracts, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, in each case other than the Excluded Assets, but including any proceeds of Excluded Assets that do not constitute Excluded Assets, which shall be (i) junior and subordinate to any valid, perfected and non-avoidable liens (other than the Primed Liens) in existence immediately prior to the Petition Date to the extent such liens are senior or *pari passu* to the Prepetition Secured Credit Agreement Liens, and (ii) any such valid and non-avoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code; *provided*, that nothing in the foregoing clauses (i) and (ii) shall limit the rights of the DIP Secured Parties under the DIP Documents to the extent such liens are not permitted thereunder; and

(d) <u>Liens Senior to Certain Other Liens</u>. The DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is

avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties, or (C) any intercompany or affiliate liens of the Loan Parties or security interests of the Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.

9.     *Maintenance of Letters of Credit*.   In addition to the authority granted in the Interim Order, to the extent permitted by the DIP Documents, the Loan Parties are authorized to maintain letters of credit under the Prepetition Secured Credit Agreement on an uninterrupted basis and to take all actions reasonably appropriate with respect thereto.

10.     *Protection of DIP Lenders' Rights.*

(a)     So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding Commitments (as defined in the DIP Credit Agreement) (the "DIP Commitments") under the DIP Credit Agreement, the Prepetition Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Secured Documents, the Interim Order or this Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral or the Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such DIP Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP Obligations and termination of the DIP Commitments), to the extent such transfer, disposition, sale or release is

authorized under the DIP Documents; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such DIP Collateral unless, solely as to this clause (iii), any of the DIP Secured Parties file financing statements or other documents to perfect the liens granted pursuant to the Interim Order and this Order, or as may be required by applicable state law to continue the perfection of valid and non-avoidable liens or security interests as of the Petition Date and (iv) deliver or cause to be delivered, at the Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of any of the DIP Secured Parties, or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of such DIP Collateral subject to any sale or disposition.

(b)     To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or DIP Collateral or has control with respect to any Prepetition Collateral or DIP Collateral, or has been noted as a secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Secured Parties, and the Prepetition Secured Agent shall comply with the instructions of the DIP Agent with respect to the exercise of such control.

(c)     Any proceeds of Prepetition Collateral subject to the Primed Liens received by any Prepetition Secured Party, whether in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise received by any Prepetition Secured Party, shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP Agent for the benefit of the DIP Secured Parties in the same form as

received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct. The DIP Agent is hereby authorized to make any such endorsements as agent for the Prepetition Secured Agent or any other Prepetition Secured Party. This authorization is coupled with an interest and is irrevocable.

(d)     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Secured Parties to enforce all of their rights under the DIP Documents and to (i) prior to an Event of Default (as defined in the DIP Credit Agreement), institute any cash dominion, as provided for in any DIP Documents, (ii) immediately upon the occurrence of an Event of Default, declare (A) the termination, reduction or restriction of any further DIP Commitment to the extent any such DIP Commitment remains and (B) all applicable DIP Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Loan Parties, and (iii) upon the occurrence of an Event of Default and the giving by the DIP Agent of five business days' prior written notice (which shall run concurrently with any notice required to be provided under the DIP Documents) via email to counsel to the Debtors, counsel to the Creditors' Committee (if any), and the U.S. Trustee to (A) withdraw consent to the Loan Parties' continued use of Cash Collateral and (B) exercise all other rights and remedies provided for in the DIP Documents and under applicable law. In any hearing regarding any exercise of rights or remedies under the DIP Documents, the only issue that may be raised by the Debtors in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors hereby waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Secured Parties set forth

in this Order or the DIP Documents.  In no event shall the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral.  Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Parties.

(e)        No rights, protections or remedies of the DIP Secured Parties granted by the provisions of this Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Loan Parties' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Loan Parties' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

11.        *Limitation on Charging Expenses Against Collateral*.  Except to the extent of the Carve Out, no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent or the Prepetition Secured Agent, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition Secured Agent, or the Prepetition Secured Lenders and nothing contained in this Order shall be deemed to be a consent by the DIP Secured Parties or the Prepetition Secured Parties to any charge, lien, assessment or claim against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

12.     *Payments Free and Clear*.  Subject only to the Carve Out, any and all payments or proceeds remitted to the DIP Agent (on behalf of the DIP Lenders) pursuant to the provisions of the Interim Order, this Order, any subsequent order of the Court, or the DIP Documents shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors.

13.     *Use of Cash Collateral*.  The Loan Parties are hereby authorized, subject to the terms and conditions of this Order, to use all Cash Collateral, and the Prepetition Secured Parties are directed promptly to turn over to the Loan Parties all Cash Collateral received or held by them; *provided* that (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms and conditions of this Order, the Loan Parties shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court (and nothing shall preclude the Debtors from seeking non-consensual use of Cash Collateral).

14.     *Adequate Protection of Prepetition Secured Parties*.  The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the Loan Parties of the Prepetition Collateral, the priming of the Prepetition Secured Parties' security

interests and liens in the Prepetition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "Prepetition Adequate Protection Claim").  In consideration of the foregoing, the Prepetition Secured Agent, for the benefit of  the Prepetition Secured Lenders, is hereby granted the following (collectively, the "Adequate Protection Obligations"):[2]

(a)      Prepetition Adequate Protection Liens.  The Prepetition Secured Agent (for itself and for the benefit of the Prepetition Secured Lenders) is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition Adequate Protection Claim, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral including, without limitation, Unencumbered Property and the Avoidance Proceeds, in each case subject and subordinate only to (i) the DIP Liens and any liens to which the DIP Liens are junior and (ii) the Carve Out (the "Adequate Protection Liens").

(b)      Prepetition Section 507(b) Claim.  The Prepetition Secured Agent (for itself and the benefit of the Prepetition Secured Lenders) is hereby granted, subject to the Carve Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition Adequate Protection Claim with, except as set forth in this Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "Prepetition 507(b) Claim"); which Prepetition 507(b) Claim shall have recourse to and be payable from all of the DIP Collateral including, without limitation, the Avoidance Proceeds.  The Prepetition 507(b)

---

[2] The Adequate Protection Obligations in subparagraphs (e) and (f) shall survive any termination of the DIP Credit Agreement or the DIP Commitments.

Claim shall be subject and subordinate only to the Carve Out and the DIP Superpriority Claims. Except to the extent expressly set forth in this Order or the DIP Credit Agreement, the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have indefeasibly been paid in cash in full and all DIP Commitments have been terminated.

(c)     <u>Prepetition Secured Parties Fees and Expenses</u>.  Without duplication of amounts required to be paid pursuant to the DIP Documents, (i) to the extent not previously paid, the Loan Parties shall pay in cash all reasonable and documented out-of-pocket professional fees, expenses and disbursements payable to the advisors to the Prepetition Secured Agent and the ad hoc group of Prepetition Secured Lenders (the "<u>Ad Hoc Secured Lender Group</u>") that accrued prior to the Petition Date in accordance with the Prepetition Secured Credit Agreement limited to, with respect to the Ad Hoc Secured Lender Group, all reasonable and documented invoiced fees and out-of-pocket expenses of (a) Davis Polk & Wardwell LLP; (b) Ankura Consulting Group, LLC; (c) Morris, Nichols, Arsht & Tunnell LLP; and (d) such other professionals engaged by the Ad Hoc Secured Lender Group with the prior written consent of the Loan Parties (with such consent not to be unreasonably withheld) that the Ad Hoc Secured Lender Group deems reasonably necessary to consummate the Cases (collectively, the "<u>Ad Hoc Secured Lender Group Professionals</u>"), and with respect to the Prepetition Secured Agent, all reasonable and documented out-of-pocket professional fees, expenses and disbursements payable to Alston & Bird LLP and to the extent engaged, with the prior written consent of the Loan Parties and the Ad Hoc Secured Lenders Group (with each such consent not to be unreasonably withheld), one

local counsel (the "Prepetition Secured Agent Professionals") and (ii) the Loan Parties shall pay in cash all reasonable and documented out-of-pocket professional fees, expenses and disbursements payable to the Ad Hoc Secured Lender Group Professionals and the Prepetition Secured Agent Professionals that accrue on or after the Petition Date. The payment of the fees, expenses and disbursements set forth in clause (ii) of the foregoing sentence and the payment of the fees, expenses and disbursements of any professionals retained by the DIP Agent and the DIP Lenders that accrue after the Petition Date and that are payable pursuant to this Order and the DIP Credit Agreement shall be made within ten (10) days (which time period may be extended by the applicable professional) after the receipt by the Debtors, the Creditors' Committee (if any) and the U.S. Trustee (the "Review Period") of invoices therefor (the "Invoiced Fees") and without the necessity of filing formal fee applications, including such amounts arising before or after the Petition Date. The invoices for such Invoiced Fees shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a reasonably detailed description of services provided and the expenses incurred by the applicable professional; *provided*, *however*, that any such invoice: (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail (*provided*, that such invoice shall contain (except for financial advisors compensated on other than an hourly basis), at a minimum, summary data regarding hours worked by each timekeeper for the applicable professional). The Debtors, the Creditors' Committee (if any) and the U.S. Trustee may object to any portion of the Invoiced Fees (the "Disputed Invoiced Fees") within the Review Period by filing with the Court a motion or other pleading, on at least ten (10) days' prior written notice to the DIP Agent, the DIP Lenders, the Prepetition Secured Agent and the Prepetition Secured Lenders of any hearing on such motion or other pleading, setting forth

the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided*, that payment of any undisputed portion of Invoiced Fees shall be paid within the time frame set forth above and shall not be delayed based on any objections thereto; *provided, further,* that the applicable parties shall endeavor in good faith to consensually resolve any such dispute prior to the filing of any such motion or pleading.

(d)    <u>Information Rights</u>.  The Debtors shall promptly provide the Prepetition Secured Agent, on behalf of itself and the Prepetition Secured Lenders, with all required written financial reporting and other periodic reporting that is required to be provided to the DIP Agent or the DIP Lenders under the DIP Credit Agreement.

(e)    <u>Budget Compliance</u>.  The Debtors shall at all times comply with the budget (the "<u>Budget</u>")[3], subject to the variances permitted by the DIP Credit Agreement.  The Debtors shall provide all reports and other information as required in the DIP Credit Agreement (subject to the grace periods provided therein); *provided*, that (i) in the case of the fees, costs and expenses of the DIP Agent, DIP Lenders, the Prepetition Secured Agent and the other Prepetition Secured Parties, and their respective advisors, the Debtors shall pay such fees, costs, and expenses in accordance with the DIP Documents and this Order without being limited by the Budget and (ii) payment of Professional Fees shall not be limited by the Budget.  The Debtors' failure to comply with the Budget (including the variances set forth in the DIP Credit Agreement) or to provide the reports and other information required in the DIP Credit Agreement shall constitute an Event of Default (as defined in the DIP Credit Agreement) following the expiration of any applicable grace period set forth in the DIP Credit Agreement and absent a waiver in accordance with the DIP Credit Agreement or hereunder.

---

[3] A copy of the initial Budget is attached to the Interim Order as **<u>Schedule 1</u>**.

(f)   <u>Milestones</u>.  Performance of the milestones set forth in Section 6.19 of the DIP Credit Agreement as in effect as of the date of entry of the Interim Order, in each case as may be waived, amended, modified or extended from time to time by the Required Lenders.

15.   *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties; *provided* that any of the Prepetition Secured Parties, upon a change in circumstances, may request further or different adequate protection, and the Debtors or any other party may contest any such request.

16.   *Perfection of DIP Liens and Adequate Protection Liens.*

(a)   In addition to the authority granted in the Interim Order, the DIP Secured Parties and the Prepetition Secured Parties are authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder or under the Interim Order. Whether or not the DIP Secured Parties or the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and

on the date of entry of the Interim Order.  Upon the request of the DIP Agent, each of the Prepetition Secured Parties and the Loan Parties, without any further consent of any party, is authorized (in the case of the Loan Parties) and directed (in the case of the Prepetition Secured Parties) to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve and enforce the DIP Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)    A certified copy of the Interim Order or this Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of the Interim Order or this Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

(c)    Notwithstanding anything to the contrary in the Motion, the DIP Documents or the DIP Orders, in no event shall the DIP Collateral include, or the DIP Liens or Adequate Protection Liens attach to, any lease or license, to which any Debtor is a party if and for so long as the grant of such security interest would constitute or result in: (x) the abandonment, invalidation, unenforceability or other impairment of any right, title or interest of any Debtor therein or (y) in a breach or termination pursuant to the terms of, or a default under, any such lease or license pursuant to any provision thereof, unless, in the case of each of clauses (x) and (y), the applicable provision is rendered ineffective by applicable non-bankruptcy law or

the Bankruptcy Code (such leases or licenses are collectively referred to as the "Specified Contracts"); *provided* that the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims and Prepetition 507(b) Claim shall in all events attach to and have recourse from all proceeds, products, offspring or profits from any and all Specified Contracts (including from the sale, transfer, disposition or monetization thereof).

17.    *Preservation of Rights Granted Under This Order.*

(a)    Other than the Carve Out and other claims and liens expressly granted or permitted by this Order or the DIP Documents, no claim or lien having a priority superior to or *pari passu* with those granted by this Order to the DIP Secured Parties or the Prepetition Secured Parties shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in paragraphs 8 or 14(a) of this Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Loan Parties' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Loan Parties.  No lien or security interest shall be granted to any other party in any of the Specified Contracts without first granting such lien or security interest to the DIP Secured Parties or the Prepetition Secured Parties (solely with respect to the Adequate Protection Obligations), as applicable.

(b)     Subject to a seven (7) business days grace period following delivery of written notice from the DIP Agent of the occurrence of any of the following termination events described in clause (ii) below (which shall run concurrently with any notice required to be provided under the DIP Documents), during which period the Debtors may cure (to the extent capable of being cured) any such failure, the Debtors shall not seek, and it shall constitute an Event of Default and terminate the right of the Loan Parties to use Cash Collateral if any of the Loan Parties, without the prior written consent of the Required Lenders seeks, proposes or supports (whether by way of motion or other pleadings filed with the Court or any other writing executed by any Loan Party or by oral argument), or if there is entered or confirmed (in each case, as applicable), or if there occurs:

(i)     a failure of the Debtors to make any payment under this Order to any of the Prepetition Secured Parties when due;

(ii)    a failure of the Debtors to (x) observe or perform any of the material terms or provisions contained in this Order or (y) comply with any covenant or agreement in this Order in any material respect;

(iii)   any modifications, amendments, reversal or extensions of this Order, and no such consent shall be implied by any other action, inaction or acquiescence by any party;

(iv)    an order converting or dismissing any of the Cases;

(v)     an order appointing a chapter 11 trustee in the Cases;

(vi)    an order appointing an examiner with enlarged powers in the Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code);

(vii)   a plan of reorganization other than an Acceptable Plan of Reorganization being proposed by the Debtors or confirmation thereof; or

(viii)  the sale of all or substantially all of the assets of the Loan Parties (except to the extent permitted under the DIP Documents), which does not provide for the repayment in full in cash of all DIP

Obligations (other than any contingent indemnification or expense reimbursement obligations for which no claim has been made).

Notwithstanding any order that may be entered dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered: (i) the DIP Superpriority Claims, the Prepetition 507(b) Claim, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash (and that such DIP Superpriority Claims, Prepetition 507(b) Claim, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Order.

(c)    If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Secured Agent, as applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens. Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral, any DIP Obligations, DIP Liens, Adequate Protection Obligations or Adequate Protection Liens incurred by the Loan Parties to the DIP Secured Parties or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent or the Prepetition Secured Agent, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Order, and the DIP

Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(d)    Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of the Interim Order and this Order, and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, or terminating the joint administration of these Cases or by any other act or omission; (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); (iii) the entry of an order confirming a chapter 11 plan in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations; or (iv) any other act or omission.  The terms and provisions of this Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of the Interim Order and this Order, and the DIP Documents shall continue in full force and effect until the DIP

Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the DIP Commitments have been terminated.

18.     *Effect of Stipulations on Third Parties.*  The Debtors' stipulations, admissions, agreements and releases contained in this Order, including, without limitation, in paragraph 4 of this Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in this Order, including, without limitation, in paragraph 4 of this Order, shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the Cases (including the Creditors' Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a) such committee or any other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph 18) by no later than (i) (x) with respect to parties in interest with requisite standing other than the Creditors' Committee, the earlier of an order confirming a chapter 11 plan and 75 calendar days after entry of the Interim Order and (y) with respect to the Creditors' Committee, the earlier of an order confirming a chapter 11 plan and 60 calendar days after the appointment of the Creditors' Committee, if any, (ii) any such later date as has been agreed to, in writing, by the Prepetition Secured Agent (with the consent of the Required Lenders (as defined in the Prepetition Secured Credit Agreement)) as applicable, and (iii) any such later

date as has been ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth in this paragraph (the time period established by the foregoing clauses (i), (ii), and (iii), the "Challenge Period"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Debt or the Prepetition Secured Credit Agreement Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against the Prepetition Secured Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "Representative" and, collectively, the "Representatives") in connection with matters related to the Prepetition Secured Documents, the Prepetition Secured Debt, the Prepetition Secured Credit Agreement Liens and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; provided, however, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in this Order, including, without limitation, those contained in paragraph 4 of this Order, shall be binding on all parties in interest, including, without limitation, the Creditors' Committee (if any);

(b) the obligations of the Loan Parties under the Prepetition Secured Documents, including the Prepetition Secured Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Cases, and any subsequent chapter 7 case(s); (c) the Prepetition Secured Credit Agreement Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (d) the Prepetition Secured Debt and the Prepetition Secured Credit Agreement Liens on the Prepetition Collateral shall not be subject to any other or further claim or challenge by the Creditors' Committee (if any), any non-statutory committees appointed or formed in the Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee (if any), any non-statutory committees appointed or formed in the Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to any of the Prepetition Secured Documents shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Order, including, without limitation, those contained in paragraph 4 of this Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any

statutory or non-statutory committee appointed or formed in the Cases, including the Creditors'

Committee (if any), and on any other person or entity, except to the extent that such stipulations,

admissions, agreements and releases were expressly and successfully challenged in such

Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.

Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code),

including the Creditors' Committee (if any) or any non-statutory committees appointed or

formed in these Cases, standing or authority to pursue any claim or cause of action belonging to

the Debtors or their estates, including, without limitation, Challenges with respect to the

Prepetition Secured Documents, the Prepetition Secured Debt or the Prepetition Secured Credit

Agreement Liens.

19.     *Limitation on Use of DIP Financing Proceeds and Collateral.*   Notwithstanding

any other provision of the DIP Orders or any other order entered by the Court, no DIP Loans,

DIP Collateral, Prepetition Collateral or any portion of the Carve Out, may be used directly or

indirectly by any Debtor, any Guarantor, any official committee appointed in the Cases, or any

trustee appointed in the Cases or any successor case, including any chapter 7 case, or any other

person, party or entity (i) in connection with the investigation, initiation or prosecution of any

claims, causes of action, adversary proceedings or other litigation (a) against any of the DIP

Secured Parties or the Prepetition Secured Parties, or their respective predecessors-in-interest,

agents, affiliates, representatives, attorneys, or advisors, or any action purporting to do the

foregoing in respect of the Prepetition Secured Debt, liens on the Prepetition Collateral, DIP

Obligations, DIP Liens, DIP Superpriority Claims and/or the adequate protection obligations,

adequate protection liens and superpriority claims granted to the Prepetition Secured Parties

under the DIP Orders, as applicable, or (b) challenging the amount, validity, perfection, priority

or enforceability of or asserting any defense, counterclaim or offset with respect to, the Prepetition Secured Debt, the DIP Obligations and/or the liens, claims, rights, or security interests granted under the DIP Orders, the DIP Documents or the Prepetition Secured Documents, including, in each case, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise, subject in all respects to rights of the Creditors' Committee (if any) to conduct an investigation solely to the extent provided in paragraph 7(g); (ii) to prevent, hinder, or otherwise delay or interfere with any Prepetition Secured Party's or any DIP Secured Party's, as applicable, enforcement or realization on the Prepetition Secured Debt, Prepetition Collateral, DIP Obligations, DIP Collateral, and the liens, claims and rights granted to such parties under the Orders, each in accordance with the DIP Documents, the Prepetition Secured Documents or this Order; (iii) to seek to modify any of the rights and remedies granted to the Prepetition Secured Parties or the DIP Secured Parties under the Interim Order, this Order, the Prepetition Secured Documents or the DIP Documents, as applicable; (iv) to apply to the Court for authority to approve superpriority claims or grant liens or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, adequate protection liens and superpriority claims and liens granted to the Prepetition Secured Parties, unless all DIP Obligations, Prepetition Secured Debt, Adequate Protection Obligations, and claims granted to the DIP Secured Parties or Prepetition Secured Parties under this Order, have been refinanced or paid in full in cash or any new financing to be secured by such proposed liens or claims is expressly conditioned on the payment in full of the DIP Obligations and Prepetition Secured Debt at closing of such financing, or unless otherwise agreed to in writing by the Required Lenders; or (v) to seek to pay any amount on account of any claims arising prior to

the Petition Date unless such payments are agreed to in writing by the Required Lenders or are otherwise included in the Budget and, in either case, are approved by an order of this Court.

20.     *Loss or Damage to Collateral*.   Nothing in the DIP Orders, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  So long as the DIP Secured Parties comply with their obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Loan Parties.

21.     *This Order Governs*.   Except as amended, supplemented, or otherwise modified by this Order, all of the provisions of the Interim Order shall remain in full force and effect and are hereby ratified by this Order. In the event of any inconsistency between the provisions of this Order, the Interim Order and the DIP Documents or any other order entered by this Court, the provisions of this Order shall govern.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Order and the DIP Documents, including, without limitation, the Approved Budget.

22.     *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, the Creditors' Committee (if any), any other statutory or non-statutory committees appointed or formed in these Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* that the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

23.     *Limitation of Liability.*  In determining to make any loan or other extension of credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Secured Parties shall not (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

24.     *Master Proof of Claim.*  The Prepetition Secured Agent shall not be required to file proofs of claim in the Cases or any successor case in order to assert claims on behalf of itself and the Prepetition Secured Parties for payment of the Prepetition Secured Debt arising under the Prepetition Loan Documents, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts under the Prepetition Secured Credit Agreement.  The statements of claim in respect of the Prepetition Secured Debt set forth in this Order, together with any evidence accompanying the Motion and presented at the Interim Hearing or Final Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status.  However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, the Prepetition Secured Agent is authorized, but not required, to file in the Debtors' lead chapter 11 case *In re Dixie Electric, LLC*, Case No. 18-12477, a single, master proof of claim on behalf of the Prepetition Secured Parties on account of any and all of their respective claims arising under the applicable Prepetition Secured Documents and hereunder (each, a "Master Proof of Claim") against each of the Debtors.  Upon the filing of a Master Proof of Claim against each of the Debtors, the Prepetition Secured Agent and the Prepetition Secured Parties, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Prepetition Secured Documents, and the claim of each Prepetition Secured Credit Agreement Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Cases.  The Master Proofs of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the

identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph 24 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Cases.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the Prepetition Secured Agent.

25.     *Insurance*.  To the extent that any of the Prepetition Secured Agents is listed as loss payee under the Borrower's or Guarantors' insurance policies, the DIP Agent is also deemed to be the loss payee under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, <u>first</u>, to the payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted), and <u>second</u>, to the payment of the Prepetition Secured Debt.

26.     *Effectiveness*.  This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

27.    *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Order.

28.    *Payments Held in Trust.*  Except as expressly permitted in this Order or the DIP Documents, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and termination of the DIP Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Secured Parties and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Order.

29.    *Credit Bidding*.  (a) The DIP Agent shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the DIP Obligations in any sale of the DIP Collateral, and (b) subject to any Challenge, the Prepetition Secured Parties shall have the right to credit bid up to the full amount of the Prepetition Secured Debt in any sale of the DIP Collateral, in each case, as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

30.    *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

01:23877214.1

48

31.    *Necessary Action*.    The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

32.    *Retention of Jurisdiction*.    The Court shall retain exclusive jurisdiction to enforce the provisions of this Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

SO ORDERED.

01:23877214.1    **Dated: December 10th, 2018
Wilmington, Delaware**

**KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE**