**Exhibit A**

**Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| DIXIE ELECTRIC, LLC, *et al.*,[1] | Case No. 18-~~————~~12477 (~~———~~KG) |
| Debtors. | (~~Joint Administration Requested~~)Jointly Administered) |

---

### **AMENDED** JOINT PRE-PACKAGED PLAN OF REORGANIZATION OF DIXIE ELECTRIC, LLC AND ITS DEBTOR AFFILIATES

---

Dated: ~~October 31~~December 11, 2018

SIMPSON THACHER & BARTLETT LLP
Elisha D. Graff, Esq.
Kathrine A. McLendon, Esq.
Edward R. Linden, Esq.
David Baruch, Esq.
425 Lexington Avenue
New York, NY 10017
T: (212) 455-2000
F: (212) 455-2502

– and –

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Edmon L. Morton, Esq.

Sean M. Beach, Esq.
Elizabeth S. Justison, Esq.
Tara C. Pakrouh, Esq.
Rodney Square

1000 North King Street

Wilmington, Delaware 19801
T: (302) 571-6600
F: (302) 571-1253

*~~Proposed~~ Counsel to Debtors and Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: FR Dixie Holdings Corp. (4205), FR Dixie Acquisition Corp. (6859), FR Dixie Acquisition Sub Corp. (6379), Dixie Electric, LLC (3176), Monahans Electric, Inc. (2307), K&S Electric, Inc. (8960), L&K Electric, LLC (3297), Patriot Automation & Control, LLC (7466), Epic Integrated Services, LLC (5274), Action Electric Holdings, Inc. (4496), Action Electric, Inc. (0227), Mac Supply, Inc. Electrical Contractors (6230), and Wellkeeper, Inc. (4522). The mailing address for each Debtor is 1155 Dairy Ashford Rd, Suite 450, Houston, TX 77079.

**TABLE OF CONTENTS**

Page

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS .................................................................. 2

    A.    Rules of Interpretation, Computation of Time and Governing Law ......... 2

    B.    Definitions .................................................................................................. 3

ARTICLE II. TREATMENT OF UNCLASSIFIED CLAIMS ..................................... 18

    A.    Administrative Claims ................................................................................ 18

    B.    Priority Tax Claims .................................................................................... 19

    C.    DIP Claims ................................................................................................. 19

    D.    Statutory Fees ............................................................................................ 20

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ................................................................. 20

    A.    Introduction ............................................................................................... 20

    B.    Summary of Classification and Treatment of Classified Claims and Equity Interests .................................................................................... ~~20~~21

    C.    Classification and Treatment of Claims and Equity Interests ................... 21

    D.    Special Provisions Regarding Unimpaired Claims .................................... ~~23~~24

    E.    Subordinated Claims .................................................................................. 24

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ............................. 24

    A.    Presumed Acceptance of the Plan ............................................................. 24

    B.    Deemed Rejection of the Plan ................................................................... 24

    C.    Voting Classes ........................................................................................... ~~24~~25

    D.    Acceptance by Impaired Classes of Claims and Equity Interests ............. ~~24~~25

    E.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ........ ~~24~~25

    F.    Plan Cannot Be Confirmed as to Some or All Debtors ............................. 25

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN .......................... 25

    A.    Corporate and Organizational Existence; Reorganized Capital Structure and the New Common Stock .................................................... 25

    B.    Organizational Documents of the Reorganized Debtors ........................... ~~25~~26

    C.    Managers, Directors and Officers of Reorganized Debtors; Corporate Governance ............................................................................. ~~26~~27

    D.    New First Lien Facility ............................................................................. ~~26~~27

    E.    Issuance of New Securities and Related Documents ................................. ~~27~~28

    F.    Management Incentive Plan ....................................................................... ~~28~~29

| | | | |
|---|---|---|---|
| G. | Restructuring Transactions | 28<u>29</u> |
| H. | Vesting of Assets in the Reorganized Debtors | 29<u>30</u> |
| I. | Release of Liens, Claims and Equity Interests | 30 |
| J. | Cancellation of Stock, Certificates, Instruments and Agreements | 30<u>31</u> |
| K. | Dissolution of Certain Debtors | 31 |
| L. | Preservation and Maintenance of Debtor Causes of Action | 31 |
| M. | Exemption from Certain Transfer Taxes | 32 |
| N. | Certain Tax Matters | 32<u>33</u> |
| O. | Distributions | 32<u>33</u> |
| P. | Restructuring Expenses | 32<u>33</u> |

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .... 33

| | | |
|---|---|---|
| A. | Assumption of Executory Contracts and Unexpired Leases | 33 |
| B. | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 34 |
| C. | Rejection of Executory Contracts or Unexpired Leases | 34<u>35</u> |
| D. | Assumption of Insurance Policies | 34<u>35</u> |
| E. | Indemnification | 35<u>36</u> |
| F. | Compensation and Benefit Programs; Employment Agreements | 35<u>36</u> |
| G. | Workers' Compensation Benefits | 36<u>37</u> |

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS .... 36<u>37</u>

| | | |
|---|---|---|
| A. | Distribution Record Date | 36<u>37</u> |
| B. | Dates of Distributions | 37 |
| C. | Distribution Agent | 37<u>38</u> |
| D. | Cash Distributions | 37<u>38</u> |
| E. | Rounding of Payments | 37<u>38</u> |
| F. | Allocation between Principal and Interest | 38<u>39</u> |
| G. | General Distribution Procedures | 38<u>39</u> |
| H. | Address for Delivery of Distributions | 38<u>39</u> |
| I. | Unclaimed Distributions | 38<u>39</u> |
| J. | Withholding Taxes | 39 |
| K. | No Postpetition Interest on Claims | 39<u>40</u> |
| L. | Setoffs | 39<u>40</u> |
| M. | Surrender of Canceled Instruments or Securities | 40 |

ARTICLE VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ........................ 4041

    A.    Conditions to Effective Date ................................................................ 4041

    B.    Waiver of Conditions ......................................................................... 4142

    C.    Effect of Non-Occurrence of Conditions to the Effective Date ........... 42

ARTICLE IX. RETENTION OF JURISDICTION .................................................. 4243

    A.    Retention of Jurisdiction ..................................................................... 4243

    B.    Failure of Bankruptcy Court to Exercise Jurisdiction ......................... 44

ARTICLE X. EFFECTS OF CONFIRMATION ..................................................... 4445

    A.    General Settlement of Claims .............................................................. 4445

    B.    Binding Effect .................................................................................... 4445

    C.    Discharge of the Debtors ..................................................................... 4445

    D.    Exculpation and Limitation of Liability ............................................... 4546

    E.    Releases by the Debtors ....................................................................... 4546

    F.    Releases by Holders of Claims and Equity Interests. ........................... 4647

    G.    Injunction ........................................................................................... 4849

    H.    Protection Against Discriminatory Treatment ...................................... 4950

ARTICLE XI. MISCELLANEOUS PROVISIONS .................................................. 4950

    A.    Modification of Plan ........................................................................... 4950

    B.    Revocation of Plan .............................................................................. 50

    C.    Severability of Plan Provisions ........................................................... 5051

    D.    Successors and Assigns ....................................................................... 5051

    E.    Term of Injunctions or Stays .............................................................. 5051

    F.    Reservation of Rights .......................................................................... 5051

    G.    Notices ................................................................................................ 5152

    H.    Governing Law ................................................................................... 5354

    I.    Exhibits .............................................................................................. 5354

    J.    Consent Rights of Required Consenting Secured Lenders ................... 5354

    K.    No Strict Construction ........................................................................ 5354

    L.    Conflicts ............................................................................................. 54

    M.    Immediate Binding Effect ................................................................... 5455

    N.    Closing of Chapter 11 Cases; Caption Change. ................................... 5455

    O.    Entire Agreement ............................................................................... 5455

    P.    Reservation of Rights .......................................................................... 5455



## INTRODUCTION

Dixie Electric, LLC, a Texas limited liability company, together with the other above-captioned Debtors,[2] hereby propose the Plan for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtors. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement (distributed contemporaneously herewith) for a discussion of the Debtors' history, businesses, properties, and projections and the events leading up to Solicitation of the Plan and for a summary and analysis of the Plan and the treatment provided for herein. The Debtors urge all Holders of Claims entitled to vote on the Plan to review the Disclosure Statement and the Plan in full before voting to accept or reject the Plan. There also are other agreements and documents that will be filed with the Bankruptcy Court that are referenced in the Plan and the Plan Supplement as Exhibits. All such Exhibits are incorporated into and are a part of the Plan as if set forth in full herein. Subject to certain restrictions set forth in the RSA and the Plan, and the requirements set forth in 11 U.S.C. § 1127 and Bankruptcy Rule 3019, the Debtors reserve the right to amend, supplement, amend and restate, modify, revoke or withdraw the Plan prior to the Effective Date.

The Chapter 11 Cases will be consolidated for procedural purposes only and the Debtors will request that they be jointly administered pursuant to an order of the Bankruptcy Court. The Plan constitutes a separate plan of reorganization for each of the Debtors and notwithstanding anything herein, the Plan may be confirmed and consummated as to each of the Debtors separate from, and independent of, confirmation and consummation of the Plan as to any other Debtor. If the Plan cannot be confirmed as to some or all of the Debtors, then the Debtors, with the consent of the Required Consenting Secured Lenders and without prejudice to and subject to the respective parties' rights under the RSA, (a) may revoke the Plan as to all of the Debtors or (b) may revoke the Plan as to any Debtor (and any such Debtor's Chapter 11 Case may be converted, continued or dismissed) and confirm the Plan as to the remaining Debtors to the extent required without the need for re-solicitation as to any Holder of a Claim against and/or Equity Interest in a Debtor for which the Plan is not so revoked. The Debtors reserve the right to seek confirmation of the Plan pursuant to the "cram down" provisions contained in section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class.

---

[2]  Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in Article I.B of the Plan.

# Article I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

### A.    Rules of Interpretation, Computation of Time and Governing Law

For purposes hereof: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections hereof; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) unless otherwise stated, any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (j) "$" or "dollars" means dollars in lawful currency of the U.S.; (k) any effectuating provisions may be interpreted by the Debtors or the Reorganized Debtors in a manner consistent with the overall purpose and intent of the Plan and with the consent of the Required Consenting Secured Lenders (which consent may not be unreasonably withheld, conditioned or delayed), all without further notice to or action, order, or approval of the Bankruptcy Court or any other entity, and, to the extent of any dispute with respect thereto, the Bankruptcy Court shall retain jurisdiction consistent with Article IX; (l) references to "shareholders," "directors," and/or "officers" shall also include "members", "partners," "limited partners", "general partners" and/or "managers," as applicable, as such terms are defined under the applicable state general corporate, limited liability company and/or partnership laws; and (m) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation."   The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.   If any payment, distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.



B.    **Definitions**

1.1    "**Ad Hoc Group**" means the ad hoc group of Prepetition Secured Lenders represented by, *inter alia*, Davis Polk & Wardwell LLP, Morris, Nichols, Arsht & Tunnel LLP and Ankura Consulting Group, LLC.

1.2    "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in section 503(b) or section 1114(e)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(1) of the Bankruptcy Code, including (a) actual, necessary costs and expenses of preserving the Debtors' Estates and operating the Debtors' businesses, including wages, salaries, or commissions for services rendered, (b) Professional Fee Claims and any other compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under section 327, 328, 330, 331, 363, or 503(b) of the Bankruptcy Code to the extent incurred prior to and including the Effective Date, (c) DIP Claims and (d) all fees and charges assessed against the Estates under chapter 123 of title 28, United States Code.

1.3    "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.4    "**Allowed**" means, with respect to any Claim or Equity Interest, such Claim or Equity Interest or any portion thereof that the Debtors and the Required Consenting Secured Lenders have assented to the validity of or that has been (a) allowed by an order of the Bankruptcy Court, (b) allowed pursuant to the terms of the Plan, (c) allowed by agreement between the Holder of such Claim, on one hand, and the Debtors and the Required Consenting Secured Lenders, or the Reorganized Debtors, as applicable, on the other hand, or (d) allowed by an order of a court in which such Claim could have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided*, that, notwithstanding the foregoing, the Reorganized Debtors shall retain all Causes of Action and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan (including, for the avoidance of doubt, Administrative Claims not paid prior to the Effective Date).

1.5    "**Assumed Agreement**" means an Executory Contract or Unexpired Lease which has been assumed by the Debtors either pursuant to the terms of the Plan or pursuant to an order of the Bankruptcy Court.

1.6    "**Avoidance Actions**" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies arising under chapter 5 of the Bankruptcy Code.

1.7    "**Ballot**" means, with respect to a Holder of a Claim in a Voting Class, the applicable voting form distributed to such Holder on which the Holder is to indicate, among other things, acceptance or rejection of the Plan in accordance with the instructions contained therein and make any other elections or representations required pursuant to the Plan or as described in the Disclosure Statement.



1.8 "**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or hereafter amended.

1.9 "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware or any other court with jurisdiction over the Chapter 11 Cases.

1.10 "**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms and the Local Rules, in each case as amended from time to time and as applicable to the Chapter 11 Cases or proceedings therein.

1.11 "**Barnes Agreement**" means an employment agreement between the Reorganized Debtors, as applicable, and Trey Barnes (the Chief Financial Officer of the Debtors), to be effective on or immediately after the Effective Date in accordance with the Plan and as contemplated by the Restructuring Term Sheet.

1.12 "**Borrower**" means FR Dixie Acquisition Corp., a Delaware corporation.

1.13 "**Business Day**" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York, New York.

1.14 "**Cash**" means legal tender of the U.S. or the equivalent thereof.

1.15 "**Cause of Action**" means any action, proceeding, agreement, claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Cause of Action also includes: (a) any right of setoff, cross-claim, counterclaim, or recoupment, and any claim on a contract or for a breach of duty imposed by law or in equity; (b) with respect to the Debtors, the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any Avoidance Action; and (f) any state law fraudulent transfer claim.

1.16 "**Chapter 11 Cases**" means the cases commenced by the Debtors under chapter 11 of the Bankruptcy Code on the Petition Date in the Bankruptcy Court.

1.17 "**Claim**" means a "claim" against any of the Debtors as defined in section 101(5) of the Bankruptcy Code.

1.18 "**Class**" means a category of Claims or Equity Interests classified under Article III of the Plan pursuant to section 1122 of the Bankruptcy Code.

01:23932532.123
948082.3

1.19    "**Closing Case**" means any of the Chapter 11 Cases, as identified in the Plan Supplement or in the relevant case closing orders, as applicable, that, as of the Effective Date, may be closed by an order of the Bankruptcy Court submitted under certification of counsel without further motion.

1.20    "**Compensation and Benefit Plans**" means, collectively, the compensation and benefit plans, policies, and programs of the Debtors generally applicable to its employees, retirees, and the employees and retirees of its subsidiaries, including all savings plans, retirement plans, healthcare plans, disability plans, severance policies and arrangements, benefit plans, incentive plans, life, and accidental death and dismemberment insurance plans.

1.21    "**Confirmation**" means the entry by the Bankruptcy Court of the Confirmation Order on the docket of the Chapter 11 Cases, within the meanings of Bankruptcy Rules 5003 and 9021.

1.22    "**Confirmation Date**" means the date upon which Confirmation occurs.

1.23    "**Confirmation Hearing**" means the hearing to consider confirmation of the Plan under section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.24    "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan entered pursuant to section 1129 of the Bankruptcy Code and, to the extent applicable, approving the Disclosure Statement, which order shall be in form and substance reasonably satisfactory to the Debtors, the Required Consenting Secured Lenders, the Required DIP Lenders, the Prepetition Agent, the Consenting Equityholder and the Prepetition Unsecured Lender.

1.25    "**Consenting Prepetition Secured Lenders**" means those Prepetition Secured Lenders that agree to support the Restructuring Transactions as signatories to the RSA.

1.26    "**Consenting Equityholder**" means FR Dixie Management LP, a Delaware limited partnership, in its capacity as the sole equityholder of Parent and as a signatory to the RSA.

1.27    "**Converted DIP Loan Claims**" means DIP Claims held by the DIP Lenders constituting the principal amount of DIP Loans outstanding immediately prior to the Effective Date, which shall be converted into Effective Date Term Loans pursuant to and subject to the conditions set forth in the New First Lien Credit Agreement on the Effective Date.

1.28    "**Coward Agreement**" means that certain Employment Agreement between FR Dixie Acquisition Corp. and Jerrit Coward (Chief Executive Officer of the Debtors), dated as of January 9, 2018, as may be amended.

1.29    "**Coward Amendment**" means an amendment to the Coward Agreement to provide that, upon the grant to Mr. Coward of an Emergence Grant consistent with the terms

set forth in the Restructuring Term Sheet, Mr. Coward will cease to be eligible to receive the Management Bonus under Section 5(a) of the Coward Agreement.

1.30     "**Cure**" means the payment of Cash by the Debtors, or the distribution of other property or other action (as the parties may agree or the Bankruptcy Court may order), as necessary to cure defaults under an Executory Contract or Unexpired Lease of the Debtors that the Debtors may assume under section 365(a) of the Bankruptcy Code.

1.31     "**Czarnecki Agreement**" means that certain Employment, Noncompetition and Confidentiality Agreement between Dixie Electric, LLC and David Czarnecki (Chief Operating Officer of the Debtors), dated as of September 18, 2014, as may be amended.

1.32     "**Debtors**" means each of the above-captioned debtors and debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

1.33     "**Description of Restructuring Transactions**" means a summary description of certain Restructuring Transactions, including any changes to the corporate and/or capital structure of the Debtors (to the extent known), to be made on the Effective Date as determined by the Debtors and the Required Consenting Secured Lenders, to be filed with the Plan Supplement. For the avoidance of doubt, changes to the corporate and/or capital structure may include, but are not limited to, (i) the conversion of one or more of the Debtors into corporations, limited liability companies or partnerships, as applicable, (ii) the creation of one or more entities to become the Reorganized Parent or a subsidiary of any of the Reorganized Debtors, (iii) the issuance of intercompany liabilities and/or intercompany equity, (iv) the issuance, cancellation, or transfer of any Equity Interests in any of the Debtors, and (v) any elections with respect to the Reorganized Debtors for United States federal income tax purposes.

1.34     "**DIP Agent**" means Wilmington Trust, National Association, in its capacity as administrative agent and collateral agent, under the DIP Facility, solely in its capacity as such, or its successor thereto.

1.35     "**DIP Claims**" means any Claims held by any of the DIP Lenders or the DIP Agent against, and obligations of, any of the Debtors arising under the DIP Documents or the DIP Orders.

1.36     "**DIP Credit Agreement**" means the credit agreement with respect to the DIP Facility, among the Borrower, as borrower, each of the guarantors named therein, the DIP Lenders and the DIP Agent (as amended, supplemented, amended and restated, or otherwise modified from time to time), the form of which shall be attached as an exhibit to the motion seeking entry of the DIP Orders and which shall be in form and substance reasonably acceptable to the Debtors, the DIP Agent and each DIP Lender.

1.37     "**DIP Documents**" means the DIP Credit Agreement and any related notes, certificates, agreements, documents and instruments (including any amendments, supplements, amendments and restatements, or other modifications of any of the foregoing)

related to or executed in connection with the DIP Credit Agreement, which shall be in form and substance reasonably acceptable to the Debtors, the DIP Agent and each DIP Lender.

1.38 "**DIP Facility**" means the debtor-in-possession facility of the Debtors under and evidenced by the DIP Credit Agreement, as approved by the Bankruptcy Court, with term loans borrowed thereunder in the aggregate principal amount of seventeen million five hundred thousand dollars ($17,500,000.00), fifteen million dollars ($15,000,000.00) of which shall have been available and extended upon entry of the interim DIP Order and the remaining portion of which shall have been available upon entry of the final DIP Order.

1.39 "**DIP Lenders**" means the lenders from time to time under the DIP Facility, solely in their capacities as such.

1.40 "**DIP Loans**" means the term loans made under the DIP Facility in an aggregate principal amount of up to seventeen million five hundred thousand dollars ($17,500,000.00).

1.41 "**DIP Orders**" means, collectively, the interim and final orders entered by the Bankruptcy Court authorizing the Debtors to enter into the DIP Credit Agreement and access the DIP Facility, which order shall be in form and substance reasonably satisfactory to the Debtors, the Required Consenting Secured Lenders, each DIP Lender and the DIP Agent.

1.42 "**DIP Facility Term Sheet**" means the term sheet attached to the RSA as **Exhibit B**, along with any annexes thereto, setting forth the material terms of the DIP Facility.

1.43 "**Disclosure Statement**" means that certain *Disclosure Statement for Joint Pre-Packaged Plan of Reorganization of Dixie Electric, LLC and its Debtor Affiliates*, as may be amended, supplemented, amended and restated, or otherwise modified from time to time, and that is prepared and distributed in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3016 and 3018 and applicable non-bankruptcy law, in form and substance reasonably satisfactory to the Debtors and the Required Consenting Secured Lenders.

1.44 "**Dissolving Debtors**" means Epic Integrated Services, LLC, a Texas limited liability company, and Mac Supply, Inc. Electrical Contractors, a Texas corporation, and/or, to the extent contemplated under the Description of Restructuring Transactions, Parent.

1.45 "**Distribution Agent**" means the Reorganized Debtors or any party designated by the Reorganized Debtors to serve as distribution agent under the Plan.

1.46 "**Distribution Record Date**" means the Confirmation Date.

1.47 "**D&O Liability Insurance Policies**" means all insurance policies (including any "tail policy") for liability of the managing members, members, managers, general partners, directors, and officers maintained by the Debtors as of the Petition Date or thereafter.

1.48 "**Effective Date**" means the date on which the Plan shall take effect, which date shall be a Business Day, selected by the Debtors and the Required Consenting

Secured Lenders, on which (a) all conditions in Article VIII.A of the Plan have been satisfied or waived as provided for in Article VIII.B and (b) consummation of the Restructuring Transactions has occurred.

1.49    "**Effective Date Term Loans**" means the aggregate principal amount of term loans under the New First Lien Facility funded on the Effective Date by the New First Lien Facility Lenders, including the Converted DIP Loan Claims.

1.50    "**Emergence Grants**" means the grant of seventy-five percent (75.00%) of the MIP Award Pool under the MIP by the New Board upon adoption of the MIP on or immediately after the Effective Date, as described in and consistent in all respects with the terms set forth in the Restructuring Term Sheet, which Emergence Grants shall proportionally dilute all other New Common Stock issued on the Effective Date.

1.51    "**Entity**" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

1.52    "**Equity Interest**" means all outstanding ownership interests in any of the Debtors, including any interest evidenced by common or preferred stock, a limited liability company or other membership or partnership interest or unit, a warrant, an option, or any other right to acquire or otherwise receive any ownership interest in any of the Debtors, or any right to payment or compensation based upon any such interest, whether or not such interest is owned by the Holder of such right to payment or compensation.

1.53    "**Estate**" means the estate of a Debtor in the applicable Chapter 11 Case, as created under section 541 of the Bankruptcy Code.

1.54    "**Exculpated Parties**" means, (a) each Debtor, (b) each Reorganized Debtor and (c) all current and former officers, directors, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents, managers, managing members, general partners, principals and other representatives of the Debtors in their capacity as such, to the extent such parties are fiduciaries of the Debtors' Estates.

1.55    "**Executory Contract**" means a contract to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.56    "**Exhibit**" means an exhibit annexed to either the Plan or the Plan Supplement or as an exhibit or appendix to the Disclosure Statement (as such exhibits may be amended, supplemented, amended and restated, or otherwise modified from time to time).

1.57    "**Existing Parent Interests**" means the Equity Interests in Parent.

1.58    "**Final Order**" means an order or judgment of the Bankruptcy Court or another court of competent jurisdiction as to which no stay has been entered and either the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new

trial, reargue, or rehear shall have been waived in writing in form and substance reasonably satisfactory to the Required Consenting Secured Lenders and in form and substance satisfactory to the Debtors or the Reorganized Debtors, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been affirmed, or otherwise not vacated, or such appeal, writ of certiorari, new trial, reargument, or rehearing shall have been denied, in each case, by the highest court to which such appeal, writ of certiorari, new trial, reargument, or rehearing had been sought and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

1.59    "**Forbearance Agreement**" means that certain Amended and Restated Forbearance Agreement, dated as of September 28, 2018, by and among the Debtors party thereto, the Prepetition Agent and the other Prepetition Secured Parties party thereto, as otherwise amended and/or extended from time to time.

1.60    "**General Unsecured Claim**" means any Claim against any Debtor that is not an Administrative Claim, a DIP Claim, a Priority Tax Claim, an Other Priority Claim, a Professional Fee Claim, a Secured Loan Claim, an Other Secured Claim, an Unsecured Loan Claim or an Intercompany Claim.

1.61    "**Governmental Unit**" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

1.62    "**Holder**" means an Entity holding a Claim against, or Equity Interest in, any Debtor as of the applicable date of determination.

1.63    "**Impaired**" means, with respect to a Claim, Equity Interest or Class of Claims or Equity Interests, "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

1.64    "**Indemnification Agreement**" means any organizational or employment and/or service agreement of or with a Debtor that provides for the indemnification of any managing member, member, manager, general partner, director, officer or employee of the Debtors.

1.65    "**Intercompany Claim**" means any Claim by a Debtor against another Debtor.

1.66    "**Intercompany Interest**" means any Equity Interest held by a Debtor in any other Debtor.

1.67    "**Lien**" means a "lien" as defined in section 101(37) of the Bankruptcy Code, and, with respect to any asset, includes any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

1.68    "**Local Rules**" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

1.69    "**MIP**" means an equity-based management incentive plan to be adopted by the New Board on or immediately after the Effective Date, the terms of which shall be in form and substance reasonably acceptable to the Required Consenting Secured Lenders and the Debtors or the Reorganized Debtors, as applicable, and for which the MIP Award Pool, including the Emergence Grants, shall be reserved for grant by the New Board for the benefit of employees, directors and consultants of the Company as contemplated by the Restructuring Term Sheet.

1.70    "**MIP Award Pool**" means ten percent (10.0%) of the New Common Stock as of the Effective Date on a fully-diluted basis, which shall be reserved for issuance by the New Board for grants under the MIP, including the Emergence Grants.  Upon grant of an award under the MIP, the underlying New Common Stock from the MIP Award Pool shall proportionally dilute all of the New Common Stock issued pursuant to the Plan in connection with the Restructuring Transactions, as contemplated by the Restructuring Term Sheet.

1.71    "**New Board**" means the initial board of directors of the Reorganized Borrower, which shall be comprised of five (5) members, each with one vote, four (4) of whom shall be selected by the Ad Hoc Group and one (1) of whom shall be the Chief Executive Officer of the Reorganized Debtors.

1.72    "**New Common Stock**" means the common stock, par value of $0.0001 per share, of Reorganized Parent.

1.73    "**New First Lien Credit Agreement**" means the credit agreement with respect to the New First Lien Facility among the Reorganized Borrower, as borrower, each of the guarantors named therein, the New First Lien Facility Lenders and the New First Lien Facility Agent (as amended, supplemented, amended and restated, or otherwise modified from time to time), which shall be consistent in all respects with the material terms and conditions set forth in the New First Lien Facility Term Sheet and otherwise shall be in form and substance reasonably acceptable to the Debtors, each New First Lien Facility Lender and the New First Lien Facility Agent.

1.74    "**New First Lien Facility**" means the exit facility of the Reorganized Debtors to be entered into on the Effective Date under and evidenced by the New First Lien Credit Agreement, as approved by the Bankruptcy Court, with term loan commitments in the aggregate principal amount of thirty million dollars ($30,000,000), or such other amount acceptable to the New First Lien Facility Lenders and the Debtors and authorized by the Bankruptcy Court, consisting of the Effective Date Term Loans.

1.75    "**New First Lien Facility Agent**" means Wilmington Trust, National Association, in its capacity as administrative agent and collateral agent under the New First Lien Facility, solely in its capacity as such, or its successor thereto.

1.76    "**New First Lien Facility Documents**" means the New First Lien Credit Agreement and any related notes, certificates, agreements, security agreements, documents and

instruments (including any amendments, supplements, amendments and restatements, or other modifications of any of the foregoing) related to or executed in connection with the New First Lien Credit Agreement.

1.77 "**New First Lien Facility Fee**" means a fee in the aggregate amount equal to three and one-half percent (3.5%) of the twelve and one-half million ($12,500,000.00) new money portion of the Effective Date Term Loans payable in Cash on the Effective Date, which New First Lien Facility Fee may take the form of original issue discount.

1.78 "**New First Lien Facility Lenders**" means the lenders under the New First Lien Facility, solely in their capacities as such, who have agreed to provide 100% of the commitments and the loans under the New First Lien Facility on and after the Effective Date and on the terms and conditions consistent in all respects with the RSA.

1.79 "**New First Lien Facility Term Sheet**" means the term sheet attached to the RSA as **Exhibit C**, along with any annexes thereto, setting forth the material terms of the New First Lien Facility.

1.80 "**New L/C Facility**" means a new letter of credit facility (if any) in an amount and on terms and conditions reasonably acceptable to the Required Consenting Secured Lenders and the Debtors and subject to the terms and conditions of the RSA.

1.81 "**New Governance Documents**" means the amended certificate of incorporation of the Reorganized Parent, the amended bylaws of Reorganized Parent, the Stockholders Agreement (if any), the Registration Rights Agreement (if any), and the amended organizational documents of the other Reorganized Debtors, each of which, shall be in form and substance consistent with, and subject to the consent rights contained within, the RSA.

1.82 "**New Securities and Related Documents**" means, collectively, the New Common Stock and other related documents or agreements required to be issued, executed or delivered pursuant to the Plan, each of which shall be in form and substance acceptable to the Required Consenting Secured Lenders and in consultation with the Debtors.

1.83 "**Ordinary Course Professionals Order**" means an order of the Bankruptcy Court, if any, approving a motion to employ ordinary course professionals in the Chapter 11 Cases.

1.84 "**Other Priority Claim**" means a Claim entitled to priority under section 507(a) of the Bankruptcy Code other than a Priority Tax Claim or an Administrative Claim.

1.85 "**Other Secured Claim**" means any Secured Claim against any Debtor other than a Secured Loan Claim or a DIP Claim.

1.86 "**Parent**" means FR Dixie Holdings Corp., a Delaware corporation.

1.87 "**Person**" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited

01:23932532.123
938082.3

partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

1.88   "**Petition Date**" means the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

1.89   "**Plan**" means, collectively, this joint pre-packaged plan of reorganization, the Exhibits, all supplements, appendices, and schedules hereto, either in their present form or as the same may be amended, supplemented, amended and restated, or otherwise modified from time to time in accordance with the RSA, and any document to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, including the documents to be included in the Plan Supplement.

1.90   "**Plan Documents**" shall have the meaning ascribed to it in the RSA.

1.91   "**Plan Supplement**" means one or more supplements to the Plan containing certain schedules, documents and/or forms of documents relating to the implementation of the Plan, which may include the material New Governance Documents, or forms thereof, as applicable, the Closing Cases, the Description of Restructuring Transactions, the MIP, designation of the identity of the members of the New Board and the members, managers and directors, as applicable, of each of the other Reorganized Debtors (in each case, to the extent known), disclosure of the identity and compensation of any insiders proposed to serve as officers and directors of the Reorganized Debtors, the Schedule of Proposed Cure Amounts, a schedule of rejected contracts (if any) and any other schedules, documents and/or forms of documents necessary to comply with Bankruptcy Code sections 1123(a)(7) and 1129(a)(5), an initial version of which the Debtors intend to file with the Bankruptcy Court before the deadline to object to Confirmation of the Plan, as amended, supplemented, or modified from time to time in accordance with the terms of the Plan, the RSA, and the Bankruptcy Code.

1.92   "**Preference Actions**" means any and all avoidance, recovery or other actions or remedies that may be brought by and on behalf of the Debtors or their Estates under section 547 of the Bankruptcy Code.

1.93   "**Prepetition Agent**" means Wilmington Trust, National Association, as successor Prepetition Agent and collateral agent under the Prepetition Secured Credit Agreement, together with its successors and assigns in such capacities.

1.94   "**Prepetition Secured Credit Agreement**" means that certain Credit Agreement, dated as of December 18, 2013 (as amended and restated, dated as of January 29, 2014, as further amended by that certain Amendment No. 1 to Credit Agreement, dated as of August 11, 2017, and that certain Resignation and Appointment Agreement and Amendment No. 2 to Credit Agreement, dated as of August 31, 2018, and as may be further amended, supplemented or otherwise modified from time to time), among the Parent, Borrower, the Guarantors (as defined therein) from time to time party thereto, the Prepetition Secured Lenders and the Prepetition Agent.

01:23932532.123
9§8082.3

1.95    "**Prepetition Secured Lenders**" means the lenders, in their capacity as lenders of the revolving loans and/or term loans under the Prepetition Secured Credit Agreement, from time to time party thereto.

1.96    "**Prepetition Secured Loan Documents**" means, collectively, the Prepetition Secured Credit Agreement, the Forbearance Agreement and the Loan Documents (as defined in the Prepetition Secured Credit Agreement), together with all related documentation.

1.97    "**Prepetition Unsecured Lender**" means FR Dixie Parent LP, a Delaware limited partnership, or any of its successors, transferees or assignees in accordance with the Prepetition Unsecured Loan Agreement and the RSA, in its capacity as lender of the loans under the Prepetition Unsecured Loan Agreement.

1.98    "**Prepetition Unsecured Loan Agreement**" means that certain Loan Agreement, dated as of October 13, 2017 (as may be amended, supplemented or otherwise modified from time to time), between the Borrower and the Prepetition Unsecured Lender.

1.99    "**Priority Tax Claim**" means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.100   "**Professional**" means: (a) any Entity employed in the Chapter 11 Cases pursuant to section 327, 328, 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

1.101   "**Professional Claims Bar Date**" means forty-five (45) days after the Effective Date.

1.102   "**Professional Fee Claim**" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for compensation for services rendered or reimbursement of costs, expenses or other charges incurred by Professionals after the Petition Date and prior to and including the Effective Date, *provided*, that Professional Fee Claims shall not include Restructuring Expenses.

1.103   "**Professional Fee Escrow Account**" means an interest-bearing account funded by the Debtors in Cash on the Effective Date pursuant to Article II.A(ii) of the Plan, in an amount equal to the Professional Fee Reserve Amount.

1.104   "**Professional Fee Reserve Amount**" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors and the Ad Hoc Group as set forth in Article II.A(i) of the Plan.

1.105   "**Proof of Claim**" means a proof of Claim or Equity Interest filed against any Debtor in the Chapter 11 Cases.

01:23932532.123
948082.3

1.106 "**Pro Rata**" means, at any time, the proportion that the face amount of a Claim or Equity Interest in a particular Class bears to the aggregate face amount of all Claims or Equity Interests in that Class, unless the Plan provides otherwise.

1.107 "**Registration Rights Agreement**" means an agreement, if any, to be entered into on the Effective Date among holders of the New Common Stock, Reorganized Parent and other applicable entities, which agreement shall contain or provide for such terms, rights and obligations with respect to the registration of the New Common Stock as may be agreed among the parties and in form and substance consistent with the RSA, a form of which shall be filed in the Plan Supplement.

1.108 "**Reinstated**" or "**Reinstatement**" means, with respect to any Claim: (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim in accordance with section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default: (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a non-monetary obligation, other than a default arising failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than any Debtor or an insider of any Debtor) for any actual pecuniary loss incurred by the Holder of such Claim as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

1.109 "**Related Parties**" means, with respect to an Entity, collectively, its direct and indirect affiliates, and its and its respective affiliates' current and former equityholders, members, partners, subsidiaries, affiliates, funds, managers, managing members, general partners, officers, directors, employees, advisors, financial advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives (including their respective equityholders, members, partners, subsidiaries, affiliates, funds, managers, managing members, general partners, officers, directors, employees, advisors, financial advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives), each in their capacity as such.

1.110 "**Released Parties**" means, collectively, in each case solely in their respective capacities as such: (a) the Debtors, (b) the Reorganized Debtors, (c) the Prepetition Agent, (d) the Prepetition Secured Lenders, (e) the Prepetition Unsecured Lender, (f) the Consenting Equityholder, (g) the DIP Lenders, (h) the DIP Agent, (i) the New First Lien Facility Lenders, (j) the New First Lien Facility Agent, (k) the RE Purchaser, and (l) each of the Related Parties of the Entities in the foregoing (a)-(k); *provided, however*, that any Holder of a Claim that "opts out" of the releases provided in the Plan on its Ballot shall not be included in the definition of "Released Parties".

1.111    "**Releasing Parties**" means, collectively, in each case solely in their respective capacities as such: (a) the Debtors, (b) the Reorganized Debtors, (c) the Prepetition Agent, (d) the Consenting Prepetition Secured Lenders, (e) the Prepetition Unsecured Lender, (f) the Consenting Equityholder, (g) the DIP Lenders, (h) the DIP Agent, (i) the New First Lien Facility Lenders, (j) the New First Lien Facility Agent, (k) the RE Purchaser, (l) each of the Related Parties of the Entities in the foregoing (a)-(k) and (m) any Holder of Claims or Equity Interests (including the Prepetition Secured Lenders and the Prepetition Unsecured Lender) (i) who vote to accept the Plan, (ii) who are Unimpaired under the Plan and do not timely object to the releases provided herein, (iii) whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases herein, or (iv) who vote to reject the Plan but do not opt out of granting the releases herein.

1.112    "**Remaining Case**" means any of the Chapter 11 Cases that is not a Closing Case.

1.113    "**Reorganized**" means, in reference to a Debtor, such Debtor from and after the Effective Date, after giving effect to the Restructuring Transactions (Reorganized Parent together with each Reorganized Debtor, the "**Reorganized Debtors**").

1.114    "**Reorganized Parent**" means, on or after the Effective Date, the parent entity of the Reorganized Debtors, which may include one or more of the following: (a) Parent, as reorganized, pursuant to and under the Plan or any successor thereto, (b) one or more of the direct or indirect subsidiaries of Parent, or (c) one or more entities established by the Debtors and/or by or on behalf of any parties entitled to receive New Common Stock pursuant to the Plan, which entities shall acquire all or a portion of the stock and/or assets of the Debtors and/or their direct and indirect subsidiaries, in each case, after giving effect to the Restructuring Transactions (including any Taxable Transaction).

1.115    "**Required Consenting Secured Lenders**" means at least two (2) unaffiliated Consenting Prepetition Secured Lenders representing more than fifty percent (50.0%) of the aggregate principal amount of the Secured Loan Claims held by the Consenting Prepetition Secured Lenders.

1.116    "**Required DIP Lenders**" means at least two (2) unaffiliated DIP Lenders collectively holding more than fifty percent (50%) of the sum of the commitments and loans outstanding under the DIP Facility.

1.117    "**Required New First Lien Facility Lenders**" means at least two (2) unaffiliated New First Lien Facility Lenders collectively holding, or contemplated to hold as set forth on **Schedule I** to the RSA, on the Effective Date, more than fifty percent (50%) of the sum of the commitments and loans under the New First Lien Facility.

1.118    "**Restructuring Expenses**" means any and all reasonable and documented fees and expenses incurred in connection with the Restructuring Transactions of (x) the advisors to the Ad Hoc Group (including Davis Polk & Wardwell LLP, Ankura Consulting Group, LLC and Morris, Nichols, Arsht & Tunnel LLP), and (y) to the Prepetition Agent (including Alston & Bird), in each case that are due and owing after receipt of applicable invoices, and in accordance

with the terms of their applicable agreements or engagement letters, other than, for the avoidance of doubt, the New First Lien Facility Fee.

1.119 "**Restructuring Term Sheet**" means the term sheet attached to the RSA as **Exhibit A**, along with any annexes thereto, setting forth the material terms of the Restructuring Transactions (other than the material terms of the DIP Facility and the New First Lien Facility).

1.120 "**Restructuring Transactions**" means the restructuring transactions for the Debtors as described in Article V.G hereof, in accordance with, and subject to the terms and conditions set forth in, the Plan and the RSA.

1.121 "**RE Purchaser**" means FR Dixie RE, LLC, in its capacity as purchaser of the Properties (as defined in and under the certain Purchase and Sale Agreement, dated February 28, 2018, between Dixie Electric, LLC and Monahans Electric, Inc., as sellers, and the RE Purchaser).

1.122 "**RE Purchaser Fully Net Building Leases**" means the certain Fully Net Building Leases set forth on **Schedule I** to the Plan, each dated February 28, 2018, as amended, and related leases, schedules, guaranties, addenda and other lease documents with FR Dixie RE LLC, in its capacity as owner of the Properties.

1.123 "**RSA**" means that certain Restructuring Support Agreement, dated October 26, 2018, by and among the Debtors, the Consenting Prepetition Secured Lenders, the DIP Lenders, the Prepetition Agent, the Prepetition Unsecured Lender and the Consenting Equityholder, attached as **Exhibit B** to the Disclosure Statement, including all exhibits, schedules and annexes thereto, as may be amended, supplemented, amended and restated, or otherwise modified from time to time, as provided for therein.

1.124 "**Schedule of Proposed Cure Amounts**" means that schedule of proposed Cure amounts to be paid on account of each Assumed Agreement, which shall be filed as part of the Plan Supplement.

1.125 "**Secured Claim**" means a Claim that is secured by a Lien on property in which an Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.126 "**Secured Loan Claims**" means all Claims and obligations arising under or relating to the Prepetition Secured Loan Documents, including on account of any obligations under issued and outstanding letters of credit under the Prepetition Secured Loan Documents as of the Petition Date and on account of any drawn letters of credit under the Prepetition Secured Loan Documents on, prior or after the Petition Date (including any issuer of and holders of reimbursement obligations with respect to such drawn letters of credit or L/C Borrowings (as defined in the Prepetition Secured Credit Agreement), in each case, including any person that has funded its risk participation with respect thereto).

01:23932532.123
948082.3

1.127 "**Securities Act**" means the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations of the U.S. Securities and Exchange Commission promulgated thereunder.

1.128 "**Solicitation**" means the Debtors' formal request for acceptances of the Plan, consistent with sections 1125 and 1126 of the Bankruptcy Code, rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure, and applicable non-bankruptcy law.

1.129 "**Specified Unimpaired Claim**" shall have the meaning set forth in Article III.D of the Plan.

1.130 1.129 "**Stockholders Agreement**" means an agreement, if any, to be entered into on the Effective Date among holders of the New Common Stock, Reorganized Parent and other applicable entities, which agreement shall contain or provide for such terms, rights and obligations with respect to the New Common Stock as may be agreed among the parties and in form and substance consistent with the RSA, a form of which shall be filed in the Plan Supplement.

1.131 1.130 "**Taxable Transaction**" means a transaction that is or is deemed to be a disposition of some or all of the assets of the Debtors and/or their direct and indirect subsidiaries which is intended to be treated as a taxable disposition for U.S. federal income tax purposes, and which transaction may be structured, for U.S. federal income tax purposes, as a sale or other disposition of assets and/or a sale or other disposition of the stock of certain of the Debtors or their direct and indirect subsidiaries.

1.132 1.131 "**Transfer**" shall mean any voluntary or involuntary attempt to, directly or indirectly, offer, sell, assign, transfer, grant a participation or beneficial interest in, pledge, mortgage, lend, encumber or otherwise dispose of any interest whether in debt, equity or otherwise, or the consummation of any such transactions, or the soliciting of any offers to purchase or otherwise acquire, or take pledge of, any such interest.

1.133 1.132 "**UCC**" means the Uniform Commercial Code as the same may from time to time be in effect in the State of Delaware or the Uniform Commercial Code as in effect in any other state to the extent it may be applicable to any security interests in property of the Debtors.

1.134 1.133 "**Unclaimed Distribution**" means any distribution under the Plan on account of an Allowed Claim or Allowed Equity Interest to a Holder that, within six (6) months from when the distribution was first made, has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors' request for information necessary to facilitate a particular distribution; (d) taken delivery of such distribution or where such distribution was returned for lack of a current address or otherwise; or (e) taken any other action necessary to facilitate such distribution.

1.135 1.134 "**Unexpired Lease**" means a lease to which any of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.136 1.135 "**Unimpaired**" means any Claim or Equity Interest that is not designated as Impaired.

1.137 1.136 "**Unsecured Loan Claims**" means all Claims and obligations arising under or relating to the Prepetition Unsecured Loan Agreement.

1.138 1.137 "**U.S.**" means the United States of America.

1.139 1.138 "**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

1.140 1.139 "**Voting Classes**" means, collectively, Classes 1 and 4.

1.141 1.140 "**Voting Deadline**" means the deadline, including any extended deadline, established by the Bankruptcy Court by which Ballots accepting or rejecting the Plan must be received by the Debtors or by any other Entity designated by the Debtors as a voting or claims agent.

1.142 1.141 "**Voting Record Date**" means the date for determining which Holders are entitled to receive the Disclosure Statement and vote to accept or reject the Plan, as applicable, which date is October 29, 2018 for all Holders of Claims.

## Article II.

## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including DIP Claims, and Priority Tax Claims are not classified and are not entitled to vote on the Plan.

A.  **Administrative Claims**

Subject to subparagraphs (i) and (ii) below, in full and complete satisfaction, settlement, discharge and release of each Allowed Administrative Claim (other than a DIP Claim), except to the extent that a Holder of such Allowed Administrative Claim and either (x) the Debtors, with the consent of the Required Consenting Secured Lenders, or (y) the Reorganized Debtors, as applicable, agree in writing to less favorable treatment, the Debtors or Reorganized Debtors, as applicable, shall pay to each Holder of an Allowed Administrative Claim (other than a DIP Claim), Cash in an amount equal to such Allowed Administrative Claim on, or as soon thereafter as is reasonably practicable (a) the Effective Date or, if payment is not then due, (b) on the due date of such Allowed Administrative Claim; *provided*, *however*, that Administrative Claims (other than DIP Claims) incurred by the Debtors in the ordinary course of business may be paid in the ordinary course of business in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.

01:23932532.123
948082.3

(i)    <u>Professional Fee Claims</u>

Professionals or other Entities (a) asserting a Professional Fee Claim shall deliver to the Debtors and the Ad Hoc Group their estimates for purposes of the Debtors computing the Professional Fee Reserve Amount no later than five (5) Business Days prior to the anticipated Effective Date, *provided*, that, for the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Fee Claims filed with the Bankruptcy Court, *provided, further*, that, if a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional and provide such estimate to the Ad Hoc Group; and (b) asserting a Professional Fee Claim for services rendered before the Effective Date, for the avoidance of doubt, excluding any claims for Restructuring Expenses, must file and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim no later than the Professional Claims Bar Date; *provided*, that any Professional who is subject to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Confirmation Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professionals Order. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtors and the applicable Professional within thirty (30) days after the filing of the final fee application with respect to the Professional Fee Claim. Any such objections that are not consensually resolved may be set for hearing on twenty-one (21) days' notice.

(ii)    <u>Professional Fee Escrow Account</u>

On the Effective Date, the Debtors shall establish the Professional Fee Escrow Account and fund such account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust for the Professionals. Each Holder of an Allowed Professional Fee Claim will be paid by the Reorganized Debtors in Cash from the Professional Fee Escrow Account within five (5) Business Days of entry of the order approving such Allowed Professional Fee Claim. If the Professional Fee Escrow Account is depleted, each Holder of an Allowed Professional Fee Claim will be paid the full amount of such Allowed Professional Fee Claim by the Reorganized Debtors in Cash within five (5) Business Days of entry of the order approving such Allowed Professional Fee Claim. All amounts remaining in the Professional Fee Escrow Account after all Allowed Professional Fee Claims have been paid in full shall revert to the Reorganized Debtors. If the Professional Fee Escrow Account is insufficient to pay the full amount of all Allowed Professional Fee Claims, remaining unpaid Allowed Professional Fee Claims will be promptly paid by the Reorganized Debtors without any further action or order of the Bankruptcy Court.

B.    **Priority Tax Claims**

On the Effective Date, each Holder of an Allowed Priority Tax Claim will, as determined by the Debtors, with the consent of the Required Consenting Secured Lenders, or the Reorganized Debtors, as applicable, (i) receive, in full and complete satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (a) payment in full in Cash of such Allowed Priority Tax Claim or (b) such other less favorable treatment as agreed to in

writing by either (x) the Debtors and the Required Consenting Secured Lenders, or (y) the Reorganized Debtors, as applicable, and such Holder, or (ii) otherwise be left Unimpaired and Reinstated.

## C.    **DIP Claims**

Subject to the DIP Orders, on the Effective Date, DIP Claims shall be deemed Allowed in the full amount due and owing under the DIP Facility as of the Effective Date.

Subject to the DIP Orders, in full and final satisfaction, settlement, discharge and release thereof, and in exchange therefor, each Allowed DIP Claim constituting an Allowed Converted DIP Loan Claim, on the Effective Date, except to the extent such Holder agrees to such other less favorable treatment as determined by the Debtors and such Holder, in each of their sole respective discretion, shall, subject to the conditions set forth in the New First Lien Credit Agreement, be converted, and be deemed converted, to Effective Date Term Loans under the New First Lien Facility.

Subject to the DIP Orders, in full and final satisfaction, settlement, discharge and release thereof, and in exchange therefor, all Allowed DIP Claims that do not constitute an Allowed Converted DIP Loan Claim, on the Effective Date, shall be paid in Cash.  If any of the conditions to the conversion of any Allowed Converted DIP Loan Claim is not satisfied on the Effective Date, such Claims shall be paid in Cash on the Effective Date.

## D.    **Statutory Fees**

Notwithstanding anything in the Plan to the contrary, on the Effective Date, the Debtors shall pay, in full, in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation pursuant to 28 U.S.C. § 1930(a)(6). On and after the Effective Date and for so long as the Reorganized Debtors remain obligated to pay quarterly fees, the Reorganized Debtors shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor or Reorganized Debtor, as applicable, shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**Article III.**

**CLASSIFICATION AND TREATMENT OF
CLASSIFIED CLAIMS AND EQUITY INTERESTS**

## A.    **Introduction**

All Claims and Equity Interests, except Administrative Claims, including DIP Claims, and Priority Tax Claims, are placed in the Classes set forth below in accordance with section 1123(a)(1) of the Bankruptcy Code. The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan groups the Debtors together solely for the purpose of describing treatment under

01:23932532.123
988082.3

the Plan and such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change in control of any Debtor for any purpose, cause a merger or consolidation or any legal entities, or cause the transfer of assets. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date.

B.      **Summary of Classification and Treatment of Classified Claims and Equity Interests**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Loan Claims | Impaired | Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3 | General Unsecured Claims | Unimpaired | Presumed to Accept |
| 4 | Unsecured Loan Claims | Impaired | Entitled to Vote |
| 5 | Intercompany Claims | Unimpaired | Presumed to Accept |
| 6 | Intercompany Interests | Unimpaired | Presumed to Accept |
| 7 | Existing Parent Interests | Impaired | Deemed to Reject |

C.      **Classification and Treatment of Claims and Equity Interests**

(i)      Class 1 – Secured Loan Claims.

(1)      <u>Classification</u>: Class 1 consists of all Secured Loan Claims. Notwithstanding anything contained in the Plan to the contrary, (a) the Secured Loan Claims shall be Allowed in an aggregate principal amount of approximately two hundred eighty seven million dollars ($287.0 million)[3] plus any accrued and unpaid interest at the non-default rate as of the Petition Date plus all other unpaid and outstanding Obligations (as defined in the Prepetition Secured Credit Agreement), as applicable, and (b) such Secured Loan Claims shall not be subject to disallowance, setoff, recoupment, subordination, recharacterization or reduction of any kind, including pursuant to Section 502(d) of the Bankruptcy Code.

(2)      <u>Treatment</u>:  In full and final satisfaction, settlement, discharge and release of, and in exchange for, each Allowed Secured Loan Claim, on the Effective Date, except to the extent a Holder of an Allowed Secured Loan Claim agrees to less favorable treatment with either (x) the Debtors, with the consent of the Required Consenting Secured Lenders, or (y) the Reorganized Debtors, as applicable, each Holder of an Allowed Secured Loan Claim shall receive its Pro Rata share of ninety-eight and one-quarter percent (98.25%) of the New Common Stock, which New Common Stock

---

[3]    This amount excludes issued and outstanding letters of credit as of the date hereof under the Prepetition Secured Credit Agreement with a face amount of approximately $4.3 million.  In the event an outstanding letter of credit under the Prepetition Secured Credit Agreement is drawn on, obligations arising from such draw would become revolving loans outstanding under the Prepetition Secured Credit Agreement, constitute Secured Loan Claims under the Plan and share ratably in the treatment of Class 1 Secured Loan Claims.

shall be proportionally diluted on and after the Effective Date by New Common Stock granted under the MIP from the MIP Award Pool.

(3)    Impairment and Voting: Class 1 is Impaired by the Plan. Each Holder of an Allowed Secured Loan Claim is entitled to vote to accept or reject the Plan.

(ii)    Class 2 – Other Secured Claims.

(1)    Classification: Class 2 consists of all Other Secured Claims. All Other Secured Claims are Allowed.

(2)    Treatment: In full and final satisfaction, settlement, discharge and release of, and in exchange for, each Allowed Other Secured Claim, on the Effective Date, at the option of the Debtors with the consent of the Required Consenting Secured Lenders, each Allowed Other Secured Claim shall be (i) paid in full in Cash, (ii) Unimpaired and Reinstated or (iii) treated on such other terms as either (x) the applicable Debtor, with the consent of the Required Consenting Secured Lenders, or (y) the applicable Reorganized Debtor, as applicable, and the Holder thereof may agree.

(3)    Impairment and Voting: Class 2 is Unimpaired by the Plan. Each Holder of an Allowed Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of an Allowed Other Secured Claim is not entitled to vote to accept or reject the Plan.

(iii)    Class 3 – General Unsecured Claims.

(1)    Classification: Class 3 consists of all General Unsecured Claims. All General Unsecured Claims are Allowed.

(2)    Treatment:  All Allowed General Unsecured Claims are Unimpaired by the Plan. At the option of the Debtors or the Reorganized Debtors, as applicable, (i) the Plan may leave unaltered the legal, equitable, and contractual rights of a Holder of an Allowed General Unsecured Claim, (ii) the Debtors or the Reorganized Debtors, as applicable, may pay such Allowed General Unsecured Claim in full in Cash on the Effective Date or as soon thereafter as is practicable, (iii) the Debtors or the Reorganized Debtors, as applicable, may pay such Allowed General Unsecured Claim in a manner agreed to by the Holder of such Claim, or (iv) the Plan may reinstate the legal, equitable, and contractual rights of the Holder of an Allowed General Unsecured Claim in accordance with section 1124(2) of the Bankruptcy Code.

(3)    Impairment and Voting: Class 3 is Unimpaired by the Plan. Each Holder of an Allowed General Unsecured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of an Allowed General Unsecured Claim is not entitled to vote to accept or reject the Plan.

01:23932532.123
988082.3

(iv) Class 4 – Unsecured Loan Claims.

(1) <u>Classification</u>: Class 4 consists of all Unsecured Loan Claims. All Unsecured Loan Claims are Allowed.

(2) <u>Treatment</u>: In full and final satisfaction, settlement, discharge and release of, and in exchange for, each Allowed Unsecured Loan Claim, on the Effective Date, except to the extent a Holder of an Allowed Unsecured Loan Claim agrees to less favorable treatment with either (x) the Debtors, with the consent of the Required Consenting Secured Lenders, or (y) the Reorganized Debtors, as applicable, each Holder of an Allowed Unsecured Loan Claim shall receive its Pro Rata share of one and three-quarters percent (1.75%) of the New Common Stock, which New Common Stock shall be proportionally diluted on and after the Effective Date by New Common Stock granted under the MIP from the MIP Award Pool.

(3) <u>Impairment and Voting</u>: Class 4 is Impaired by the Plan. Each Holder of an Allowed Unsecured Loan Claim is entitled to vote to accept or reject the Plan.

(v) Class 5 – Intercompany Claims.

(1) <u>Classification</u>: Class 5 consists of all Intercompany Claims. All Intercompany Claims are Allowed.

(2) <u>Treatment</u>: Each Allowed Intercompany Claim shall be adjusted, continued, contributed to capital or discharged, as determined by the Required Consenting Secured Lenders, in consultation with the Debtors or the Reorganized Debtors, as applicable.

(3) <u>Impairment and Voting</u>: Class 5 is Unimpaired by the Plan. Each Holder of an Allowed Intercompany Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of an Allowed Intercompany Claim is not entitled to vote to accept or reject the Plan.

(vi) Class 6 – Intercompany Interests.

(1) <u>Classification</u>: Class 6 consists of all Intercompany Interests. All Intercompany Interests are Allowed.

(2) <u>Treatment</u>: ~~On~~Other than as contemplated in connection with the Description of Restructuring Transactions, on the Effective Date, all Allowed Intercompany Interests shall be Reinstated and otherwise rendered Unimpaired pursuant to section 1124 of the Bankruptcy Code.

(3) <u>Impairment and Voting</u>: Class 6 is Unimpaired by the Plan and each Holder of an Allowed Intercompany Interest is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of an Allowed Intercompany Interest is not entitled to vote to accept or reject the Plan.

(vii)    Class 7 –Existing Parent Interests.

(1)    <u>Classification</u>: Class 7 consists of all Existing Parent Interests.

(2)    <u>Treatment:</u> On the Effective Date, all Existing Parent Interests shall be cancelled, and Holders of Existing Parent Interests shall receive no recovery under the Plan on account of such Existing Parent Interests.

(3)    <u>Impairment and Voting</u>: Class 7 is Impaired by the Plan, and each Holder of an Existing Parent Interest is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each Holder of an Existing Parent Interest is not entitled to vote to accept or reject the Plan.

D.    **Special Provisions Regarding Unimpaired Claims**

Except as otherwise expressly provided in the Plan, nothing shall affect the Debtors' or the Reorganized Debtors', as applicable, rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to, or setoffs or recoupments assertable against, Unimpaired Claims. Holders of Unimpaired Claims shall not be required to file a Proof of Claim with the Court and shall retain all their rights <u>and defenses, both legal and equitable,</u> under applicable non-bankruptcy law<u>, including, but not limited to, setoff and recoupment rights,</u> to pursue their Unimpaired Claims in any forum with jurisdiction over the parties. <u>Notwithstanding anything to the contrary in the Plan, each Holder of an Allowed Other Secured Claim, Allowed General Unsecured Claim, or Allowed Intercompany Claim (each such Allowed Claim, a "**Specified Unimpaired Claim**") shall be entitled to enforce its rights in respect of such Specified Unimpaired Claim against the Debtors or the Reorganized Debtors, as applicable, until such Specified Unimpaired Claim has been either (a) paid in full (i) on terms agreed to between the Holder of such Specified Unimpaired Claim and the Debtors or the Reorganized Debtors, as applicable, or (ii) in accordance with the terms and conditions of the applicable documentation or laws giving rise to such Specified Unimpaired Claim or (b) otherwise satisfied or disposed of as determined by a court of competent jurisdiction.</u> If the Debtors or the Reorganized Debtors dispute any Unimpaired Claim, such dispute shall be determined, resolved or adjudicated pursuant to applicable non-bankruptcy law.

E.    **Subordinated Claims**

Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

# Article IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

A. **Presumed Acceptance of the Plan**

Classes 2, 3, 5 and 6 are Unimpaired by the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

B. **Deemed Rejection of the Plan**

Class 7 is Impaired by the Plan and is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

C. **Voting Classes**

Each Holder of an Allowed Claim in the Voting Classes as of the applicable Voting Record Date is entitled to vote to accept or reject the Plan.

D. **Acceptance by Impaired Classes of Claims and Equity Interests**

Pursuant to section 1126(c) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims in such Class actually voting have voted to accept the Plan. Pursuant to section 1126(d) of the Bankruptcy Code and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Equity Interests has accepted the Plan if the Holders of at least two-thirds in dollar amount of the Allowed Equity Interests in such Class actually voting have voted to accept the Plan.

E. **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

The Debtors may request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code. The Debtors, with the reasonable consent of the Required Consenting Secured Lenders, reserve the right to modify the Plan, the Plan Supplement, or the Disclosure Statement in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

F. **Plan Cannot Be Confirmed as to Some or All Debtors**

If the Plan cannot be confirmed as to some or all of the Debtors, then the Debtors, with the consent of the Required Consenting Secured Lenders and without prejudice to and subject to the respective parties' rights under the RSA, (a) may revoke the Plan as to all of the Debtors or (b) may revoke the Plan as to any Debtor (and any such Debtor's Chapter 11 Case may be converted, continued or dismissed) and confirm the Plan as to the remaining Debtors to the extent required without the need for re-solicitation as to any Holder of a Claim against and/or

Equity Interest in a Debtor for which the Plan is not so revoked.

# Article V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A. **Corporate and Organizational Existence; Reorganized Capital Structure and the New Common Stock**

Other than the Dissolving Debtors, which may be dissolved or wound up in accordance with Article V.K of the Plan, or as otherwise may be agreed to between the Debtors and the Required Consenting Secured Lenders, and subject to Article V.G, the Reorganized Debtors shall continue to exist as separate legal entities, pursuant to the applicable organizational documents in effect prior to the Effective Date, except to the extent such organizational documents are amended by or pursuant to the Plan, without any prejudice to any right to terminate such existence (whether by merger or otherwise) in accordance with applicable law after the Effective Date. To the extent such documents are amended on or prior to the Effective Date, such documents are deemed to be amended pursuant to the Plan without any further notice to or action, order, or approval of the Bankruptcy Court.

On the Effective Date, the reorganized capital structure of the Reorganized Debtors shall consist of (i) the New First Lien Facility, (ii) the New L/C Facility, if any, and (iii) the New Common Stock, including the MIP Award Pool reserved for issuance by the New Board, consistent with the terms of the RSA and the Restructuring Term Sheet.

B. **Organizational Documents of the Reorganized Debtors**

~~The~~Other than with respect to the Dissolving Debtors, the certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements, bylaws, any other New Governance Documents or other organizational documents of the Reorganized Debtors, shall be amended and/or amended and restated as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and otherwise consistent with the Restructuring Term Sheet in all material respects, as determined by the Required Consenting Secured Lenders, with the reasonable satisfaction of the Debtors; *provided*, that the organizational documents of Reorganized Parent, shall be amended and/or amended and restated as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and otherwise consistent with the Restructuring Term Sheet in all material respects, as determined by the Required Consenting Secured Lenders in their sole discretion, *provided*, *further*, that, pursuant to the RSA, the Required Consenting Secured Lenders shall consult with the Debtors and/or the Reorganized Debtors, as applicable, with respect to the terms and conditions of such corporate governance documents. The New Governance Documents, as applicable, shall satisfy the provisions of the Plan and the Bankruptcy Code, and shall authorize the issuance of the New Common Stock in an amount not less than the amount necessary to permit the distributions thereof required or contemplated by the Plan. In each case, to the extent necessary, the applicable organizational documents of the Reorganized Debtors will (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code, and (ii) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan and the transactions contemplated herein. After the Effective Date, the Reorganized Debtors may

0  :23932532.123
9 8082.3

amend and restate their respective certificate of incorporation, certificate of formation, limited liability company agreement, operating agreement, and bylaws, and other applicable organizational documents, as permitted by applicable law and pursuant to the terms contained therein.

To the extent required under the Plan or applicable nonbankruptcy law, the Reorganized Debtors will file their respective organizational documents with the applicable Secretaries of State or other applicable authorities in their respective states, provinces, or countries of incorporation in accordance with the corporate laws of the respective states, provinces, or countries of incorporation.

C.      **Managers, Directors and Officers of Reorganized Debtors; Corporate Governance**

Effective as of the Effective Date, the New Board shall be comprised of five (5) members, each with one vote, four (4) of whom shall be selected by the Ad Hoc Group and one (1) of whom shall be the Chief Executive Officer of the Reorganized Debtors. To the extent not previously disclosed, the Debtors may disclose in the Plan Supplement, and, in any event, will disclose prior to the Confirmation Hearing, the affiliations of each Person proposed to serve on the New Board or as an officer of the Reorganized Debtors (in each case, to the extent known), and, to the extent such Person is an insider other than by virtue of being a manager, director or officer, the nature of any compensation for such Person.

On and after the Effective Date, other than as provided in the Plan or the Plan Supplement or as otherwise agreed to between the Debtors and the Required Consenting Secured Lenders, the existing entity structures and management structure of the Debtors shall remain in place as such structures existed prior to the Effective Date.

D.      **New First Lien Facility**

On the Effective Date, the applicable Reorganized Debtors shall enter into the New First Lien Facility, the terms of which shall be set forth in the New First Lien Facility Documents and shall execute, deliver, file, record, and issue the New First Lien Credit Agreement and any other related notes, guarantees, deeds of trust, security documents or instruments (including UCC financing statements), amendments to the foregoing, or agreements in connection therewith, in each case, without (A) further notice to or order of the Bankruptcy Court or (B) further act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.  On the Effective Date, (i) all of the Liens and security interests to be granted in accordance with the New First Lien Facility Documents shall be granted or deemed granted, (ii) the New First Lien Facility Agent, on behalf of the New First Lien Facility Lenders, shall have valid, binding, perfected and enforceable Liens as specified therein and (iii) the Liens granted or deemed granted to secure the obligations arising thereunder shall be granted or deemed granted in good faith as an inducement to the New First Lien Facility Lenders to extend credit under the New First Lien Facility and shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, and the priorities of such Liens shall be as set forth in the New First Lien Credit Agreement and its related documentation. On the Effective Date, subject to the conditions set forth in the New First Lien

Credit Agreement, the Allowed Converted DIP Loan Claims shall be converted, and shall be deemed converted, into Effective Date Term Loans.

Pursuant to and subject to the terms of the RSA, the Debtors shall use commercially reasonable efforts to solicit proposals for the New L/C Facility and, if determined by the Required Consenting Secured Lenders and the Debtors, each in their respective reasonable discretions, shall use commercially reasonable efforts to effectuate the New L/C Facility, including executing and delivering any credit agreement or additional documentation related to the New L/C Facility in an amount and on terms and conditions reasonably acceptable to the Required Consenting Secured Lenders and the Debtors.

Pursuant to and subject to the terms of the RSA, on the Effective Date, the New First Lien Facility Lenders shall receive payment of the New First Lien Facility Fee.

E.    **Issuance of New Securities and Related Documents**

On the Effective Date, the Reorganized Debtors will be authorized to, and will, issue and execute, as applicable, the New Securities and Related Documents, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. None of the New Common Stock will be certificated, and all of the New Common Stock will be recorded in book-entry form unless decided otherwise by the Required Consenting Secured Lenders prior to the Effective Date or the New Board after the Effective Date.

The issuance and distribution of the New Common Stock will be made in reliance on the exemption from registration under the Securities Act provided by section 1145(a) of the Bankruptcy Code and will be exempt from registration under applicable securities laws. Without limiting the effect of section 1145 of the Bankruptcy Code, all financing documents, agreements, and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan, including the New Securities and Related Documents, the New Governance Documents and any other agreement or document related to or entered into in connection with any of the foregoing, will become effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity (other than as expressly required by such applicable agreement).

Upon the Effective Date, after giving effect to the Restructuring Transactions, the authorized capital stock or other equity securities of the Reorganized Parent will be as designated in the applicable New Governance Documents.

Each holder of New Common Stock shall be deemed to be a party to and bound to the terms of the Stockholders Agreement (if any) and the Registration Rights Agreement (if any) from and after the Effective Date even if not a signatory thereto.

If directed by the Required Consenting Secured Lenders, the New Governance Documents shall contain restrictions on Transfers applicable to the New Common Stock from



and after the Effective Date and after giving effect to the transactions contemplated hereby, including:

- any Transfer of the New Common Stock will comply with applicable securities laws generally for such Transfers;

- any Transfer of the New Common Stock shall not be to a competitor of any of the Reorganized Debtors; and

- such other exceptions and provisions to be determined by the Required Consenting Secured Lenders in their sole discretion, in consultation with the Debtors, and consistent with the RSA.

The New Governance Documents shall provide that any Transfer not in conformity with the foregoing restrictions and any other conditions or restrictions set forth in the New Governance Documents shall be null and void *ab initio*. All book-entry forms for any shares of New Common Stock shall bear conspicuous legends that such securities are subject to the terms and conditions set forth in the New Governance Documents, including with respect to the restrictions of transfer set forth therein and restrictions of transfer under the applicable securities laws. Any New Governance Documents that relate to the New Common Stock (including the Stockholders Agreement (if any) and the Registration Rights Agreement (if any)) shall be amended and/or restated, consistent with the Restructuring Term Sheet in all material respects, as determined by the Required Consenting Secured Lenders in their sole discretion and in consultation with the Debtors.

F.      **Management Incentive Plan**

On or immediately after the Effective Date, the New Board shall adopt the MIP and approve the grant of the Emergence Grants, the terms of each of which shall be in form and substance reasonably acceptable to the Required Consenting Secured Lenders and the Debtors or the Reorganized Debtors, as applicable. Upon grant of an award under the MIP, the underlying shares of New Common Stock from the MIP Award Pool shall proportionally dilute all of the New Common Stock issued pursuant to the Plan.

G.      **Restructuring Transactions**

Prior to, on, or after the Effective Date, and pursuant to the Plan, the Debtors, and/or Reorganized Debtors, as applicable, shall implement the Restructuring Transactions. The Debtors and/or the Reorganized Debtors, as applicable, shall take any actions, as agreed to by the Required Consenting Secured Lenders, as may be necessary or appropriate to effect a restructuring of the Debtors' business or the overall organization or capital structure consistent with the terms of the Plan and the RSA, including by undertaking a Taxable Transaction, a tax-free transaction, or otherwise. The Restructuring Transactions may include one or more of the following actions taken by the Debtors and/or the Reorganized Debtors, as applicable, with the reasonable consent of the Required Consenting Secured Lenders: (i) the execution, delivery, adoption, and/or amendment of appropriate agreements or other documents of restructuring, conversion, disposition, dissolution, liquidation, merger, amalgamation, consolidation or transfer

containing terms that are consistent with the terms of the Plan and any documents contemplated hereunder and that satisfy the applicable requirements of applicable state law and any other terms to which the applicable parties may agree; (ii) the execution, delivery, adoption, and/or amendment of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and any documents contemplated hereunder and having any other terms for which the applicable parties may agree; (iii) the filing of appropriate certificates or articles of incorporation or formation, reincorporation, merger, or conversion, dissolution or other organizational documents, as applicable, pursuant to applicable state law and/or (iv) all other actions that the Debtors and/or the Reorganized Debtors, as applicable, determine, with the reasonable consent of the Required Consenting Secured Lenders, to be necessary, desirable, or appropriate to implement, effectuate, and consummate the Plan or the Restructuring Transactions contemplated hereby, including making filings or recordings that may be required by applicable state law in connection with the Restructuring Transactions. All matters provided for pursuant to the Plan that would otherwise require approval of the equity holders, managing members, members, managers, general partners, directors, or officers of any Debtor (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the equity holders, managing members, members, managers, general partners, directors, or officers of such Debtors, or the need for any approvals, authorizations, actions or consents of any Person. To the extent known, ~~any~~certain of such Restructuring Transactions will be summarized in the Description of Restructuring Transactions, and in all cases, such transactions shall be subject to the terms and conditions of this Plan and any consents or approvals required under the Plan.

## H. Vesting of Assets in the Reorganized Debtors

Except as provided elsewhere in the Plan, or in the Confirmation Order, on or after the Effective Date, all property and assets of the Estates (including Causes of Action and Avoidance Actions, but only to the extent such Causes of Action and Avoidance Actions have not been waived or released pursuant to the terms of the Plan, pursuant to an order of the Bankruptcy Court, or otherwise) and any property and assets acquired by the Debtors pursuant to the Plan, will vest in the Reorganized Debtors, free and clear of all Liens or Claims. On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

## I. Release of Liens, Claims and Equity Interests

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan (including in both cases with respect to the New First Lien Credit Agreement), concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, or Equity Interests in or against the property of the Estates will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens, Claims, or Equity Interests will, if necessary, pursuant to section 1142

of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors and shall incur no liability to any Entity in connection with its execution and delivery of any such instruments.

On the Effective Date, except as otherwise provided in the Plan, in exchange for the treatment described herein and as set forth in Articles II.C, III.C(i)(2) and III.C(iv)(2), the DIP Claims, the Secured Loan Claims and the Unsecured Loan Claims, as applicable, shall be discharged, the Liens on the Collateral (as defined in the Prepetition Secured Credit Agreement and the DIP Credit Agreement, as applicable) shall be automatically released, all of the right, title, and interest of any holder of such Collateral shall revert to the Reorganized Debtors and their successors and assigns and the Prepetition Secured Credit Agreement and the Guaranty (as defined in the Prepetition Secured Credit Agreement and the DIP Credit Agreement, as applicable) shall be automatically cancelled and be of no further force or effect, in each case, without further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors, the DIP Agent, the Prepetition Agent or any other Holder of a Secured Claim. In addition, at the sole expense of the Debtors or the Reorganized Debtors, the DIP Agent and the Prepetition Agent shall execute and deliver all documents reasonably requested by the Debtors, the Reorganized Debtors or the New First Lien Facility Agent to evidence the release of such Collateral and shall authorize the Reorganized Debtors and their designees to file UCC termination statements and other release documentation (to the extent applicable) with respect thereto.

J.      **Cancellation of Stock, Certificates, Instruments and Agreements**

On the Effective Date, except as provided in the Plan, all stock, units, instruments, certificates, agreements and other documents evidencing the Existing Parent Interests will be cancelled, and the obligations of the Debtors thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. On the Effective Date, except as otherwise provided in the Plan, the Prepetition Agent, and the DIP Agent will be released and discharged from any further responsibility under the Prepetition Secured Credit Agreement and the other Prepetition Secured Loan Documents or the DIP Credit Agreement and the other DIP Documents, as applicable (other than with respect to the Converted DIP Loan Claims as Effective Date Term Loans on and after the Effective Date under the New First Lien Facility).

K.      **Dissolution of Certain Debtors**

In connection with the Restructuring Transactions, prior to, on or after the Effective Date, the Debtors or the Reorganized Debtors, with the consent of the Required Consenting Secured Lenders, may dissolve and wind up any of the Dissolving Debtors, certain other Debtors which may be described in the Description of Restructuring Transactions or certain non-Debtor affiliates with substantially immaterial assets and operations in accordance with applicable non-bankruptcy law, and any remaining assets and liabilities of any such Dissolving Debtors will be assigned to and assumed by one or more surviving Debtors, as determined by the Debtors or

Reorganized Debtors, and with the reasonable consent of the Required Consenting Secured Lenders, as applicable.

L.  **Preservation and Maintenance of Debtor Causes of Action**

(i)  Maintenance of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, except as otherwise provided in Article X or elsewhere in the Plan or the Confirmation Order, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, on and after the Effective Date, the Reorganized Debtors shall retain any and all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including in an adversary proceeding filed in the Chapter 11 Cases. The Reorganized Debtors, as the successors in interest to the Debtors and the Estates, may, in their sole and absolute discretion, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all such Causes of Action, without notice to or approval from the Bankruptcy Court. The Reorganized Debtors or their respective successor(s) may pursue such retained claims, rights or Causes of Action, suits, or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtors or their respective successor(s) who hold such rights.  Upon the Effective Date, the Debtors and the Reorganized Debtors, as applicable, shall be deemed to have released all Preference Actions, if any.

(ii)  Preservation of All Causes of Action Not Expressly Settled or Released

Unless a Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is (A) expressly waived, relinquished, released, compromised or settled in the Plan (including, for the avoidance of doubt, the releases contained in Article X of the Plan) or any Final Order (including the Confirmation Order), or (B) subject to the discharge and injunction provisions in Article X of the Plan, and the Confirmation Order, in the case of each of clauses (A) and (B), the Debtors and the Reorganized Debtors, as applicable, expressly reserve such Cause of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action upon or after the Confirmation of the Plan or the Effective Date of the Plan based on the Plan or the Confirmation Order. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it. The Debtors and the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.

M.  **Exemption from Certain Transfer Taxes**

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers or mortgages from or by the Debtors to the Reorganized Debtors or any other Person or entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax,

sales or use tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Such exemption under section 1146(a) of the Bankruptcy Code specifically applies to (1) the creation of any mortgage, deed of trust, Lien, or other security interest; (2) the making or assignment of any lease or sublease; (3) any Restructuring Transaction; (4) the issuance, distribution, and/or sale of any of the New Common Stock and any other securities of the Debtors or the Reorganized Debtors; or (5) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any Restructuring Transaction occurring under the Plan.

N.    **Certain Tax Matters**

The parties will work together in good faith and will use reasonable best efforts to structure and implement the Restructuring Transactions and the transactions related thereto in a tax-efficient and cost-effective manner for the Debtors or the Reorganized Debtors, as applicable, the Prepetition Secured Lenders and the other recipients of New Common Stock pursuant to the Plan, including the Prepetition Unsecured Lender.

O.    **Distributions**

Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for the Debtors or Reorganized Debtors to make payments required pursuant to the Plan will be obtained from the Cash balances of the Debtors and/or the Reorganized Debtors, including Cash from operations, the DIP Facility and the New First Lien Facility.  Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors, as applicable, or any designated Affiliates of the Reorganized Debtors on behalf of the Reorganized Debtors.

P.    **Restructuring Expenses**

The Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) without the requirement to file a fee application with the Bankruptcy Court and without any requirement for Bankruptcy Court review or approval; *provided*, that the Debtors and Reorganized Debtors (as applicable) shall have the right to review and object to any such Restructuring Expenses on reasonableness grounds.   All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least two (2) Business Days before the anticipated Effective Date; *provided*, that such estimate shall not be considered an admission or limitation with respect to such Restructuring Expenses.  In addition, the Debtors and Reorganized Debtors (as applicable) shall continue to pay Restructuring Expenses after the Effective Date when due and payable in the ordinary course related to implementation, consummation and defense of the Plan, whether incurred before, on or after the Effective Date.

**Article VI.**

**TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES**

A.     **Assumption of Executory Contracts and Unexpired Leases**

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, as of the Effective Date, the Debtors shall be deemed to have assumed each Executory Contract and Unexpired Lease, including those Executory Contracts or Unexpired Leases set forth on **Schedule I** to the Plan, to which it is a party in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtors; (2) expired or terminated pursuant to its own terms before the Effective Date; (3) is the subject of a motion to reject filed on or before the Effective Date; (4) is otherwise identified in the Plan Supplement as an Executory Contract or Unexpired Lease to be rejected before the Effective Date; or (5) is to be rejected pursuant to the terms of the Plan.  Any agreement, including any guarantees to which any of the Debtors is a party, that is not considered an Executory Contract or Unexpired Lease shall be deemed to have been reinstated on the Effective Date in accordance with section 1124(2) of the Bankruptcy Code.

Without amending or altering any prior order of the Bankruptcy Court, entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code. All Assumed Agreements shall remain in full force and effect for the benefit of the Reorganized Debtors, and be enforceable by the Reorganized Debtors in accordance with their terms notwithstanding any provision in such Assumed Agreement that prohibits, restricts or conditions assumption, assignment or transfer. Any provision of any Assumed Agreement that permits a person to terminate or modify such agreement or to otherwise modify the rights of the Debtors or the Reorganized Debtors, as applicable, based on the filing of the Chapter 11 Cases or the financial condition of the Debtors or the Reorganized Debtors, as applicable, shall be unenforceable. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan (including any "change of control" provision) restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-Debtor party or parties thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Each Assumed Agreement will revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

B.     **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**

Any monetary defaults under each Executory Contract or Unexpired Lease to be assumed, if any, pursuant to the Plan will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of Cure amount in Cash, on the later of (1) the Effective Date and (2) the date

such payment is due pursuant to the terms of the Assumed Agreement, in the amount, if any, set forth on the Schedule of Proposed Cure Amounts, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree.

Any objection by a counterparty to the Cure amount associated with any Executory Contract or Unexpired Lease to be assumed pursuant to the Plan must be filed, served and actually received by the Debtors by no later than seven (7) days prior to the date of the Confirmation Hearing. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption or Cure amount will be deemed to have assented thereto and will be deemed to have forever released and waived any objection to the proposed assumption or Cure amount. In the event of a dispute regarding (1) the Cure amount, (2) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or (3) any other matter pertaining to assumption, the applicable Cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

C.      **Rejection of Executory Contracts or Unexpired Leases**

Any and all Executory Contracts and Unexpired Leases designated for rejection in the Plan Supplement will be deemed rejected as of the Effective Date. The Confirmation Order will constitute an order of the Bankruptcy Court approving any such rejection described in this Article VI of the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. All claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as General Unsecured Claims, subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

D.      **Assumption of Insurance Policies**

Notwithstanding anything in the Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan.  On the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto, including all D&O Liability Insurance Policies (including any obligations to obtain tail coverage liability insurance due to the change in control triggered on the Effective Date).  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of all such insurance policies, including the D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in the Plan, Confirmation shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of insurance policies, including the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be filed, and shall survive the Effective Date.

After the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce, modify or restrict in any way, the coverage under any D&O Liability Insurance Policy

00:23932532.123
988082.3

(including such tail coverage liability insurance) in effect as of the Effective Date, and all members, managers, general partners, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy (and all tail coverage related thereto) regardless of whether such members, managers, general partners, directors, and/or officers remain in such positions after the Effective Date.

E.     **Indemnification**

To the extent applicable, the indemnification provisions in any Indemnification Agreement with respect to or based upon any act or omission taken or omitted by an indemnified party in such indemnified party's capacity under such Indemnification Agreement will be Reinstated (or assumed, as the case may be) and will survive effectiveness of the Plan. No such Reinstatement or assumption shall in any way extend the scope or term of any indemnification provision beyond that contemplated in the applicable Indemnification Agreement, if any. Notwithstanding anything to the contrary herein, any indemnification and reimbursement provisions under the Prepetition Secured Credit Agreement or DIP Credit Agreement which are expressly stated to survive any repayment or conversion under, or termination of, the Prepetition Secured Credit Agreement or DIP Credit Agreement, as applicable, shall survive any cancellation, conversion or discharge under the Plan in accordance with its terms, and any rights that the Prepetition Agent or DIP Agent may have under the agency provisions of the Prepetition Secured Credit Agreement or DIP Credit Agreement, as applicable, shall survive any such cancellation or discharge.

F.     **Compensation and Benefit Programs; Employment Agreements**

Except as otherwise provided in the Plan or any order of the Bankruptcy Court, all Compensation and Benefit Plans are treated as Executory Contracts under the Plan and on or prior to the Effective Date will be assumed by the Debtors or the Reorganized Debtors, as applicable, pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, including the payment of all Cure amounts in Cash in connection with such assumption.

The Coward Agreement and the Czarnecki Agreement shall each be assumed on or prior to the Effective Date by the Debtors or the Reorganized Debtors, as applicable, pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, including the payment of any and all Cure amounts in Cash in connection with such assumption.

The Debtors or the Reorganized Debtors, as applicable, and Mr. Coward shall negotiate in good faith regarding the Coward Amendment to be effective on or immediately after the Effective Date.

Effective on or immediately after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall enter into the Barnes Agreement with Mr. Barnes as contemplated by the Restructuring Term Sheet. The Barnes Agreement shall be negotiated in good faith, including providing for (i) terms that are reasonably acceptable to Mr. Barnes, the Debtors or the Reorganized Debtors, as applicable, and the Required Consenting Secured Lenders, (ii) an annual salary and annual bonus opportunity for Mr. Barnes as contemplated by the Restructuring

Term Sheet and (iii) severance benefits pursuant to a formula consistent with that of Mr. Coward pursuant to the Coward Agreement.

Each of the Compensation and Benefit Plans, the Coward Agreement and the Czarnecki Agreement shall be deemed to be amended where applicable, effective on or immediately after the Effective Date, to provide that (i) a "Change in Control" (or a term of like import) shall not be triggered, solely as a result of the consummation of the Restructuring Transactions and (ii) an event of "Good Reason" (or a term of like import) shall not be triggered solely as a result of the consummation of the Restructuring Transactions.

G.      **Workers' Compensation Benefits**

Except as otherwise provided in the Plan, as of the Effective Date, the Debtors and the Reorganized Debtors will continue to honor their obligations under: (i) all applicable workers' compensation laws in states in which the Reorganized Debtors operate; and (ii) the Debtors' written contracts, agreements, agreements of indemnity, self-insurer workers' compensation bonds, and any other policies, programs, and plans regarding or relating to workers' compensation and workers' compensation insurance; all such contracts and agreements are treated as Executory Contracts under the Plan and on the Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan will not impair or otherwise modify any rights of the Reorganized Debtors under any such contracts, agreements, policies, programs or plans regarding or relating to workers' compensation or workers' compensation insurance.

**Article VII.**

**PROVISIONS GOVERNING DISTRIBUTIONS**

A.      **Distribution Record Date**

Distributions hereunder to the Holders of Allowed Claims shall be made to the Holders of such Claims as of the Distribution Record Date. Any transfers of Claims after the Distribution Record Date shall not be recognized for purposes of the Plan. On the Distribution Record Date, each of the Prepetition Agent and the DIP Agent shall provide a true and correct copy of the registry for the Secured Loan Claims and the DIP Loan Claims, as applicable, to the Debtors. The Distribution Agent, or any party responsible for making distributions pursuant to this Article VII, shall be entitled to recognize and deal for all purposes hereunder only with those record Holders stated on the transfer ledgers and registries as of the close of business on the Distribution Record Date, which record Holders shall include the Prepetition Unsecured Lender, or such applicable Joining Unsecured Loan Party delivering an Unsecured Loan Joinder (as each is defined in the RSA) in accordance with the RSA prior to the close of business on the Distribution Record Date.

B.      **Dates of Distributions**

Except as otherwise provided in the Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or



as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the distributions that the Plan provides for Allowed Claims in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

C.      **Distribution Agent**

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Reorganized Debtors as Distribution Agent, or by such other Entity designated by the Reorganized Debtors as a Distribution Agent on the Effective Date. The Distribution Agent shall not be required to give any bond or surety or other security for the performance of the duties as Distribution Agent unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities, and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof. If the Distribution Agent is an entity other than a Reorganized Debtor, such entity shall be paid its reasonable fees and expenses, including the reasonable fees and expenses of its attorneys or other professionals.

D.      **Cash Distributions**

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Reorganized Debtors, except that Cash payments made to foreign Holders of Claims or Equity Interests, if any, may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

E.      **Rounding of Payments**

Whenever payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole dollar or zero if the amount is less than one dollar.

No fractional shares shall be issued or distributed under the Plan. Each Person entitled to receive New Common Stock shall receive the total number of whole shares of New Common Stock to which such Person is entitled. Whenever any distribution to a particular Person would otherwise call for the distribution of a fraction of a share of New Common Stock, the actual distribution of shares of such New Common Stock shall be rounded down to the nearest whole number.

01:23932532.123
988082.3

To the extent Cash, shares, stock, or units that are to be distributed under the Plan remain undistributed as a result of the rounding down of such fraction to the nearest whole dollar or whole number of notes, shares, stock, or units, such Cash, shares, stock, or units shall be treated as an Unclaimed Distribution under the Plan.

F.      **Allocation between Principal and Interest**

Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

G.      **General Distribution Procedures**

The Distribution Agent shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise. All Cash and other property held by the Reorganized Debtors for distribution under the Plan shall not be subject to any claim by any Person, except as provided under the Plan.

H.      **Address for Delivery of Distributions**

Distributions to Holders of Allowed Claims, to the extent provided for under the Plan, shall be made (1) at the address set forth in any written notices of address change delivered to the Debtors, (2) at the address in the Debtors' books and records, or (3) in accordance with the RSA, the Prepetition Secured Credit Agreement, the DIP Credit Agreement or the Prepetition Unsecured Loan Agreement, as applicable.

I.       **Unclaimed Distributions**

If the distribution to the Holder of any Allowed Claim becomes an Unclaimed Distribution, no further distribution shall be made to such Holder, and the Reorganized Debtors shall have no obligation to make any further distribution to the Holder.

Such Unclaimed Distribution and such Holder's rights to the distribution or any subsequent distribution shall be deemed forfeited under the Plan. Notwithstanding any federal or state escheat, abandoned or unclaimed property laws to the contrary, such Unclaimed Distribution and any subsequent distributions on account of such Holder's Allowed Claim shall be deemed disallowed, discharged and forever barred as unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to and vest in the Reorganized Debtors free of any restrictions thereon. Holders that fail to claim such Unclaimed Distribution shall have no claim whatsoever on account of such Unclaimed Distribution, or any subsequent distributions, against the Debtors or the Reorganized Debtors or against any Holder of an Allowed Claim to whom distributions are made by the Reorganized Debtors.

J.      **Withholding Taxes**

Pursuant to section 346(f) of the Bankruptcy Code, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by federal, state or local taxing

authorities and shall be entitled to deduct any federal, state or local withholding taxes from any distributions made with respect to Allowed Claims, as appropriate. From and as of the Effective Date, the Reorganized Debtors shall comply with all reporting obligations imposed on it by any Governmental Unit in accordance with applicable law with respect to such withholding taxes. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. As a condition to receiving any distribution under the Plan, the Reorganized Debtors may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to the Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Reorganized Debtors to comply with applicable tax reporting and withholding laws. Notwithstanding the foregoing, each Holder of an Allowed Claim that is to receive a distribution hereunder shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution.

K.     **No Postpetition Interest on Claims**

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Equity Interests and no Holder of a Claim or Equity Interest shall be entitled to interest, dividends, or other accruals accruing on or after the Petition Date on any such Claim or Equity Interest.

L.     **Setoffs**

The Reorganized Debtors may, to the extent permitted under applicable law, setoff against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights and Causes of Action of any nature that the Reorganized Debtors may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; *provided*, *however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claims, rights and Causes of Action that the Reorganized Debtors possesses against such Holder; *provided*, *further*, *however*, that the Reorganized Debtors shall not seek to exercise any rights of setoff against any Secured Loan Claims, any DIP Claims or any Unsecured Loan Claims*; provided, further, however, that Holders of Specified Unimpaired Claims shall likewise retain their applicable setoff rights*.

M.     **Surrender of Canceled Instruments or Securities**

Except as otherwise provided herein, as a condition precedent to receiving any distribution on account of its Allowed Claim, each Holder of an Allowed Claim in the Voting Classes based upon an instrument or other security shall be deemed to have surrendered such instrument, security or other documentation underlying such Claim and all such surrendered

instruments, securities and other documentation shall be deemed canceled pursuant to <u>Article V.J</u> of the Plan.

**Article VIII.**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

A.      **Conditions to Effective Date**

Effectiveness of the Plan is subject to the satisfaction of each of the following conditions precedent:

(i)      The Confirmation Order and, to the extent the Disclosure Statement is not approved in the Confirmation Order, the order approving the Disclosure Statement, shall have been entered and shall not have been stayed, modified or vacated.

(ii)      The DIP Orders shall have been entered and shall not have been stayed, modified or vacated.

(iii)      The Plan and the Plan Supplement shall be in form and substance consistent with the RSA and reasonably acceptable to the Debtors and the Required Consenting Secured Lenders.

(iv)      The New First Lien Credit Agreement and the other New First Lien Facility Documents, in form and substance reasonably acceptable to the Debtors, each New First Lien Facility Lender and the New First Lien Facility Agent, shall have been executed and delivered to the New First Lien Facility Agent, all conditions to the effectiveness thereof shall have been satisfied or waived in accordance with the terms thereof and the Effective Date Term Loans shall be funded, including by means of the conversion of the Converted DIP Loan Claims into Effective Date Term Loans contemporaneously with the satisfaction of the conditions to the Effective Date.

(v)      The RSA shall not have been terminated (other than, for the avoidance of doubt, termination of the RSA pursuant to section 3.1(a) of the RSA) and no event that, after the giving of notice (or, solely in connection with Section 3.1(c) of the RSA, after the passage of any cure period) would constitute a Termination Event (as defined in the RSA) has occurred, unless waived in accordance with the RSA, and the RSA shall be in full force and effect.

(vi)      All conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the consummation of the New Governance Documents, as applicable, shall have been satisfied or waived in accordance with the terms thereof and the closing of the New Governance Documents, as applicable, shall be deemed to occur contemporaneously with the occurrence of the Effective Date.

(vii)      All conditions precedent to the consummation of the New Securities and Related Documents, including the issuance of the New Common Stock (other than any conditions related to the occurrence of the Effective Date), shall have occurred or have been waived and the closing



of the other New Securities and Related Documents shall be deemed to occur contemporaneously with the occurrence of the Effective Date.

(viii)    The Debtors shall have paid in full in Cash all Restructuring Expenses incurred, or estimated to be incurred, through the Effective Date.

(ix)    The Debtors shall have paid in full in Cash all Allowed DIP Claims that do not constitute an Allowed Converted DIP Loan Claim, as well as any Allowed DIP Claim for which the conditions to the conversion of such Claim on the Effective Date are not satisfied.

(x)    The Debtors shall have paid or credited the New First Lien Facility Fee to the New First Lien Facility Agent for the ratable account of the New First Lien Facility Lenders.

(xi)    The Debtors shall have funded in Cash the Professional Fee Reserve Amount in the Professional Fee Escrow Account.

(xii)    The terms and form of the MIP plan document and any related documents, including forms of grant agreements with respect to the Emergence Awards that are consistent with the Restructuring Term Sheet, shall be reasonably acceptable to the Required Consenting Secured Lenders and (B) on or immediately after the Effective Date, the MIP plan document and any related documents shall each have been executed and delivered and shall be in full force and effect, in the case of each sub clauses (A) and (B), in accordance with Article V.F.

(xiii)    (A) The Coward Agreement and the Czarnecki Agreement shall each have been assumed by the Debtors or the Reorganized Debtors, as applicable, on or prior to the Effective Date and shall be in full force and effect, and (B) on or immediately after the Effective Date, the Coward Amendment and the Barnes Agreement shall each have been executed and delivered and shall be in full force and effect, in the case of each of sub clauses (A) and (B), in accordance with Article VI.F.

(xiv)    All governmental and material third party approvals and consents, to the extent required to implement the Restructuring Transactions on or prior to the Effective Date, shall have been obtained and be in full force and effect.

## B.    **Waiver of Conditions**

The conditions to the Effective Date of the Plan set forth in this Article VIII may be waived only if waived in writing by the Debtors, the Required Consenting Secured Lenders and, solely with respect to clauses (iv) and (x), the Required New First Lien Facility Lenders, without notice, leave or order of the Bankruptcy Court or any formal action, subject to any consents that may be required under the RSA; *provided*, that the condition set forth in Article VIII.A(i) may not be waived.

## C.    **Effect of Non-Occurrence of Conditions to the Effective Date**

Absent further order of the Bankruptcy Court, if the Effective Date of the Plan does not occur within 14 days of Confirmation—which period may be extended by the Debtors with the consent of the Required Consenting Secured Lenders—the Plan will be null and void in all

respects and nothing contained in the Plan, the Plan Supplement, or the Disclosure Statement will: (a) constitute a waiver or release of any Claims or Equity Interests or claims or Causes of Action of the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; (c) constitute an allowance of any Claim or Equity Interest; or (d) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

## Article IX.

## RETENTION OF JURISDICTION

A.     **Retention of Jurisdiction**

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and the Plan as is legally permissible, including jurisdiction to:

(i)     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim (other than a DIP Claim) and the resolution of any and all objections to the allowance or priority of any Claim or Equity Interest;

(ii)     grant or deny any applications for allowance of Professional Fee Claims;

(iii)     resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which any Debtor is party or with respect to which any Debtor or Reorganized Debtor may be liable and adjudicate and, if necessary, liquidate, any Claims arising therefrom;

(iv)     resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

(v)     ensure that distributions to Holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of the Plan;

(vi)     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Reorganized Debtors after the Effective Date; *provided*, that the Reorganized Debtors shall reserve the right to commence actions in all appropriate forums and jurisdictions;

(vii)     resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan, the Confirmation Order, and all orders previously entered into by the Bankruptcy Court, or any Entity's obligations incurred in connection with the Plan;


01:23932532.123
948082.3

(viii)   issue and enforce injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(ix)   enforce the terms and condition of the Plan and the Confirmation Order;

(x)   resolve any cases, controversies, suits or disputes with respect to the releases, the exculpations, the indemnification provisions and other provisions contained in Article X hereof and enter such orders or take such others actions as may be necessary or appropriate to implement, enforce, or determine the scope of all such releases, exculpations, injunctions and other provisions;

(xi)   enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

(xii)   resolve any cases, controversies, suits or disputes that may arise in connection with or relate to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document adopted or entered into in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

(xiii)   consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order previously entered by the Bankruptcy Court, including the Confirmation Order;

(xiv)   hear and determine any matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xv)   hear and determine any matters concerning the restructuring, conversion, disposition, dissolution, liquidation, merger, amalgamation, consolidation or transfer of the Dissolving Debtors or certain other Debtors which may be described in the Description of Restructuring Transactions, in accordance with the Plan;

(xvi)   hear any other matter not inconsistent with the Bankruptcy Code; and

(xvii)   enter an order closing each of the Chapter 11 Cases.

As of the Effective Date, notwithstanding anything in this Article IX to the contrary, the New First Lien Credit Documents, the Assumed Agreements, the New Governance Documents, and the New Securities and Related Documents shall be governed by the respective jurisdictional provisions therein.

B.      **Failure of Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter, including the matters set forth in Article IX.A of the Plan, the provisions of this Article IX shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to

01:23932532.123
948082.3     such matter.

A.        **General Settlement of Claims**

Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, the Reorganized Debtors and Holders of Claims and Equity Interests and is fair, equitable, and reasonable.

B.        **Binding Effect**

**ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS, AND EACH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT ANY SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR EQUITY INTEREST IN THE CHAPTER 11 CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR AFFIRMATIVELY VOTED TO REJECT THE PLAN.**

C.        **Discharge of the Debtors**

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order (including to the extent any Claims are Reinstated under the Plan or otherwise survive the Effective Date of the Plan, including pursuant to Article III.D), and effective as of the Effective Date: (i) the rights afforded herein and the treatment of all Claims and Equity Interests herein will be in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (ii) the Plan will bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders abstained from voting to accept or reject the Plan or voted to reject the Plan; (iii) all Claims and Equity Interests will be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto will be extinguished completely, including any liability of the kind specified under section 502(g), 502(h) or 502(i) of the Bankruptcy Code; and (iv) except as otherwise expressly provided for in the Plan, all Entities

will be precluded from asserting against, derivatively on behalf of, or through, the Debtors, the Debtors' Estates, the Reorganized Debtors, each of their successors and assigns, and each of their assets and properties, any other Claims or Equity Interests based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

D.    **Exculpation and Limitation of Liability**

The Exculpated Parties will neither have nor incur any liability to any Entity for any claims or Causes of Action arising before, on or after the Petition Date and prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, filing, disseminating, implementing, administering, confirming or effecting the consummation of the Chapter 11 Cases, the Plan, the Plan Supplement, the Disclosure Statement, the RSA, the DIP Documents, the New First Lien Facility Documents, the New Governance Documents, the New Securities and Related Documents or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement, or Confirmation or consummation of the Plan; *provided*, *however*, that the foregoing provisions will have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted fraud, gross negligence, or willful misconduct. To the maximum extent permitted under applicable non-bankruptcy law, each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan.

E.    **Releases by the Debtors**

**NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, EFFECTIVE AS OF THE EFFECTIVE DATE AND TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE DEBTORS AND THEIR ESTATES ARE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, EQUITY INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, WHETHER KNOWN OR UNKNOWN, ASSERTED OR UNASSERTED, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE LAWS OR OTHERWISE, INCLUDING AVOIDANCE ACTIONS, THOSE CAUSES OF ACTION BASED ON VEIL PIERCING OR ALTER-EGO THEORIES OF LIABILITY, CONTRIBUTION, INDEMNIFICATION, JOINT LIABILITY OR OTHERWISE THAT ANY SUCH DEBTOR OR ANY OF THE DEBTORS' ESTATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED**

ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' RESTRUCTURING, THE RESTRUCTURING TRANSACTIONS, THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE PLAN SUPPLEMENT, THE FORBEARANCE AGREEMENT, THE RSA, THE DIP FACILITY AND THE DIP DOCUMENTS, THE NEW FIRST LIEN FACILITY AND THE NEW FIRST LIEN FACILITY DOCUMENTS, THE NEW GOVERNANCE DOCUMENTS, THE NEW SECURITIES AND RELATED DOCUMENTS OR ANY RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, THE PURSUIT OF CONFIRMATION, ANY ACTION OR ACTIONS TAKEN IN FURTHERANCE OF OR CONSISTENT WITH THE ADMINISTRATION OR IMPLEMENTATION OF THE PLAN OR THE DISTRIBUTION OF THE NEW SECURITIES AND RELATED DOCUMENTS OR OTHER PROPERTY UNDER THE PLAN, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE ARISING FROM OR RELATING TO ANY OF THE FOREGOING, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; *PROVIDED*, *HOWEVER*, THAT THE FOREGOING PROVISIONS OF THIS RELEASE (I) SHALL OPERATE TO WAIVE AND RELEASE ONLY THOSE CAUSES OF ACTION EXPRESSLY SET FORTH IN AND RELEASED BY THE PLAN AND (II) SHALL NOT OPERATE TO WAIVE AND RELEASE THE RIGHTS OF THE DEBTORS TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE RSA, THE DIP FACILITY AND THE DIP DOCUMENTS, THE NEW FIRST LIEN FACILITY AND THE NEW FIRST LIEN FACILITY DOCUMENTS, THE NEW GOVERNANCE DOCUMENTS, THE NEW SECURITIES AND RELATED DOCUMENTS OR ANY RELATED AGREEMENTS, INSTRUMENTS, AND THE CONTRACTS, INSTRUMENTS, RELEASES, LEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN OR ASSUMED OR REINSTATED PURSUANT TO THE PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT, INCLUDING THE RE PURCHASER FULLY NET BUILDING LEASES.

F.      **Releases by Holders of Claims and Equity Interests.**

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, EFFECTIVE AS OF THE EFFECTIVE DATE AND TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE DEBTORS AND THEIR ESTATES AND THE RELEASED PARTIES, THE ADEQUACY OF WHICH IS HEREBY

**CONFIRMED, THE RELEASING PARTIES ARE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED THE DEBTORS AND THEIR ESTATES AND THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, EQUITY INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF ANY DEBTOR OR ANY OF THE DEBTORS' ESTATES, WHETHER KNOWN OR UNKNOWN, ASSERTED OR UNASSERTED, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE LAWS OR OTHERWISE, INCLUDING AVOIDANCE ACTIONS, THOSE CAUSES OF ACTION BASED ON VEIL PIERCING OR ALTER-EGO THEORIES OF LIABILITY, CONTRIBUTION, INDEMNIFICATION, JOINT LIABILITY OR OTHERWISE THAT ANY SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' RESTRUCTURING, THE RESTRUCTURING TRANSACTIONS, THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR OR ANY RELEASED PARTY, ON ONE HAND, AND ANY RELEASING PARTY, ON THE OTHER HAND, THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR DURING THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE PLAN SUPPLEMENT, THE FORBEARANCE AGREEMENT, THE RSA, THE DIP FACILITY AND THE DIP DOCUMENTS, THE NEW FIRST LIEN FACILITY AND THE NEW FIRST LIEN FACILITY DOCUMENTS, THE NEW GOVERNANCE DOCUMENTS, THE NEW SECURITIES AND RELATED DOCUMENTS OR ANY RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, THE PURSUIT OF CONFIRMATION, ANY ACTION OR ACTIONS TAKEN IN FURTHERANCE OF OR CONSISTENT WITH THE ADMINISTRATION OR IMPLEMENTATION OF THE PLAN OR THE DISTRIBUTION OF THE NEW SECURITIES AND RELATED DOCUMENTS OR OTHER PROPERTY UNDER THE PLAN, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE ARISING FROM OR RELATING TO ANY OF THE FOREGOING, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; *PROVIDED*, *HOWEVER*, THAT THE FOREGOING PROVISIONS OF THIS RELEASE (I) SHALL OPERATE TO WAIVE AND RELEASE ONLY THOSE CAUSES OF ACTION EXPRESSLY SET FORTH IN AND RELEASED BY THE PLAN AND (II) SHALL NOT OPERATE TO WAIVE AND RELEASE THE RIGHTS OF THE RELEASING PARTIES TO ENFORCE THE PLAN, THE CONFIRMATION ORDER, THE RSA, THE DIP FACILITY AND THE DIP DOCUMENTS, THE NEW FIRST LIEN FACILITY AND**

THE NEW FIRST LIEN FACILITY DOCUMENTS, THE NEW GOVERNANCE DOCUMENTS, THE NEW SECURITIES AND RELATED DOCUMENTS OR ANY RELATED AGREEMENTS, INSTRUMENTS, AND THE CONTRACTS, INSTRUMENTS, RELEASES, LEASES AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN OR ASSUMED OR REINSTATED PURSUANT TO THE PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT, INCLUDING THE RE PURCHASER FULLY NET BUILDING LEASES.

G.      **Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, AS OF THE EFFECTIVE DATE, ALL PERSONS THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A CLAIM THAT IS DISCHARGED OR AN EQUITY INTEREST THAT IS TERMINATED PURSUANT TO THE TERMS OF THE PLAN ARE PERMANENTLY ENJOINED AND PRECLUDED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH DISCHARGED CLAIMS OR TERMINATED EQUITY INTERESTS OR RIGHTS:  (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST ANY RELEASED PARTY (OR PROPERTY OR ESTATE OF ANY RELEASED PARTY) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES, AGAINST THE DEBTORS OR THE REORGANIZED DEBTORS OR THEIR RESPECTIVE PROPERTY; (II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTORS OR THE REORGANIZED DEBTORS OR THEIR RESPECTIVE PROPERTY ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (III) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM OR ENCUMBRANCE AGAINST THE DEBTORS OR THE REORGANIZED DEBTORS OR THEIR RESPECTIVE PROPERTY ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (IV) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE DEBTORS OR THE REORGANIZED DEBTORS OR THEIR RESPECTIVE PROPERTY, PROVIDED, THAT ANY RIGHTS OF SETOFF AND RECOUPMENT OF ANY ENTITY OR PERSON ARE PRESERVED FOR THE PURPOSE OF ASSERTING SUCH RIGHTS AS A DEFENSE TO ANY CLAIMS OR CAUSES OF ACTION OF THE DEBTORS OR THEIR ESTATES REGARDLESS OF WHETHER SUCH ENTITY OR PERSON IS THE HOLDER OF AN ALLOWED CLAIM; AND (V) COMMENCING OR CONTINUING ANY ACTION, ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT

01:23932532.123
948082.3

**TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED SETTLED OR COMPROMISED PURSUANT TO THE PLAN, THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN.**

H.    **Protection Against Discriminatory Treatment**

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

## Article XI.

### MISCELLANEOUS PROVISIONS

A.    **Modification of Plan**

Subject in all respects to the limitations and rights contained in the Plan and in the RSA: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend, supplement, amend and restate, or otherwise modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, after notice and hearing and entry of an order of the Bankruptcy Court, amend, supplement, amend and restate, or otherwise modify the Plan in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.  A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as amended, supplemented, amended and restated, or otherwise modified, if the proposed amendment, supplement, amendment and restatement, or other modification does not materially and adversely change the treatment of the Claim of such Holder, or release any claims or liabilities reserved by such Holder under the Plan. Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.  Prior to the Effective Date, the Debtors may make appropriate technical adjustments to the Plan without further order or approval of the Bankruptcy Court; *provided*, that such technical adjustments or modifications shall be reasonably satisfactory to the Required Consenting Secured Lenders.

B.      **Revocation of Plan**

The Debtors, with the consent of the Required Consenting Secured Lenders, reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent chapter 11 plans, but without prejudice to the respective parties' rights under the RSA. If the Debtors revoke or withdraw the Plan, or if Confirmation or consummation of the Plan does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtors or any other Entity.

C.      **Severability of Plan Provisions**

If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted and the Debtors, with the consent of the Required Consenting Secured Lenders, may amend, supplement, amend and restate, or otherwise modify the Plan to correct the defect, by amending or deleting the offending provision or otherwise, or may withdraw the Plan. Notwithstanding any such holding of the Bankruptcy Court, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

D.      **Successors and Assigns**

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of that Person or Entity.

E.      **Term of Injunctions or Stays**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases, either by virtue of sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, shall remain in full force and effect until the Effective Date has occurred.

01:23932532.123
988082.3

F. **Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date shall have occurred. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtors with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or Equity Interest or other Entity, in each case, prior to the Effective Date.

G. **Notices**

Any notice, request, or demand required or permitted to be made or provided to or upon a Debtor under the Plan shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) facsimile transmission or (e) email transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile or email transmission, upon confirmation of transmission, addressed as follows:

**If to the Debtors:**

Dixie Electric, LLC
1155 Dairy Ashford Rd, Suite 450
Houston, TX 77079
Attn: Donald Barnes (trey.barnes@expanseenergy.com)

**with a copy to (which shall not constitute notice):**

Proposed counsel to the Debtors

Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Attn:  Elisha D. Graff, Esq. (egraff@stblaw.com)
           Kathrine A. McLendon (kmclendon@stblaw.com)
           Edward R. Linden, Esq. (edward.linden@stblaw.com)
           David Baruch, Esq. (david.baruch@stblaw.com)
Fax: (212) 455-2502

- and -

Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
Attn:  Edmon L. Morton, Esq. (emorton@ycst.com)
           Sean M. Beach, Esq. (sbeach@ycst.com)

Elizabeth S. Justison, Esq. (ejustison@ycst.com)
Tara C. Pakrouh, Esq. (tpakrouh@ycst.com)
Fax: (302) 571-1253

**If to any Consenting Prepetition Secured Lender, a DIP Lender, or a New First Lien Facility Lender:**

To such Consenting Prepetition Secured Lender, such DIP Lender or such New First Lien Facility Lender at the address identified on such Consenting Prepetition Secured Lender's signature page to the RSA, the DIP Credit Agreement or the New First Lien Credit Agreement, as applicable

**with a copy to (which shall not constitute notice):**

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Attn:  Damian S. Schaible, Esq. (damian.schaible@davispolk.com)
        Adam L. Shpeen, Esq. (adam.shpeen@davispolk.com)
Fax: (212) 701-5800

- and -

Morris, Nichols, Arsht & Tunnel LLP
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899
Attn:  Robert J. Dehney, Esq. (rdehney@mnat.com)
        Joseph C. Barsalona (jbarsalona@mnat.com)
Fax: (302) 425-4673

**If to the Prepetition Agent, the DIP Agent or the New First Lien Facility Agent:**

Wilmington Trust, National Association
50 South Sixth Street, Suite 1290
Minneapolis, MN 55402
Attn:  Jeffery Rose (JRose@wilmingtontrust.com)
Fax: (612) 217-5644

**with a copy to (which shall not constitute notice):**

Alston & Bird
Bank of America Plaza, 101 South Tryon Street
Suite 4000



Charlotte, NC 28280-4000
Attn: Jason Solomon, Esq. (jason.solomon@alston.com)
David Wender, Esq. (david.wender@alston.com)
Fax: (704) 444-1795

**If to the Prepetition Unsecured Lender:**

To such Prepetition Unsecured Lender at the address identified on its signature page to the RSA

**If to the Consenting Equityholder:**

To the Consenting Equityholder at the address identified on its signature page to the RSA

H.     **Governing Law**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflicts of law thereof.

I.     **Exhibits**

All exhibits and schedules to the Plan, including the Exhibits, are incorporated and are a part of the Plan as if set forth in full herein.

J.     **Consent Rights of Required Consenting Secured Lenders**

Notwithstanding anything in the Plan to the contrary, any and all consent rights of the Required Consenting Secured Lenders set forth in the RSA with respect to the form and substance of the Plan, the Plan Supplement, and any other Plan Documents are fully enforceable as if stated in full herein until such time as the RSA is terminated in accordance with its terms. In case of a conflict between the consent rights of the Required Consenting Secured Lenders set forth in the RSA with the consent rights of the Required Consenting Secured Lenders set forth in any Plan Document, the consent rights in the RSA shall control.

K.     **No Strict Construction**

The Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtors, the members of the Ad Hoc Group, the Prepetition Agent, the Prepetition Unsecured Lender, the Consenting Equityholder, the DIP Lenders, the DIP Agent, the New First Lien Facility Lenders, the New First Lien Facility Agent and their respective professionals. Each of the foregoing was, or was part of a group that was, represented by counsel of its choice who either (a) participated in the formulation and documentation of, or (b) was afforded the opportunity to review and provide comments on, the Plan, the Plan Supplement, the Disclosure


01:23932532.123
968082.3

Statement, and the agreements and documents contemplated therein or related thereto. Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "contra proferentem" or other rule of strict construction shall not apply to the construction or interpretation of any provision of the Plan, the Plan Supplement, the Disclosure Statement, and the documents contemplated thereunder and related thereto.

L.      **Conflicts**

In the event of a conflict between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of a conflict between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order); *provided*, that, in the event any such conflict is a material conflict of the type that would require the Debtors to re-solicit the votes of Holders of Claims against the Debtors under section 1127 of the Bankruptcy Code, the Plan shall control solely with respect to such provision giving rise to such material conflict. In the event of a conflict between the Confirmation Order and the Plan, the Confirmation Order shall control.

M.      **Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Documents shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, the Holders of Claims and Equity Interests, the Released Parties, and each of their respective successors and assigns.

N.      **Closing of Chapter 11 Cases; Caption Change.**

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases; *provided*, that, as of the Effective Date, the Reorganized Debtors may submit separate orders to the Bankruptcy Court under certification of counsel closing each of the Closing Cases and changing the caption of the Chapter 11 Cases accordingly; *provided*, *further*, that matters concerning Claims may be heard and adjudicated in a Remaining Case regardless of whether the applicable Claim is against a Debtor in a Closing Case. Nothing in the Plan shall authorize the closing of any case *nunc pro tunc* to a date that precedes the date any such order is entered. Any request for *nunc pro tunc* relief shall be made on motion served on the U.S. Trustee, and the Bankruptcy Court shall rule on such request after notice and a hearing. Upon the filing of a motion to close the last Remaining Case, the Reorganized Debtors shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Rule 3022-1(c).

O.      **Entire Agreement**

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements,


01:23932532.123
988082.3

understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

P.    **Reservation of Rights**

Except as otherwise provided herein, the Plan shall be of no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the filing of the Plan, any statement or provision of the Plan, or the taking of any action by the Debtors with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to any Claims or Equity Interests prior to the Effective Date.

[Remainder of page intentionally left blank]

01:23932532.123
948082.3

~~October 31,~~ December 11, 2018

FR DIXIE HOLDINGS CORP.
FR DIXIE ACQUISITION CORP.
FR DIXIE ACQUISITION SUB CORP.
DIXIE ELECTRIC, LLC
MONAHANS ELECTRIC, INC.
K&S ELECTRIC, INC.
L&K ELECTRIC, INC.
PATRIOT AUTOMATION & CONTROL, LLC
EPIC INTEGRATED SERVICES, LLC
ACTION ELECTRIC, INC.
ACTION ELECTRIC HOLDINGS, INC.
MAC SUPPLY, INC. ELECTRICAL
CONTRACTORS
WELLKEEPER, INC.

_/s/ Jerrit Coward_
Name:    Jerrit Coward
Title:     Chief Executive Officer

**Schedule I**

**Schedule of Certain Executory Contracts or Unexpired Leases
to be Assumed Pursuant to the Plan**

1. Fully Net Building Lease, dated as of February 28, 2018, of 801 NW Mustang Drive, Andrews, Texas 79714, between FR Dixie RE, LLC and Dixie Electric, LLC

2. Fully Net Building Lease, dated as of February 28, 2018, of 3611 N US Hwy 87, Big Spring, Texas 79720, between FR Dixie RE, LLC and Dixie Electric, LLC

3. Fully Net Building Lease, dated as of February 28, 2018, of 5301 Buena Vista Drive, Carlsbad, New Mexico 88220, between FR Dixie RE, LLC and Dixie Electric, LLC

4. Fully Net Building Lease, dated as of February 28, 2018, of 1191 West Highway 83, Denver City, Texas 79323, between FR Dixie RE, LLC and Dixie Electric, LLC

5. Fully Net Building Lease, dated as of February 28, 2018, of 4511 Business Park Blvd, Hobbs, New Mexico 88240, between FR Dixie RE, LLC and Dixie Electric, LLC

6. Fully Net Building Lease, dated as of February 28, 2018, of 3000 S. Stockton, Monahans, Texas 79756, between FR Dixie RE, LLC and Monahans Electric, Inc.

7. Fully Net Building Lease, dated as of February 28, 2018, of 2214 W. Sealy Avenue, Monahans, Texas 79756, between FR Dixie RE, LLC and Dixie Electric, LLC

8. Fully Net Building Lease, dated as of February 28, 2018, of 218 Williams Avenue, Odessa, Texas 79763, between FR Dixie RE, LLC and Dixie Electric, LLC

9. Master Lease Agreement, dated on or about December ~~26, 2018~~28, 2016, and related addenda, documents and schedules thereto, between CG Commercial Finance and Dixie Electric, LLC.