## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DIXIE ELECTRIC, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-12477 (KG)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 16, 18, 51, 114 & 127** |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER APPROVING (I) THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II) PREPETITION SOLICITATION PROCEDURES, AND (III) CONFIRMATION OF THE JOINT PRE-PACKAGED PLAN OF REORGANIZATION

### Recitals

A.  On October 31, 2018 (the "Launch Date"), Dixie Electric, LLC and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") commenced a prepetition solicitation (the "Solicitation") of votes to accept or reject the *Joint Pre-Packaged Plan of Reorganization of Dixie Electric, LLC and Its Debtor Affiliates* [Docket No. 16] (the "Original Plan"). Specifically, on the Launch Date, the Debtors caused Prime Clerk LLC (the "Voting Agent") to commence service of (i) the *Disclosure Statement for Joint Pre-Packaged Plan of Reorganization of Dixie Electric, LLC and Its Debtor Affiliates*, dated October 31, 2018 [Docket No. 18] (the "Disclosure Statement") and all exhibits thereto, including, among others, the Original Plan;[2] (ii) ballots (the "Ballots") to Holders of Claims in the Voting Classes

---

[1]  The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: FR Dixie Holdings Corp. (4205), FR Dixie Acquisition Corp. (6859), FR Dixie Acquisition Sub Corp. (6379), Dixie Electric, LLC (3176), Monahans Electric, Inc. (2307), K&S Electric, Inc. (8960), L&K Electric, LLC (3297), Patriot Automation & Control, LLC (7466), Epic Integrated Services, LLC (5274), Action Electric Holdings, Inc. (4496), Action Electric, Inc. (0227), Mac Supply, Inc. Electrical Contractors (6230), and Wellkeeper, Inc. (4522). The mailing address for each Debtor is 1155 Dairy Ashford Rd, Suite 450, Houston, TX 77079.

[2]  As used herein, the term "Plan" shall mean the Original Plan and the Amended Plan (as defined below), as applicable. All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

(as defined below); and (iii) a pre-addressed, postage paid return envelope ((i)-(iii) collectively, the "Solicitation Materials") on the Holders of the Secured Loan Claims and the Holders of Unsecured Loan Claims (each as defined below), all as more fully described on Exhibits E and Exhibit F to the *Affidavit of Service of Solicitation Materials* [Docket No. 44].

B.      The Solicitation Materials were distributed to each person or entity (or to its applicable nominee) that was a holder of record as of October 29, 2018 of Claims against (i) any of the Debtors related to, arising out of, or in connection with that certain Credit Agreement, dated as of December 18, 2013 (as amended, supplemented or otherwise modified from time to time, the "Prepetition Secured Credit Agreement"), by and among FR Dixie Acquisition Corp. (the "Borrower"), FR Dixie Holdings Corp. ("Parent"), the Guarantors (as defined therein) from time to time party thereto, Wilmington Trust, National Association, as successor administrative and collateral agent (the "Prepetition Agent") and the lenders from time to time party thereto (the "Prepetition Secured Lenders") (the claims arising thereunder and any of the other Prepetition Secured Loan Documents, the "Secured Loan Claims") (Class 1); or (ii) the Borrower related to, arising out of, or in connection with that certain Loan Agreement dated as of October 13, 2017 (as may be amended, supplemented or otherwise modified from time to time, the "Prepetition Unsecured Loan Agreement") between the FR Dixie Parent LP (the "Prepetition Unsecured Lender") and the Borrower (the Claims arising thereunder, the "Unsecured Loan Claims") (Class 4). Classes 1 and 4 are the "Voting Classes". The Debtors established November 20, 2018 at 5:00 p.m., prevailing Eastern time, as the deadline by which Holders of Claims in the Voting Classes were required to have returned their completed Ballots to the Voting Agent.

C.      The Debtors did not solicit votes to accept or reject the Plan from Holders of Claims or Equity Interests classified in Classes 2, 3, 5, 6 and 7, each of which was deemed under

the Plan either to have accepted or rejected the Plan pursuant to sections 1126(f) or (g), as applicable, of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code").

     D.     On November 2, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code and commenced these chapter 11 cases (collectively, the "Chapter 11 Cases").

     E.     On November 5, 2018, this Court entered its *Order (I) Scheduling Combined Hearing on Adequacy of Disclosure Statement and Confirmation of Pre-Packaged Plan; (II) Fixing Deadline to Object to Disclosure Statement and Pre-Packaged Plan; (III) Approving Prepetition Solicitation Procedures and Form and Manner of Notice of Commencement, Combined Hearing and Objection Deadline; (IV) Approving Notice and Objection Procedures for the Assumption or Rejection of Executory Contracts and Unexpired Leases; (V) Conditionally (A) Directing the United States Trustee Not to Convene Section 341(a) Meeting of Creditors and (B) Waiving Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities; and (VI) Granting Related Relief* [Docket No. 51] (the "Scheduling Order"). In the Scheduling Order, the Court established (i) December 6, 2018 at 4:00 p.m. as the deadline by which objections to the Disclosure Statement or Plan were to be filed (the "Objection Deadline") and (ii) December 13, 2018 at 10:30 a.m. as the date and time for the combined hearing (the "Combined Hearing") to consider approval of the Disclosure Statement, the Solicitation and the solicitation procedures described in the motion with respect to the Scheduling Order [Docket No. 10], including the Ballots (the "Solicitation Procedures"), and confirmation of the Plan. In accordance with the Scheduling Order, the Debtors were required to

serve and publish a notice (the "Notice") of, among other things, (i) the Combined Hearing, (ii) the Objection Deadline, and (iii) the Solicitation Procedures.

F.      The Plan is the result of extensive good-faith, arm's-length negotiations among the Debtors, the Prepetition Agent, the ad hoc group of Prepetition Secured Creditors (the "Ad Hoc Group") holding more than 67% in outstanding principal amount of the Secured Loan Claims (in such capacities, the "Consenting Prepetition Secured Lenders"), the Prepetition Unsecured Lender, the DIP Lenders and the Holder of the existing Equity Interests in Parent (the "Consenting Equityholder") that were memorialized in the Restructuring Support Agreement, dated as of October 26, 2018 (together with all exhibits, attachments, and amendments thereto, and as amended, supplemented or otherwise modified from time to time, the "Restructuring Support Agreement"). Pursuant to the Restructuring Support Agreement, a substantial majority of the Debtors' largest creditor constituency by principal amount of claims held—the Prepetition Secured Lenders—agreed to support the Plan and the restructuring contemplated thereunder, including by agreeing to allocate a portion of the New Common Stock to the Holder of Unsecured Loan Claims and allowing General Unsecured Claims to ride through unimpaired.

G.      As evidenced by Affidavits of Service and Affidavit of Publication filed in the Chapter 11 Cases (together, the "Combined Hearing Notice Affidavits"),[3] in accordance with the terms of the Scheduling Order, the Debtors (i) served the Notice upon all of the Debtors' known creditors (or nominees therefor), equity interest holders, the Office of the United States Trustee (the "U.S. Trustee"), all parties requesting notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and certain other parties in interest, including

---

[3]      The Combined Hearing Notice Affidavits include: (i) *Affidavit of Publication* in *The New York Times*, November 7, 2018 [Docket No. 63]; (ii) *Affidavit of Service*, November 9, 2018 [Docket No. 68]; (iii) *Supplemental Affidavit of Service*, November 27, 2018 [Docket No. 96]; (iv) *Supplemental Affidavit of Service*, December 3, 2018 [Docket No. 111]; (v) *Supplemental Affidavit of Service*, December 3, 2018 [Docket No. 112]; and (vi) *Supplemental Affidavit of Service*, December 7, 2018 [Docket No. 123].

counterparties to executory contracts as required by the Scheduling Order and (ii) caused notice of the Combined Hearing and Objection Deadline to be published in the national edition of *The New York Times* on November 7, 2018.

H.    On December 3, 2018, the Debtors filed the *Plan Supplement to the Joint Pre-Packaged Plan of Reorganization of Dixie Electric, LLC and Its Debtor Affiliates* [Docket No. 114] containing the following documents: (i) New Governance Documents, (ii) the MIP and related documents, (iii) the Description of Restructuring Transactions, (iv) the Schedule of Rejected Contracts, (v) the Schedule of Assumed Contracts and Proposed Cure Amounts, (vi) the List of Closing Cases, and (vii) all exhibits, attachments, supplements, annexes, schedules, and ancillary documents related to each of the foregoing.  On December 12, 2018, the Debtors filed the *Amended Plan Supplement to the Joint Pre-Packaged Plan of Reorganization of Dixie Electric, LLC and Its Debtor Affiliates* [Docket No. 137], which included: amended forms of certain of the New Governance Documents, an amended List of Closing Cases and the members of the New Board and members, managers, general partners and directors, as applicable, of each of the other Reorganized Debtors and the officers of the Reorganized Debtors (the plan supplement at Docket No. 114, as supplemented and amended by Docket No. 137, the "Plan Supplement").

I.    In the *Declaration of Craig Johnson of Prime Clerk LLC Regarding Solicitation of Votes and Tabulation of Ballots Cast on the Joint Pre-Packaged Plan of Reorganization of Dixie Electric, LLC and Its Debtor Affiliates,* dated November 29, 2018 (the "Voting Declaration"), the Voting Agent certified the results of the Solicitation and confirmed that the Solicitation was carried out in accordance with the Solicitation Procedures [Docket No. 99].  As

further described below, the Voting Declaration provides that, among other things, 100% of Holders of Claims that voted on the Plan voted to approve the Plan.

J.      On December 11, 2018, the Debtors filed the *Amended Joint Pre-Packaged Plan of Reorganization of Dixie Electric, LLC and Its Debtor Affiliates* [Docket No. 127] (the "Amended Plan").   On December 11, 2018, the Debtors filed a proposed form of this confirmation order (this "Confirmation Order") and the *Debtors' Memorandum of Law in Support of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Prepetition Solicitation Procedures, and (III) Confirmation of the Joint Pre-Packaged Plan of Reorganization* [Docket No. 129] (the "Confirmation Memorandum").

K.      On December 11, 2018, the Debtors filed the *Declaration of Donald Barnes, III in Support of the Memorandum of Law in Support of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Prepetition Solicitation Procedures, and (III) Confirmation of the Joint Pre-Packaged Plan of Reorganization* [Docket No. 133] (the "Confirmation Declaration").

L.      On December 11, 2018, the Debtors filed the *Declaration of Peter Laurinaitis in Support of the Memorandum of Law in Support of an Order Approving (I) the Adequacy of the Disclosure Statement, (II) Prepetition Solicitation Procedures, and (III) Confirmation of the Joint Pre-Packaged Plan of Reorganization* [Docket No. 132] (the "PJT Declaration," together with the Confirmation Memorandum, the Confirmation Declaration and the proposed Confirmation Order, the "Confirmation Submissions").

M.      At the Combined Hearing, this Court considered the Confirmation Submissions and heard the arguments of counsel supporting confirmation of the Plan and approval of the Disclosure Statement, the Solicitation and the Solicitation Procedures, including the Ballots.

WHEREFORE, this Court, having reviewed the Solicitation Materials, the Original Plan, the Amended Plan, the Plan Supplement, the Solicitation Procedures, the Voting Declaration and the Confirmation Submissions; having held the Combined Hearing to consider the approval of the adequacy of the information contained in the Disclosure Statement, approval of the Solicitation and the Solicitation Procedures, including the Ballots, and confirmation of the Plan; having considered all evidence submitted or presented at the Combined Hearing; having found that the legal and factual bases set forth in the Confirmation Submissions and the Voting Declaration and presented at the Combined Hearing establish just cause for the relief granted herein; and having considered any and all objections to the Plan and its confirmation, the Disclosure Statement, the Solicitation and the Solicitation Procedures, and all such objections being consensually resolved or withdrawn, or overruled on the merits; and after due deliberation thereon and good cause appearing therefor, this Court hereby makes and issues the following Findings of Fact and Conclusions of Law:

## Findings of Fact and Conclusions of Law

IT IS HEREBY FOUND AND DETERMINED THAT:

1.    _Findings and Conclusions_.  The findings and conclusions set forth herein, in the recitals, and in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, or vice versa, they are adopted as such.

2.    _Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157, 1334(a), 1408 and 1409)_.  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the _Amended Standing Order of Reference_ from the United States District Court for the District of Delaware dated February 29, 2012.

Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has jurisdiction to approve the adequacy of information contained in the Disclosure Statement and the Solicitation Procedures and to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Venue in the District of Delaware was proper as of the Petition Date and continues to be proper.

3.    <u>Chapter 11 Petitions and Joint Administration of Cases</u>. On the Petition Date, each Debtor commenced a Chapter 11 Case. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. In accordance with the *Order Directing Joint Administration of Related  Chapter 11 Cases* [Docket No. 28], the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

4.    <u>Judicial Notice</u>. This Court takes judicial notice of all orders entered, and all evidence and arguments made, proffered or adduced at, the hearings held before this Court during the pendency of the Chapter 11 Cases.

5.    <u>Objections Overruled</u>. All parties have had a full and fair opportunity to be heard on all issues raised by objections to confirmation of the Plan. All unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Solicitation, the Solicitation Procedures, the Disclosure Statement, or the confirmation of the Plan, are OVERRULED on the merits.

6.    <u>Adequacy of the Solicitation Procedures and Adequacy of the Information Contained in the Disclosure Statement (11 U.S.C. §§ 1125, 1126(b))</u>. Sections 1125(g) and

1126(b) of the Bankruptcy Code apply to the solicitation of acceptances and rejections of the Plan prior to the commencement of the Chapter 11 Cases. The Disclosure Statement contains "adequate information" as such term is defined in section 1125 of the Bankruptcy Code, thereby satisfying sections 1125 and 1126(b) of the Bankruptcy Code. Votes for acceptance and rejection of the Plan were solicited in good faith and the Solicitation complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations, including any applicable non-bankruptcy law. Accordingly, the Debtors, the Debtors on and after the Effective Date (as defined below) (the "Reorganized Debtors"), the Consenting Prepetition Secured Lenders, the Prepetition Unsecured Lender, the Consenting Equityholder, the Prepetition Agent, the DIP Lenders and the DIP Agent and any and all affiliates, members, managers, general partners, shareholders, partners, directors, officers, employees, attorneys and advisors of the foregoing are entitled to the protection of section 1125(e) of the Bankruptcy Code, solely to the extent provided in section 1125(e) of the Bankruptcy Code.

7.    <u>Transmittal and Mailing of Materials, Notice</u>. As evidenced by the Combined Hearing Notice Affidavits, the Voting Declaration, and the other affidavits of service, mailing, and publication filed with this Court prior to the Combined Hearing (collectively, the "Notice Affidavits"),[4] the transmittal and service of the Plan, the Disclosure Statement, the Ballots, and notice of the Combined Hearing were adequate and sufficient under the circumstances, and all parties have been given due, proper, timely, and adequate notice, and an opportunity to appear and be heard with respect thereto. The Notice Affidavits informed Holders of Claims, Holders

---

[4]    The Notice Affidavits, other than the Combined Hearing Notice Affidavits, are located at Docket Nos. 44, 45, 75, 79, 87, 95, 98, 104, 121 & 136.

of Equity Interests and other parties in interest that the Combined Hearing could be adjourned and informed them of how to access the electronic website maintained by the Voting Agent to obtain up-to-date information regarding the scheduling of the Combined Hearing. Holders of Claims and Equity Interests also had the ability to request that they be placed on the list of parties receiving notice pursuant to Bankruptcy Rule 2002. Accordingly, due and proper notice has been given with respect to the Combined Hearing and the deadlines and procedures for filing objections to the Disclosure Statement and confirmation of the Plan complied with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

8.      Plan Modification. As set forth in the *Affidavit of Service* of Robert J. Rubel, dated December 12, 2018 [Docket No. 136], on December 11, 2018, notice of the Amended Plan and a redline comparison of the Amended Plan to the Original Plan were served on the Debtors' 2002 Service List. Adequate and sufficient notice of the modifications to the Original Plan has been given, no other further notice, or re-solicitation of votes on the Plan, including the amendments set forth in the Amended Plan, is required, the modifications to the Amended Plan do not materially adversely affect the treatment of any Claim against or Equity Interest in any of the Debtors under the Plan. The votes cast to accept the Original Plan are deemed to have been cast with respect to the Amended Plan.

9.      Burden of Proof. The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

10.     Plan Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). As set forth below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code:

(a)     Proper Classification of Claims and Equity Interests (11 U.S.C. §§ 1122 and 1123(a)(1)). The Plan designates seven (7) Classes of Claims or Equity Interests, aside from Claims that need not be classified, including Claims against any Debtor for payment of an administrative expense of a kind specified in section 503(b)(1) of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code (collectively, "Administrative Claims"), all Claims arising under the senior secured superpriority debtor-in-possession term loan credit facility (such facility, the "DIP Facility" and such Claims, the "DIP Claims") and all Claims against any Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code ("Priority Tax Claims"). The Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests, as the case may be, in such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between or among Holders of Claims or Equity Interests. The classification is reasonable and necessary to implement the Plan and is proper under the Bankruptcy Code. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)     Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan specifies that Classes 2, 3, 5 and 6 are Unimpaired within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)      <u>Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.
The Plan designates each of Classes 1, 4 and 7 as Impaired within the meaning of section
1124 of the Bankruptcy Code and specifies the treatment of Claims and Equity Interests
in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)      <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.   The Plan provides for the
same treatment by the Debtors for each Claim or Equity Interest in a particular Class,
unless a Holder of a particular Claim or Equity Interest has agreed to less favorable
treatment, which satisfies section 1123(a)(4) of the Bankruptcy Code.

(e)      <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>.   The Plan and the Plan
Supplement provide adequate and proper means for implementation of the Plan, thereby
satisfying section 1123(a)(5) of the Bankruptcy Code, including (i) the continued
corporate existence of the Reorganized Debtors other than the Dissolving Debtors and as
otherwise set forth in the Description of Restructuring Transactions, (ii) all actions set
forth in Article V of the Plan, (iii) the funding of the Plan, (iv) the cancellation of certain
securities and agreements, (v) the cancellation of certain existing Liens and security
interests, (vi) the composition of the New Board and officers of the Reorganized Debtors,
(vii) the assumption of Executory Contracts and Unexpired Leases, (viii) the
authorization, issuance, and delivery of New Common Stock, (ix) the entry into the New
Governance Documents, including the Stockholders Agreement and the Registration
Rights Agreement, (x) the entry into the New First Lien Credit Agreement and the other
New First Lien Facility Documents, (xi) the Description of Restructuring Transactions
and the implementation thereof and (xii) the taking of all necessary and appropriate

actions by the Debtors or Reorganized Debtors, as applicable, to effectuate the transactions under and in connection with the Plan.

(f)    <u>Charter Provisions (11 U.S.C. § 1123(a)(6))</u>.  In accordance with section 1123(a)(6) of the Bankruptcy Code, the applicable New Governance Documents contain provisions prohibiting the issuance of non-voting equity securities (*see, e.g.*, [Docket No. 114, Exhibit A-1]), thereby satisfying section 1123(a)(6) of the Bankruptcy Code. After the effective date of the Plan (the "<u>Effective Date</u>"), the Reorganized Debtors may amend and restate their respective certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements and bylaws, or other applicable organizational documents, as permitted by applicable law and pursuant to the terms contained therein.

(g)    <u>Selection of Officers and Directors (11 U.S.C. § 1123(a)(7))</u>. Article V.C. of the Plan provides that on the Effective Date, the New Board shall consist of five members, four of whom shall be selected by the Ad Hoc Group and one of whom shall be the chief executive officer of the Reorganized Debtors, in accordance with the New Governance Documents.  Any subsequent members of the New Board shall be elected, classified, and composed in a manner consistent with the New Governance Documents and applicable non-bankruptcy law.  The provisions of the Plan for the selection of directors and officers are consistent with the interests of creditors, the new equity security holders and public policy.  The Debtors have identified the directors and officers of each Reorganized Debtor in the Plan Supplement or otherwise prior to the Combined Hearing. Consequently, the requirements of section 1123(a)(7) of the Bankruptcy Code have been met.

(h)    Impairment/Unimpairment (11 U.S.C. § 1123(b)(1)).  In accordance with section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Equity Interests.

(i)    Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).  Article VI of the Plan addresses the assumption and rejection of Executory Contracts and Unexpired Leases, and meets the requirements of section 365(b) of the Bankruptcy Code.  Article VI.A of the Plan provides that, as of the Effective Date, the Debtors shall assume each Executory Contract and Unexpired Lease to which any of them are a party, including those Executory Contracts and Unexpired Leases set forth on Schedule I to the Plan, unless such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtors; (2) expired or terminated pursuant to its own terms before the Effective Date; (3) is the subject of a motion to reject filed on or before the Effective Date; (4) is otherwise identified in the Plan Supplement as an Executory Contract or Unexpired Lease to be rejected before the Effective Date; or (5) is to be rejected pursuant to the terms of the Plan.  The Debtors have filed and served the *Notice of Filing of List of Assumed Executory Contracts and Unexpired Leases in Connection with the Joint Pre-Packaged Plan of Reorganization of Dixie Electric, LLC and Its Debtor Affiliates* [Docket No. 113] (the "Cure Notice") on applicable parties to Executory Contracts or Unexpired Leases to be assumed, as set forth in the affidavit of service for the Cure Notice [Docket Nos. 111 and 112].  The Plan and the Plan Supplement provide that no Executory Contracts and Unexpired Leases shall be rejected. All objections to the Debtors' assumption of Executory Contracts and Unexpired Leases,

or the proposed Cure amounts, contained in the Cure Notice have been withdrawn or otherwise resolved.

(j)    Settlement and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).    The Plan is consistent with Bankruptcy Code section 1123(b)(3).    In consideration of the distributions, settlements, and other benefits provided under the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Equity Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any distribution to be made on account of such Allowed Claim or Equity Interest.    The compromise and settlement of such Claims, Equity Interests and controversies embodied in the Plan is in the best interest of the Debtors, the Estates, the Reorganized Debtors and all Holders of Claims and Equity Interests, and are fair, equitable, and reasonable.    The provisions regarding the preservation of Causes of Action in the Plan are appropriate, fair, equitable, and reasonable, and are in the best interest of the Debtors, the Estates, the Reorganized Debtors and Holders of Claims and Equity Interests.

(k)    Modification of Rights (11 U.S.C. § 1123(b)(5)).    In accordance with section 1123(b)(5) of the Bankruptcy Code, Article III of the Plan modifies or leaves unaffected, as the case may be, the rights of certain Holders of Claims or Equity Interests.

(l)    Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).    In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code.

(m)    Cure of Defaults (11 U.S.C. § 1123(d)).    In accordance with section 1123(d) of the Bankruptcy Code, Article VI of the Plan provides for the satisfaction of any Cure amounts associated with Executory Contracts or Unexpired Leases to be assumed pursuant to the Plan in accordance with section 365(b) of the Bankruptcy Code. The Cure amount associated with each Executory Contract or Unexpired Lease assumed pursuant to the Plan and this Confirmation Order shall be $0 except as otherwise set forth on the Schedule of Proposed Cure Amounts [Docket No. 114, Exhibits E-1 and E-2] or as otherwise set forth herein.  As described above, the Debtors timely filed and served their Schedule of Proposed Cure Amounts, and any timely objections to the proposed Cure amounts have been withdrawn or otherwise resolved.

11.    Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).    The Debtors have complied in good faith with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically: (i) the Debtors are eligible to be debtors under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code; (ii) the Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of this Court; and (iii) the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy rules and regulations and the Scheduling Order in transmitting the Solicitation Materials and in soliciting and tabulating votes to accept or reject the Plan.  The Debtors complied with applicable provisions of the Bankruptcy Code in transmitting Combined Hearing notices and otherwise satisfied section 1129(a)(2) of the Bankruptcy Code.

12.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.    The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.    The Plan is the culmination of lengthy and significant good-faith, arm's-length negotiations among the Debtors and their key constituents and is proposed with the legitimate purposes of substantially deleveraging the Debtors' capital structure and expeditiously making the distributions provided for in the Plan.

13.    <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.    Except as otherwise provided or permitted by the Plan, or orders of this Court, any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, this Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

14.    <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>.    The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.    The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors after confirmation of the Plan have been fully disclosed, and the appointment to, or the continuation in, such offices of such persons is consistent with the interests of the Debtors' creditors and equity security holders and with public policy.    The identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of such insider's compensation also have been fully disclosed.

15.    <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.    The Plan does not provide for any change in rates subject to governmental regulation.    Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases.

16.     <u>Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7))</u>.   The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis set forth on <u>Exhibit F</u> of the Disclosure Statement and other evidence proffered or adduced in the Confirmation Declaration and the PJT Declaration and at the Combined Hearing: (i) are persuasive and credible; (ii) have not been controverted by other evidence or challenged; and (iii) establish that each Holder of a Claim or Equity Interest in an Impaired Class either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

17.     <u>Acceptance or Rejection by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.   Holders of Claims in the Voting Classes were the only Holders of Claims entitled to vote to accept or reject the Plan pursuant to the provisions of the Bankruptcy Code.  Holders of Claims in Classes 1 and 4 have accepted the Plan pursuant to section 1126(c) of the Bankruptcy Code.  Holders of Claims and Equity Interests in Classes 2, 3, 5 and 6 are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Holders of Existing Parent Interests in Class 7 are conclusively deemed to have rejected the Plan (the "<u>Deemed Rejecting Class</u>").  The Plan, therefore, does not satisfy section 1129(a)(8) of the Bankruptcy Code.  Notwithstanding the lack of compliance with section 1129(a)(8) of the Bankruptcy Code with respect to the Deemed Rejecting Class, the Plan is confirmable because, as set forth below, it satisfies sections 1129(b)(1) and (b)(2)(C)(ii) of the Bankruptcy Code with respect to such Class.  As set forth in the Voting Declaration, the percentages of Holders of Claims in Classes entitled to vote on the Plan that voted to accept or reject the Plan are as follows:

| Plan Class | Amount Accepting Plan (% of Amount Voted) | Amount Rejecting Plan (% of Amount Voted) | Number Accepting Plan (% of Number Voted) | Number Rejecting Plan (% of Number Voted) |
|---|---|---|---|---|
| CLASS 1 | $282,875,278.44 (100.00%) | $0.00 (0.00%) | 46 (100.00%) | 0 (0.00%) |
| CLASS 4 | $8,000,000.00 (100.00%) | $0.00 (0.00%) | 1 (100.00%) | 0 (0.00%) |

18. _Treatment of Priority Claims (11 U.S.C. § 1129(a)(9))_.  Article II of the Plan provides for the treatment of Administrative Claims, DIP Claims and Priority Tax Claims and other claims afforded specific treatment under section 1129(a)(9) of the Bankruptcy Code that satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

19. _Acceptance of At Least One Impaired Class (11 U.S.C. § 1129(a)(10))_.  As set forth in the Voting Declaration, Holders of Claims in Class 1, which is Impaired under the Plan, have voted to accept the Plan in requisite numbers and amounts without including any acceptance of the Plan by any insider.  Thus, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

20. _Feasibility (11 U.S.C. § 1129(a)(11))_.  The Plan is feasible within the meaning of section 1129(a)(11) of the Bankruptcy Code.  The evidence submitted regarding feasibility, including the financial projections included in the Disclosure Statement and the other evidence supporting confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in the Confirmation Declaration and filed in connection with, the Combined Hearing (i) was reasonable, persuasive, accurate and credible; (ii) has not been controverted by other evidence; (iii) utilizes reasonable and appropriate methodologies and assumptions; (iv) establishes that the Reorganized Debtors will have sufficient funds available to meet obligations under the Plan; and (v) establishes that confirmation of the Plan is not likely to be followed by a liquidation or need for a further financial reorganization of the Reorganized Debtors.  Accordingly, the Debtors have

established a reasonable assurance of the Plan's prospect for success.  Furthermore, the financing and other transactions contemplated under the Plan will enable the Debtors to continue their current operations and will eliminate all of their prepetition long-term debt.  By eliminating the burden of servicing their existing long-term debt, the Debtors will be better positioned to increase profits, service debt obligations under the New First Lien Facility and create value for holders of the New Common Stock.  The Plan is feasible and, therefore, satisfies section 1129(a)(11) of the Bankruptcy Code.

21.     Payment of Certain Fees (11 U.S.C. § 1129(a)(12)).  The Plan satisfies section 1129(a)(12) of the Bankruptcy Code.  Article II.D of the Plan provides for payment of all fees payable by the Debtors under 28 U.S.C. § 1930.

22.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Article VI.F of the Plan provides that, except as otherwise provided in the Plan or any order of this Court, all retirement plans shall be deemed to be, and shall be treated as if they were, executory contracts that are to be assumed under the Plan.  Therefore, the Debtors have complied with section 1129(a)(13) of the Bankruptcy Code.

23.     Non-Applicability of Certain Sections – Sections 1129(a)(14), (15), and (16).  Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

24.     Confirmation of Plan Over Nonacceptance of Impaired Classes (11 U.S.C. § 1129(b)).  As described above, the Plan satisfies all of the applicable requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8).  Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that one Impaired

Class is deemed to reject the Plan.  Requisite numbers and amounts of Holders of Claims in Classes 1 and 4 have voted to accept the Plan.  Class 7 is a Class of Existing Parent Interests that is deemed to reject.  Based upon the evidence proffered, adduced, and presented by the Debtors at the Combined Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the aforementioned Class, as required by sections 1129(b)(1) and (b)(2)(C)(ii) of the Bankruptcy Code, because there are no Classes junior to such Deemed Rejecting Class, and therefore no Holder of any Equity Interest that is junior to such Class will receive or retain under the Plan on account of such junior interest any property, and no Holder of a Claim or Equity Interest in a Class senior to the Deemed Rejecting Class is receiving more than 100% recovery on account of its Claim or Equity Interest.  Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by the Deemed Rejecting Class.

25.    Confirmation of Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the only plan of reorganization for each Debtor proposed and considered by this Court for confirmation, in accordance with section 1129(c) of the Bankruptcy Code.

26.    Principal Purpose (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities Act, and no governmental unit has objected to the confirmation of the Plan on any such grounds.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

27.    Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based upon the record before this Court, the Debtors, the Reorganized Debtors, the Prepetition Agent, the Consenting Prepetition Secured Lenders, the Prepetition Unsecured Lender, the DIP Lenders, the DIP Agent, the Consenting Equityholder, the New First Lien Facility Lenders, the New First Lien Facility Agent and each of the Related Parties of the foregoing Entities participated in the formation of, and the

solicitation of votes on the Plan and activities related thereto, including the execution, delivery and performance of the Restructuring Support Agreement and the extension of financing under the DIP Credit Agreement, and the New First Lien Facility Credit Agreement, in each case, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules and any applicable non-bankruptcy rules or regulations.  In addition, each of the foregoing Entities and each of the Related Parties of the foregoing Entities participated in good faith and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law in the offer, issuance, sale, or purchase of a security, offered or sold under the Plan.  Each of the foregoing Entities and each of the Related Parties of the foregoing Entities, therefore, are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.  The Debtors and Released Parties have been and will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby and (ii) take the actions authorized and directed by this Confirmation Order, in each case, to the extent such actions are consistent with the Plan or this Confirmation Order, as applicable.

28.     <u>Satisfaction of Confirmation Requirements</u>.  Based on the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code. Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon all Holders of Claims and Equity Interests, including Holders of Equity Interests in the Deemed Rejecting Class.

29.     <u>Bankruptcy Rule 3016</u>.  The Plan is dated, and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement, the PJT

Declaration and the Confirmation Declaration with the Clerk of this Court satisfies Bankruptcy Rule 3016(b).

30.     _Bankruptcy Rule 3017_.  The Debtors have given proper and sufficient notice of the hearing to approve the adequacy of information contained in the Disclosure Statement, the Solicitation and the Solicitation Procedures as required by the Scheduling Order and have thereby satisfied Bankruptcy Rule 3017(a).  The Debtors also have given proper and sufficient notice of the Combined Hearing as required by Bankruptcy Rule 3017(d), as modified by the Scheduling Order. The Solicitation Procedures, pursuant to which the Solicitation Materials were provided to the Holders of Impaired Claims or Equity Interests, were adequate, thereby satisfying Bankruptcy Rule 3017(e).

31.     _Bankruptcy Rule 3018_.  The Solicitation of votes to accept or reject the Plan solely from the Holders of Impaired Claims satisfies Bankruptcy Rule 3018(a).  The Plan was transmitted to all parties in interest entitled to vote thereon, sufficient time was prescribed for such entities to accept or reject the Plan, and the Solicitation and the Solicitation Procedures complied with sections 1125 and 1126 of the Bankruptcy Code, thereby satisfying Bankruptcy Rule 3018(b).

32.     _Rule 9019(a) Settlement_.  Except as otherwise provided in the Plan and this Confirmation Order, the Plan, as an implementation of the Restructuring Support Agreement, is a comprehensive resolution and settlement between and among the Debtors and certain of their creditors and certain of their equity interest holders of all claims against and equity interests in the Debtors, pending or threatened, or that were or could have been commenced against the Debtors prior to the date of entry of this Confirmation Order (other than the Reorganized Debtors' ability to prosecute objections to Claims and other retained Causes of Action to the

extent preserved under the Plan). Such settlement, as reflected in the relative distributions and recoveries or other benefits provided to Holders of Claims and Equity Interests under the Plan, benefits the Debtors' Estates, creditors and other stakeholders and is fair and reasonable.

33.    Exit Financing. The Reorganized Debtors expect to utilize a new term loan credit facility to be provided by the New First Lien Facility Lenders in accordance with the terms and conditions set forth in the Restructuring Support Agreement and the New First Lien Credit Agreement which shall be consistent in all material respects with the term sheet summarizing the key terms of the New First Lien Facility attached as Exhibit C to the Restructuring Support Agreement (such term sheet, the "New First Lien Facility Term Sheet" and such new credit facility, the "New First Lien Facility") [Docket No. 18, Exhibit B (Exhibit C)]. The New First Lien Facility is an essential element of the Plan, is necessary for confirmation and consummation of the Plan, and is critical to the overall feasibility of the Plan. The New First Lien Facility is the best financing alternative available to the Debtors. Entry into the New First Lien Facility is in the best interest of the Debtors, their Estates and all Holders of Claims or Equity Interests. The Debtors have exercised reasonable business judgment in determining to enter into the New First Lien Credit Agreement and the other New First Lien Facility Documents. The terms and conditions of the New First Lien Facility are fair and reasonable and were negotiated in good faith and at arm's-length, and any credit extended to the Reorganized Debtors by the lenders under the New First Lien Facility pursuant thereto is, or shall be, deemed to have been extended, made, assumed and assigned and issued in good faith. The Debtors and Reorganized Debtors are authorized without further approval of the Court to execute and deliver all agreements, guarantees, instruments, mortgages, control agreements, certificates, and other documents relating to the New First Lien Facility and to perform their obligations thereunder, including the

payment or reimbursement of certain fees (as set forth in the New First Lien Facility Term Sheet), expenses, losses, damages or indemnities. On the Effective Date, all of the Liens and security interests to be created under the New First Lien Facility and the related documentation are, or shall be, deemed approved and shall have the priorities as set forth in the New First Lien Credit Agreement and the other New First Lien Facility Documents. All such Liens and security interests shall be valid, binding and enforceable, shall be granted in good faith as an inducement to the New First Lien Facility Lenders to extend credit thereunder and are, or shall be, deemed not to constitute a fraudulent conveyance, fraudulent transfer, or preferential transfer, and shall not otherwise be subject to avoidance or re-characterization. In furtherance of the foregoing, the Reorganized Debtors are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of state, federal or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order, and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. The terms of the Plan, the Reorganized Debtors' entry into and the terms of the New First Lien Credit Agreement and the other New First Lien Facility Documents and the payment of fees and expenses in connection therewith are fair and reasonable, reflect the Debtors' and Reorganized Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration. The terms of the Plan, including the New First Lien Facility, are in the best interest of the Reorganized Debtors, the Debtors, and their Estates, creditors, equity interest holders and other parties in interest.

34. <u>Releases, Exculpations and Injunctions</u>. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the settlements, compromises, releases, discharges, exculpations and injunctions set forth in the Plan and implemented by this Confirmation Order (i) are made in exchange for good and valuable consideration, (ii) were integral to the agreements among the various parties and are essential to the formulation and implementation of the Plan, (iii) confer substantial benefits on the Debtors' Estates, (iv) are integral and non-severable from the Plan, (v) are equitable and reasonable, and (vi) are in the best interests of the Debtors, the Reorganized Debtors and their Estates, creditors and other stakeholders. The releases of non-Debtors under the Plan are fair to Holders of Claims or Equity Interests, are necessary to the proposed reorganization, and are supported by fair consideration, thereby satisfying the requirements of *In re Continental Airlines, Inc.*, 203 F.3d 203, 214 (3d Cir. 2000), *In re Indianapolis Downs,* LLC, 486 B.R. 286, 305 (Bankr. D. Del. 2013), and *In re Zenith Electronics Corp.*, 241 B.R. 92, 110-11 (Bankr. D. Del. 1999). Each non-Debtor Released Party was instrumental to the successful prosecution of the Chapter 11 Cases and provided a substantial contribution to the Debtors, which provided a significant benefit to the Debtors' Estates. The record of the Combined Hearing and the Chapter 11 Cases is sufficient to support the releases, exculpations and injunctions provided for in Article X of the Plan.

35. <u>Retention of Jurisdiction</u>. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article IX of the Plan.

36.    <u>Waiver of Stay</u>.  Under the circumstances, it is appropriate that the 14-day stay imposed by Bankruptcy Rules 3020(e) and 7062(a) and any other Bankruptcy Rules, if applicable, be waived.

### Decrees

WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:

37.    <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced recitals, findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

38.    <u>Disclosure Statement</u>.  For the reasons set forth herein, the Disclosure Statement (i) contains sufficient information of a kind generally consistent with the disclosure requirements of applicable non-bankruptcy laws, rules and regulations, including the Securities Act; (ii) contains "adequate information" (as such term is defined in Bankruptcy Code section 1125(a)(1) and used in Bankruptcy Code section 1126(b)(2)) with respect to the Debtors, the Plan and the transactions contemplated therein; and (iii) is approved in all respects. Accordingly, the Disclosure Statement hereby is approved.

39.    <u>Solicitation and Solicitation Procedures</u>.  The Solicitation of Votes on the Plan and the Solicitation Procedures complied with Bankruptcy Code sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations, and were appropriate and satisfactory, and are approved in all respects.

40.    <u>Ballots</u>.  The Ballots utilized in the Solicitation are approved in all respects.

41.     <u>Plan Classification Controlling</u>.  The classification of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications and amounts of Claims, if any, set forth on the Ballots returned by the Holders of Impaired Claims in connection with voting on the Plan: (i) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (ii) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual amount or classification of such Claims under the Plan for distribution purposes; and (iii) shall not be binding on the Debtors or the Reorganized Debtors, except with respect to voting on the Plan.

42.     <u>Notice of the Combined Hearing</u>.  Notice of the Combined Hearing complied with the terms of the Scheduling Order, was appropriate and satisfactory, was in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and is approved in all respects.

43.     <u>Confirmation</u>.  The Plan, as supplemented by the Plan Supplement (which is incorporated by reference into, and forms an integrated part of, the Plan), is confirmed under section 1129 of the Bankruptcy Code.

44.     <u>Objections to the Plan and Confirmation</u>.  Any objections or responses to confirmation of the Plan and any reservation of rights contained therein that have not been withdrawn, waived or settled prior to the entry of this Confirmation Order are hereby OVERRULED on the merits and in the entirety, and all withdrawn objections or responses are hereby deemed withdrawn with prejudice.

45.     <u>Modifications to Plan</u>.  Modifications made to the Plan, including those set forth in the Amended Plan, following the solicitation of votes thereon satisfied the requirements of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and no further solicitation is required.

46.    <u>Deemed Acceptance of the Plan as Modified</u>.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims or Equity Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified in the Amended Plan.  No Holder of a Claim shall be permitted to change its vote as a consequence of such modifications.

47.    <u>Plan Supplement and other Essential Documents and Agreements</u>.  The form of documents comprising the Plan Supplement, any other agreements, instruments, certificates or documents related thereto, the transactions contemplated by each of the foregoing, in each case, to the extent each of the foregoing is consistent with the Plan or this Confirmation Order, as applicable, are authorized, and, upon execution and delivery of the agreements and documents relating thereto by the applicable parties (and the satisfaction of applicable terms and conditions to their effectiveness), shall be in full force and effect and valid, binding and enforceable in accordance with the their terms without the need for any further action, order or approval of this Court, or other act or action under applicable law, regulation, order or rule.

48.    <u>Disputed Claims</u>.  On and after the Confirmation Date, the Reorganized Debtors shall have the sole authority to litigate, compromise, settle, otherwise resolve or withdraw objections to all Claims against the Debtors and to compromise and settle any such Claims without notice to or approval by the Court or any other party.  On and after the Effective Date, except as otherwise provided herein or in the Plan, all undisputed Claims will be paid in the ordinary course of business of the Reorganized Debtors.

49.    <u>Disallowance of Claims</u>.  Except as otherwise specifically provided for in the Plan or this Confirmation Order or otherwise agreed, Holders of Claims need not file Proofs of Claim,

and any and all Proofs of Claim shall be deemed expunged from the claims register on the Effective Date without any further notice to or action, order, or approval of the Court.

50.    <u>Professional Compensation and Reimbursement Claims</u>.    Professionals or other Entities asserting a Professional Fee Claim for services rendered before the Effective Date, for the avoidance of doubt, excluding any claims for Restructuring Expenses, must file and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, this Confirmation Order or other order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim no later than 45 days after the Effective Date; *provided*, that any Professional who is subject to the *Order Authorizing the Debtors to Employ and Pay Certain Professionals Utilized in the Ordinary Course of Business* [Docket No. 109] (the "<u>Ordinary Course Professionals Order</u>") may continue to receive such compensation and reimbursement of expenses for services rendered before the Confirmation Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professionals Order. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtors and the applicable Professional within thirty (30) days after the filing of the final fee application with respect to the Professional Fee Claim. Notice of a hearing on the final fee applications shall be provided in accordance with the Bankruptcy Rules and the Local Rules.  The Reorganized Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval. The funding of the Professional Fee Escrow Account by the Debtors and the Reorganized Debtors in accordance with Article II.A(ii) of the Plan is approved, and the Allowed Professional Fee Claims shall be paid from the Professional Fee Escrow Account or, if necessary, by the Reorganized Debtors, in accordance with Article II.A(ii) of the Plan.  The

Debtors and the Reorganized Debtors are authorized and directed to establish a segregated, interest-bearing account to be funded with the Professional Fee Reserve Amount as provided in Article II.A(ii) of the Plan, and the Reorganized Debtors shall not use the funds in such account for any purposes other than the payment of Professional Fee Claims as and when due until all such Professional Fee Claims have been paid in full in accordance with Article II.A of the Plan.

51.    Reimbursement of the New First Lien Facility Agents' Professionals and the New First Lien Facility Lenders' Professionals.    On the Effective Date, in accordance with the New First Lien Credit Agreement, the Debtors shall pay all the reasonable and documented fees and expenses incurred prior to the Effective Date by the New First Lien Facility Agent and the New First Lien Facility Lenders to the extent such fees and expenses are invoiced at least two (2) Business Days prior to the anticipated Effective Date (or such shorter period as the Debtors may agree); *provided*, that the Debtors and Reorganized Debtors (as applicable) shall have the right to review and object to any such fees and expenses on reasonableness grounds.    Other than as otherwise set forth in this paragraph, neither the New First Lien Facility Agents' professionals nor the New First Lien Facility Lenders' professionals shall be required to file applications with, or otherwise seek approval of, the Bankruptcy Court or any other party as a condition to the payment of such fees and expenses.

52.    Reimbursement of the DIP Agent's and DIP Lenders' Advisors; Reimbursement of the Prepetition Agent's and the Ad Hoc Group's Advisors.    On the Effective Date, or, with the consent of such advisor to the DIP Agent or the DIP Lenders, as applicable, as soon as reasonably practicable thereafter, the Debtors shall pay all the reasonable and documented fees and expenses incurred, or estimated to be incurred, up to and including the Effective Date by the advisors to the DIP Agent and DIP Lenders to the extent such fees and expenses are payable

pursuant to the DIP Credit Agreement and are estimated and invoiced at least two (2) Business Days before the anticipated Effective Date (or such shorter period as the Debtors may agree); *provided*, that the Debtors and Reorganized Debtors (as applicable) shall have the right to review and object to any such fees and expenses on reasonableness grounds.  Other than as otherwise set forth in this paragraph, nothing herein or in the Plan shall require such advisors to the DIP Agent or the DIP Lenders to file applications with, or otherwise seek approval of, the Bankruptcy Court or any other party as a condition to the payment of such fees and expenses.  On the Effective Date, or, with the consent of such advisor to the Prepetition Agent or the Ad Hoc Group, as applicable, as soon as reasonably practicable thereafter, the Debtors shall pay all Restructuring Expenses incurred, or estimated to be incurred, up to and including the Effective Date that are estimated and invoiced at least two (2) Business Days before the anticipated Effective Date (or such shorter period as the Debtors may agree); *provided*, that the Debtors and Reorganized Debtors (as applicable) shall have the right to review and object to any such fees and expenses on reasonableness grounds.  Other than as otherwise set forth in this paragraph or paragraph 51 hereof, nothing herein or in the Plan shall require advisors to the Prepetition Agent or the Ad Hoc Group to file applications with, or otherwise seek approval of, the Bankruptcy Court or any other party as a condition to the payment of Restructuring Expenses.  In addition, the Debtors and the Reorganized Debtors (as applicable) are authorized to continue to pay pre- and post-Effective Date, when due and payable in the ordinary course, Restructuring Expenses related to implementation, consummation, and defense of the Plan whether incurred before, on, or after the Effective Date.

     53.    <u>Withholding and Reporting Requirements</u>.  The Debtors and the Reorganized Debtors and any other distributing party shall comply with all tax withholding and reporting

requirements imposed by any federal, state or local taxing authorities and shall be entitled to deduct any federal, state or local withholding taxes from any distributions made with respect to Allowed Claims or Equity Interests, as appropriate.  From and as of the Effective Date, each Reorganized Debtor shall comply with all reporting obligations imposed on it by any Governmental Unit in accordance with applicable law with respect to such withholding taxes. Notwithstanding any provision in the Plan to the contrary, the Debtors and the Reorganized Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including (a) liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, and (b) withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. As a condition to receiving any distribution under the Plan, the Debtors and the Reorganized Debtors may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to the Plan provide such other information and certification as may be deemed necessary for the Debtors and the Reorganized Debtors to comply with applicable tax reporting and withholding laws, including (i) in the case of a U.S. Holder, a properly executed IRS Form W-9, and (ii) in the case of a non-U.S. Holder, a properly executed applicable IRS Form W-8 (and any applicable attachments thereto). Notwithstanding the foregoing, each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding and other tax obligations, on account of such distribution.

54.    <u>Management Incentive Plan</u>.  On or immediately after the Effective Date, the New Board may adopt the management incentive plan (the "<u>MIP</u>") under which ten percent (10%) of

the New Common Stock (on a fully diluted basis) will be reserved for issuance by the New Board as incentive awards and approve the grant of the Emergence Grants, as described in the Plan and as set forth in further detail in the Plan Supplement. Upon grant of an award under the MIP, the underlying shares of New Common Stock from the Award Pool shall proportionately dilute all of the New Common Stock issued on the Effective Date pursuant to the Plan. Nothing in the Plan or this Confirmation Order shall or shall be deemed to approve or authorize the terms of the MIP, the terms of which shall become effective only after the Effective Date and which is a post-bankruptcy incentive plan and provides no awards for actions taken by any of the Debtors' employees during the Chapter 11 Cases.

55.    _Employment Agreements_.    On or immediately after the Effective Date, the New Board may execute the employment agreements and/or amend existing employment agreements, as described in the Plan. Nothing in the Plan or this Confirmation Order shall or shall be deemed to approve or authorize the terms of any such employment agreement, including the Barnes Agreement, the terms of each which shall become effective only after the Effective Date.

56.    _Exemption from Certain Transfer Taxes_.    Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers or mortgages from or by the Debtors to the Reorganized Debtors or any other Person or entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sales or use tax, mortgage recording tax, or other similar tax or governmental assessment, and all appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Such exemption under section 1146(a) of

the Bankruptcy Code specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, Lien, or other security interest; (2) the making or assignment of any lease or sublease; (3) any Restructuring Transaction; (4) the issuance, distribution, and/or sale of any of the New Common Stock and any other securities of the Debtors or the Reorganized Debtors; or (5) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any Restructuring Transaction occurring under the Plan.

57.     _Documentation_.  The Debtors and the Reorganized Debtors, as applicable, are authorized to execute and deliver (i) all documents in connection with the New First Lien Facility, including the New First Lien Credit Agreement and all other New First Lien Facility Documents; (ii) all documents, including exhibits, schedules and annexes in connection with the Plan Supplement; and (iii) any other agreements, documents and instruments to be entered into as contemplated by, and in furtherance of, the Plan (collectively, the "Plan Documents"), and to take all steps deemed necessary or appropriate by the Debtors or the Reorganized Debtors to consummate the transactions contemplated thereby.

58.     _Binding Effect_.  Pursuant to section 1141 of the Bankruptcy Code, effective as of the Effective Date and except as expressly provided in the Plan or this Confirmation Order, the provisions of the Plan (including the Plan Documents and the exhibits thereto) and this Confirmation Order shall be binding on (i) the Debtors; (ii) the Reorganized Debtors; (iii) all parties in interest, including Holders of Claims against and Equity Interests in the Debtors, whether or not such Claims or Equity Interests are Impaired under the Plan and whether or not, if

Impaired, such Holders of Claims or Equity Interests accepted the Plan; (iv) each person acquiring property under the Plan; (v) each counterparty to an Executory Contract or Unexpired Lease of any of the Debtors; (vi) any Person or Entity making an appearance in the Chapter 11 Cases or any other Person in the Chapter 11 Cases; and (vii) the successors and assigns of all of the above-listed entities.

59.    Vesting of Assets.    On the Effective Date, pursuant to sections 1141 (b) and (c) of the Bankruptcy Code, all property of the Debtors' Estates shall vest in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as may be provided pursuant to the Plan (including Article X.C. thereof), the Confirmation Order, or the New First Lien Facility Documents.  Unless otherwise set forth in the Plan, the Plan Supplement or this Confirmation Order, including the Description of Restructuring Transactions, nothing in the Plan or this Confirmation Order shall result in the vesting of any property, assets, or liabilities of a Debtor in a different Reorganized Debtor.  On and after the Effective Date, the Reorganized Debtors may take any action, including the operation of its business, the use, acquisition, sale, lease, and disposition of property, and the entry into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as expressly provided herein.  Without limiting the foregoing, the Reorganized Debtors may pay the charges that it incurs on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Court.

60.     <u>Release, Exculpation, Discharge, and Injunction Provisions</u>.    The release,

exculpation, discharge, injunction, and related provisions set forth in the Plan are approved and

authorized in their entirety, and such provisions are effective and binding on all Persons and

Entities to the extent provided therein.

61.     <u>Reservation of Rights in Favor of Governmental Units</u>.    Notwithstanding any

provision in the Plan, this Confirmation Order, or related Plan Documents: Nothing discharges or

releases the Debtors, the Reorganized Debtors, or any non-Debtor from any Claim, right, liability

or cause of action of any Governmental Unit as defined in Section 101(27) of the Bankruptcy

Code, or impairs the ability of any Governmental Unit to pursue any Claim, liability, right,

defense, or cause of action against any Debtor, Reorganized Debtor or non-Debtor. Contracts,

purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights

agreements, grants, awards or other interests of or with any Governmental Unit shall be, subject

to any applicable legal or equitable rights or defenses of the Debtors or Reorganized Debtors

under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary

course of business as if the Debtors' bankruptcy cases were never filed and the Debtors and

Reorganized Debtors shall comply with all applicable non-bankruptcy law. All Claims,

liabilities, rights, causes of action, or defenses of or to any Governmental Unit shall survive the

Chapter 11 Cases as if they had not been commenced and be determined in the ordinary course

of business, including in the manner and by the administrative or judicial tribunals in which such

rights, defenses, Claims, liabilities, or causes of action would have been resolved or adjudicated

if the Chapter 11 Cases had not been commenced; provided, that nothing in the Plan or this

Confirmation Order shall alter any legal or equitable rights or defenses of the Debtors or the

Reorganized Debtors with respect to any such Claim, liability or cause of action under non-

bankruptcy law, or be construed as an admission as to the existence of any fact or the validity of any Claim with respect to or in connection with any Claim, liability or cause of action. Without limiting the foregoing, for the avoidance of doubt: (i) no Governmental Unit shall be required to file any proofs of claim or administrative expense claims in the Chapter 11 Cases for any Claim, right, liability, defense, or cause of action; (ii) nothing shall affect or impair the exercise of any Governmental Unit's police and regulatory powers against the Debtors, the Reorganized Debtors or any non-Debtor; (iii) nothing shall be interpreted to set cure amounts or to require any Governmental Unit to novate or otherwise consent to the transfer of any Governmental Unit's contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements, grants, awards or other interests; (iv) nothing shall affect or impair any Governmental Unit's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; (v) nothing shall constitute an approval or consent by any Governmental Unit without compliance with all applicable legal requirements and approvals under non-bankruptcy law, (vi) nothing shall relieve any party from compliance with all licenses and permits in accordance with non-bankruptcy law; and (vii) the term Governmental Unit shall include, but is not limited to, federally recognized Indian Tribes and state taxing authorities.

62.    <u>Release of Liens, Claims and Equity Interests</u>. Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan (including with respect to the New First Lien Credit Agreement and the other New First Lien Facility Documents), concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, or Equity Interests in or against the property of the Estates will be fully released, terminated, extinguished and discharged, in each

case without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens, Claims, or Equity Interests will, if necessary, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) and take any and all other steps necessary as may be requested by the Reorganized Debtors to cancel such Liens, Claims, or Equity Interests and shall incur no liability to any Entity in connection with its execution and delivery of any such instruments.

63.     <u>Preservation of All Causes of Action Not Expressly Settled or Released</u>.  Unless a Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is (A) expressly waived, relinquished, released, compromised or settled in the Plan (including and for the avoidance of doubt, pursuant to the releases contained in Article X of the Plan) or any Final Order (including this Confirmation Order) or (B) subject to the discharge and injunction provisions in Article X of the Plan as approved by this Confirmation Order, the Debtors and the Reorganized Debtors, as applicable, expressly reserve such Cause of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action upon or after the confirmation of the Plan or the Effective Date of the Plan based on the Plan or this Confirmation Order. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, this Confirmation Order or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it. The Debtors and the Reorganized Debtors, as applicable, expressly

reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.

64.    <u>Ownership and Control</u>.  The consummation of the Plan shall not, unless the Debtors expressly agree in writing, constitute a change of ownership or change in control, as such terms are used in any statute, regulation, contract or agreement (including, but not limited to, any agreements assumed by the Debtors pursuant to the Plan or otherwise and any agreements related to employment, severance or termination agreements or insurance agreements) in effect on the Effective Date and to which any of the Debtors is a party.

65.    <u>Cancellation of Stock, Certificates, Instruments and Agreements</u>.  On the Effective Date, all stock, units, instruments, certificates, agreements and other documents evidencing the Existing Parent Interests will be cancelled, and the obligations of the Debtors thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.

66.    <u>Continuation of Automatic Stay</u>.  Except as otherwise expressly provided in the Plan, this Confirmation Order or a separate Order of this Court, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect through and including the Effective Date.

67.    <u>Executory Contract Procedures</u>.  The Executory Contract Procedures (as defined in the motion related to the Scheduling Order) are approved in all respects.

68.    <u>Assumed Executory Contracts and Unexpired Leases</u>.  Pursuant and subject to Article VI.A of the Plan, as of the Effective Date, the Debtors shall be deemed to have assumed each Executory Contract and Unexpired Lease, including those Executory Contracts or Unexpired Leases set forth on <u>Schedule I</u> to the Plan, to which it is a party in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) was assumed or rejected previously by the Debtors; (2) expired or terminated pursuant to its own terms before the Effective Date; (3) is the subject of a motion to reject filed on or before the Effective Date; (4) is otherwise identified in the Plan Supplement as an Executory Contract or Unexpired Lease to be rejected before the Effective Date; or (5) is to be rejected pursuant to the terms of the Plan. This Confirmation Order shall constitute an order of the Court under sections 365 and 1123(b) of the Bankruptcy Code approving in all respects the Executory Contract and Unexpired Lease assumptions described above, as of the Effective Date.  Any agreement that is not considered an Executory Contract or Unexpired Lease shall be deemed to have been reinstated on the Effective Date in accordance with section 1124(2) of the Bankruptcy Code.

69.    <u>Adequate Assurance of Future Performance</u>.  The only adequate assurance of future performance of any Executory Contract or Unexpired Lease that is assumed in connection with the Plan shall be the promise of the applicable Reorganized Debtor to perform all obligations under any Executory Contract or Unexpired Lease under the Plan.

70.    <u>Cure Amounts</u>.  The Cure amount for all Executory Contracts and Unexpired Leases assumed pursuant to the Plan is $0.00, except as otherwise set forth on the Schedule of Proposed Cure Amounts [Docket No. 114, Exhibits E-1 and E-2] and provided in the Cure

Notice.[5]  Any counterparty to an Executory Contract or Unexpired Lease that failed to object timely to the proposed assumption or Cure amount is deemed to have consented to such assumption or Cure amount and to have forever released and waived any objection to the proposed Cure amount.

71.   <u>Rejection of Executory Contracts and Unexpired Leases</u>.  No Executory Contracts and Unexpired Leases are proposed to be rejected by the Plan and this Confirmation Order shall constitute the Court's approval thereof.

72.   <u>Authorization to Take Acts Necessary to Implement Plan</u>.  Each of the Debtors and the Reorganized Debtors hereby is authorized and empowered to take such actions and to perform such acts as may be necessary, desirable or appropriate to comply with or implement the Plan, the New First Lien Credit Agreement, the New Governance Documents, including the Stockholders Agreement and the Registration Rights Agreement, the MIP, when adopted, the Restructuring Transactions (including those as described in the Description of Restructuring Transactions) and all documents related thereto, and any of the other Plan Documents, including the election or appointment, as the case may be, of directors and officers of the Reorganized Debtors as contemplated in the Plan, and all documents, instruments and agreements related thereto and all annexes, exhibits, and schedules appended thereto, and the obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any approval of any stockholder, member, manager, general partner or board of directors, as applicable.  Each of the Debtors and the Reorganized Debtors hereby is authorized and empowered to take such actions,

---

[5]   Notwithstanding the Cure amount set forth in the Plan Supplement for that certain Master Lease Agreement, dated as of December 28, 2016 (the "<u>36th Street Lease</u>"), by and between 36th Street Capital Partners LLC, as assignee of Consultants Group Commercial Funding Corporation doing business as CG Commercial Finance, and Dixie Electric, LLC, the Debtors are authorized to pay such applicable Cure amounts not in excess of $15,000 in connection with the assumption of the 36th Street Lease.

to perform all acts, to make, execute and deliver all instruments and documents, to make payments, and to pay all fees and expenses as set forth in the documents relating to the Plan and the New First Lien Facility and that may be required or necessary for its performance thereunder without the need for any approval of any stockholder, member, manager, general partner or board of directors, as applicable.   On the Effective Date, the appropriate officers of the Reorganized Debtors and members of the boards of directors of the Reorganized Debtors are authorized and empowered to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan and the New First Lien Facility in the name of and on behalf of the Reorganized Debtors.   Each of the Debtors, the Reorganized Debtors and the officers and directors thereof are authorized to take any such actions without further corporate action or action of the members, managers, directors, general partners or stockholders, as applicable, of the Debtors or the Reorganized Debtors.

73.    <u>Stockholders Agreement and Registration Rights Agreement</u>.   Notwithstanding anything to the contrary herein, in the Plan, or any Plan Supplement document, each holder of New Common Stock shall be deemed to be a party to and bound by the terms of the Stockholders Agreement and the Registration Rights Agreement from and after the Effective Date even if not a signatory thereto.

74.    <u>New First Lien Facility</u>.   On the Effective Date, the Reorganized Debtors shall enter into the New First Lien Facility, the terms of which will be set forth in the New First Lien Facility Documents.   On the Effective Date, the Debtors and/or the Reorganized Debtors are authorized to (i) enter into and borrow under the New First Lien Credit Agreement, (ii) enter into the other New First Lien Facility Documents, including any notes, guarantees, collateral agreements, mortgages, or other documents or agreements delivered, executed or entered in

connection therewith, (iii) grant Liens and security interests under the New First Lien Facility, and such documents, Liens and security interests are approved and ratified, and (iv) make such other modifications or amendments to the New First Lien Facility Documents as the Debtors, with the consent of the New First Lien Facility Lenders, and/or the Reorganized Debtors and the New First Lien Facility Agent may deem necessary or desirable in connection with the closing of the New First Lien Facility and the implementation thereof, all without further notice to or order of the Court or action under applicable law. All New First Lien Facility Documents signed by the Debtors shall be binding and enforceable against the Reorganized Debtors and their assets upon and after the Effective Date. All fees, costs and expenses to be paid or reimbursed by the Debtors and/or the Reorganized Debtors in connection with the New First Lien Facility are ratified and approved to the extent not previously ratified and approved; *provided*, that the Debtors and Reorganized Debtors (as applicable) shall have the right to review and object to any such fees, costs and expenses on reasonableness grounds. On the Effective Date, (a) the Liens and security interests granted to the New First Lien Facility Agent pursuant to such New First Lien Facility Documents (1) shall constitute legal, valid and duly perfected Liens against and security interests in the Reorganized Debtors' assets with the priority provided for therein and (2) shall not be subject to avoidance, re-characterization, or subordination (including equitable subordination) for any purposes whatsoever, (b) the Reorganized Debtors granting such Liens and security interests and the New First Lien Facility Agent are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish, attach, and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically

by virtue of the entry of this Confirmation Order, and any such filings, recordings, approvals, and consents shall not be required), (c) the New First Lien Facility Documents shall constitute the legal, valid, and binding obligations of the Reorganized Debtors and be enforceable in accordance with their respective terms, and (d) neither the obligations created under the New First Lien Facility Documents nor the Liens or security interests granted in favor of the New First Lien Facility Agent thereunder shall constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law and shall not otherwise be subject to avoidance. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the obligations of the Debtors or the Reorganized Debtors, as applicable, pursuant to, but subject to the terms of, the New First Lien Facility Documents to indemnify, reimburse or hold harmless the New First Lien Facility Lenders, the New First Lien Facility Agent or any other Entity, in each case, shall not be discharged or impaired by confirmation or consummation of the Plan but shall survive unaffected by the reorganization contemplated by the Plan and shall be performed and honored by the Debtors or the Reorganized Debtors, as applicable, regardless of such confirmation, consummation and reorganization. Moreover, notwithstanding any provision in the Plan or this Confirmation Order to the contrary, from and after the Effective Date, the choice of law and jurisdiction provisions contained in the New First Lien Facility Documents shall be applied to the New First Lien Facility and any disputes relating thereto.

75.    On the Effective Date, all of the guarantees to be made or granted by any of the Reorganized Debtors in accordance therewith (a) shall be legal, binding, and enforceable guarantees by each such Reorganized Debtor in accordance with the terms thereof and (b) shall not be subject to avoidance, recharacterization, or subordination (including equitable

subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.

76.    <u>Exemption from Securities Laws; Issuance of Securities</u>.    Pursuant to section 1145 of the Bankruptcy Code, the issuances of the shares of New Common Stock pursuant to the Plan are exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities.    The shares of New Common Stock issued pursuant to the Plan are freely tradable by any initial recipient thereof, subject to (i) the provisions of subsection (b) of section 1145 of the Bankruptcy Code, (ii) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities, (iii) the restrictions on transferability of such securities set forth in the New Governance Documents and (iv) applicable regulatory approval.    The availability of the exemption under section 1145 of the Bankruptcy Code or any other applicable securities laws shall not be a condition to the occurrence of the Effective Date.

77.    <u>Execution By Third Parties</u>.    Each and every federal, state and local governmental agency or department is hereby authorized to accept, and lessors and holders of Liens are directed to execute, any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Plan including documents and instruments for recording in county and state offices where the Reorganized Debtors' certificates of incorporation or any other Plan Document may need to be filed in order to effectuate the Plan.

78.    <u>Preparation, Delivery and Execution of Additional Documents by Third Parties</u>. Each Holder of a Claim receiving a distribution pursuant to the Plan and all other parties in

interest shall, from time to time, take any reasonable actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

79.    <u>Governmental Approvals Not Required</u>.    Subject to paragraph 61 of this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement and any documents, instruments or agreements, and any amendments or modifications thereto.

80.    <u>Payment of U.S. Trustee Fees</u>. Each Debtor in the Closing Cases shall remain responsible for making payments of quarterly fees due and owing to the U.S. Trustee pursuant to 28 U.S.C. §1930(a)(6) in accordance with the terms of the Plan and Confirmation Order, up to and including the date the Closing Cases are closed.

81.    <u>Notice of Entry of Confirmation Order</u>.  Pursuant to Rules 2002 and 3020(c) of the Bankruptcy Rules, as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of entry of this Confirmation Order and of the occurrence of the Effective Date, substantially in the form annexed hereto as <u>Exhibit A</u>, on the U.S. Trustee and other parties in interest, including creditors, equity interest holders, and any party subject to the injunction provisions in Article X of the Plan. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order.

82.    <u>References to Plan Provisions; Incorporation by Reference</u>.    The failure specifically to include or reference any particular provision, article or section of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, article or

section, it being the intent of this Court that the Plan be confirmed in its entirety. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

83.    <u>Confirmation Order Controlling</u>.  If there is any conflict between the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

84.    <u>Reversal</u>.  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated or stayed by subsequent order of this Court or any other court of competent jurisdiction, such reversal, modification or vacatur shall not affect the validity or enforceability of any acts, or obligations, indebtedness, liability, priority or Lien incurred or undertaken by the Debtors and the Reorganized Debtors under or in connection with the Plan prior to the Debtors' or the Reorganized Debtors' (as applicable) receipt of written notice of any such order.  Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the Debtors or Reorganized Debtors, as applicable, receipt of written notice of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all Plan Documents or any amendments or modifications thereto in effect prior to the date the Debtors or Reorganized Debtors, as applicable, received such actual written notice.

85.    <u>Post-Confirmation Modifications</u>.  Subject to the limitations set forth in the Plan, and subject to the terms of the Restructuring Support Agreement, after entry of this Confirmation Order, the Debtors may, upon order of the Court, amend or modify the Plan, in accordance with Bankruptcy Code section 1127(b).  Notwithstanding the foregoing, the Debtors are authorized to make appropriate technical adjustments, remedy any defect or omission, or reconcile any

inconsistencies in the Plan, the documents included in the Plan Supplement, any and all exhibits to the Plan, and this Confirmation Order without further order of the Court.

86.    Applicable Non-Bankruptcy Law.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and the Plan Documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

87.    Separate Plans.  The Plan is a separate Plan for each of the Debtors.  Accordingly, the provisions of the Plan, including the definitions and distributions to creditors and security interest holders, shall apply to the respective assets of, and Claims against, and Equity Interests in, each Debtor's separate Estate.

88.    Effectiveness of Order.  Notwithstanding Bankruptcy Rules 3020(e) and 6004(h), or any other provision of the Bankruptcy Code or the Bankruptcy Rules, this Confirmation Order shall be effective at 12:01 a.m. (prevailing Eastern Time) on December 14, 2018.  This Confirmation Order is and shall be deemed to be a separate order with respect to each of the Debtors for all purposes.  This Confirmation Order is intended to be a final order and the period in which an appeal must be filed shall commence upon entry hereof.

89.    Substantial Consummation.  Substantial consummation of the Plan under section 1101(2) of the Bankruptcy Code shall be deemed to occur on the Effective Date.

90.    The Record.  The record of the Combined Hearing is closed.

Dated:  December 13, 2018
           Wilmington, Delaware

                                        KEVIN GROSS
                                        UNITED STATES BANKRUPTCY JUDGE